IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REMOTE SOLUTION CO, LTD., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-004 KAJ |
| | ) | |
| FGH LIQUIDATING CORP. f/k/a | ) | |
| CONTEC CORPORATION, | ) | |
| | ) | |
| Respondent. | ) | |

**OPENING BRIEF OF MOVANT REMOTE SOLUTION CO., LTD.
IN SUPPORT OF ITS MOTION TO
VACATE OR MODIFY ARBITRATION AWARD**

**[REDACTED]**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for Remote Solution Co., Ltd.

Dated: February 15, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF STIPULATED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.     THE ARBITRATOR EXCEEDED HIS AUTHORITY BY FAILING TO MAKE
        FINDINGS OF FACT AND FAILING TO PROVIDE REASONS FOR HIS
        DECISION ON LIABILITY AS REQUIRED BY THE MPA . . . . . . . . . . . . . . 11

II.     THE ARBITRATOR VIOLATED PUBLIC POLICY AND MANIFESTLY
        DISREGARD APPLICABLE NEW YORK LAW IN DETERMINING THAT THE
        MPA GRANTED INDEMNIFICATION ARISING FROM CONTEC'S OWN ACT
        IN CAUSING THE INFRINGEMENT BY PROVIDING INFRINGING
        SPECIFICATIONS TO REMOTE SOLUTION . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    THE ARBITRATOR ERRED BY AWARDING CONTEC A SHARE OF
        CONTEC'S PAYMENT UNDER THE SETTLEMENT AGREEMENT WITH
        PHILIPS, IN DISREGARD OF UNAMBIGUOUS LANGUAGE . . . . . . . . . . . 20

        A.      THE INDEMNIFICATION PROVISION OF THE MPA DOES NOT
                INCLUDE AMOUNTS OBTAINED IN SETTLEMENT . . . . . . . . . . . 20

        B.      THE ARBITRATOR DISREGARDED THE CLEAR AND
                UNAMBIGUOUS LANGUAGE OF THE SETTLEMENT AGREEMENT
                WITH PHILIPS WHICH ALLOCATES THE PAYMENTS EXCLUSIVELY
                TO ACTS OF INFRINGEMENT BY ANOTHER SUPPLIER . . . . . . . 22

IV.     THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND THE
        TERMS OF THE MPA BY AWARDING ATTORNEYS FEES IN CONNECTION
        WITH FEDERAL COURT LITIGATION TO STAY THE ARBITRATION . . 24

V.      THE ARBITRATOR DISREGARDED THE EXPRESS LANGUAGE OF THE
        MPA, AND SO EXCEEDED HIS AUTHORITY, BY AWARDING CONTEC ITS
        ATTORNEYS' FEES IN EXCESS OF THE FEES INCURRED BY REMOTE
        SOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

i

VI.     THE ARBITRATOR ERRED BY AWARDING ATTORNEYS' FEES INCURRED
        IN OBTAINING COURT CONFIRMATION OF THE FIRST INTERIM AWARD
        AFTER THE DISTRICT COURT DENIED AN AWARD OF THE SAME FEES
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

**Cases**

**Alderman v. Pan Am World Airways**, 169 F.3d 99 (2nd Cir. 1999) . . . . . . . . . . . . . 24

**Altman v. Strong's Marineland**, 580 N.Y.S.2d 425 (N.Y.A.D. 2nd Dep't 1992) . . . . 15

**American Export Isbrandtsen Lines, Inc. v. U.S.**, 390 F.Supp. 63 (S.D.N.Y. 1975) . 11

**American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities, Inc.**, 351 F.Supp.2d 79 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Baut v. Pethick Construction Co.**, 262 F.Supp. 350 (M.D. Pa. 1966) . . . . . . . . . . . . 17

**Carbice Corp. of America v. American Patents Development Corp.**, 293 U.S. 27 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Clinchfield Coal Co. v. Dist. 28, United Mine Workers**, 720 F.2d 1365 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Consolidated Edison, Inc. v. Northeast Utilities**, 426 F.3d 524 (2nd Cir. 2005) . . . . 30

**Duferco Int'l Steel Trading v. T. Klavness Shipping A/S**, 333 F.3d 383 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Eggeling v. Ryder Truck Rental, Inc.**, 677 N.Y.S.2d 845 (N.Y.A.D. 4th Dept. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Emigrant Industrial Sav. Bank v. One Hundred Eight West Forty Ninth Street Corporation**, 8 N.Y.S.2d 354 (N.Y.A.D. 1st Dept. 1938), *aff'd*, 21 N.E.2d 620 (N.Y. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Exxon Shipping Co. v. Exxon Seamen's Union**, 993 F.2d 357 (3rd Cir. 1993) . . . . . 14

**Facilities Development Corporation v. Miletta**, 584 N.Y.S.2d 491 (N.Y.A.D. 3rd Dept. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Fendley v. Power Battery Co.**, 561 N.Y.S.2d 760 (N.Y.A.D. 1st Dep't 1990) . . . . . . 15

**Furrer v. C.I.R.**, 566 F.2d 1115 (9th Cir. 1977), *cert. denied*, 437 U.S. 903 (1978) . . . 21

**G.B. Goldman Paper Co. v. United Paperworkers International Union, Local 286**, 957 F.Supp. 607 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**George A. Hormel & Co. v. United Food & Commercial Workers, Local 9**, 879 F.2d 347 (8th Cir, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Grant Airmass Corp. v. Gaymar Industries, Inc.**, 645 F. Supp. 1507 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Greenberg v. Bear, Stearns & Co.**, 220 F.3d 22 (2nd Cir. 2000) . . . . . . . . . . . . . . . . 14

**Hooper Associates, Ltd. v. AGS Computers, Inc.**, 548 N.E.2d 903 (N.Y. 1989) . . . 24

**In re Armstrong World Industries, Inc.**, 432 F.3d 507 (3rd Cir. 2005) . . . . . . . . . . 23

**Int'l Brotherhood of Teamsters, Chaffeurs, Warehousemen and Helpers of America, Local 1249 v. Western Pennsylvania Motor Carriers Ass'n**, 574 F.2d 783 (3rd Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Jordan v. City of New York**, 162 N.Y.S.2d 145 (N.Y.A.D. 1957), *aff'd*, 152 N.E.2d 667 (N.Y. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Katz v. Feinberg**, 167 F.Supp.2d 556 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Klock v. Grosodonia**, 674 N.Y.S.2d 187 (N.Y.A.D. 4th Dept. 1998) . . . . . . . . . . . . . 25

**Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6647**, 916 F.2d 63 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Leibel v. Flynn Hill Elevator Co.**, 791 N.Y.S.2d 639 (N.Y.A.D. 2nd Dept. 2005) . . . 15

**Lindland v. U.S. Wrestling Ass'n, Inc.**, 227 F.3d 1000, 1004 (7th Cir. 2000) . . . . . . 33

**Mansbach v. Prescott, Ball and Turben**, 598 F.2d 1017 (6th Cir. 1979) . . . . . . . . . . 32

**Mark Patterson, Inc. v. Bowie**, 654 N.Y.S.2d 769 (N.Y.A.D. 1st Dept. 1997) . . . . . . 30

**Mattesson v. Ryder Systems, Inc.**, 99 F.3d 108 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . 10

**McCown v. Sears, Roebuck and Co.**, 908 F.2d 1099 (2nd Cir. 1990) . . . . . . . . . . . . . 32

**Missouri River Services, Inc. v. Omaha Tribe of Nebraska**, 267 F.3d 848 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Oscar Gruss & Son, Inc. v. Hollander,** 337 F.3d 186 (2nd Cir. 2003) . . . . . . . . . . . 26

**Paine Webber, Inc. v. Agnon**, 49 F.3d 347 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 14

**Remote Solution Co., Ltd. v. Contec Corporation**, 398 F.3d 205 (2nd Cir. 2005) . . . 24

**Steelworkers v. Enterprise Wheel & Car Corp.,** 363 U.S. 593, 597 (1960) . . . . . . . . 33

**Sweeney v. Hertz Corp.,** 704 N.Y.S.2d 19 (N.Y.A.D. 1st Dept. 2002) . . . . . . . . . . . . 16

**Times Mirror Magazines, Inc. v. Field & Stream Licenses Company**, 294 F.3d 383 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Travelers Indemnity Co. v. AMR Services Corp.,** 921 F.Supp. 176 (S.D.N.Y. 1996) 18

**Weissman v. First Unum Life Insurance Co.,** 44 F.Supp.2d 512 (S.D.N.Y.1999) . . . 16

**Western Employers Ins. Co. v. Jefferies & Co., Inc.,** 958 F.2d 258 (9th Cir. 1992) . 12

## Other authorities

9 U.S.C. §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 U.S.C. §10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 U.S.C. §11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 U.S.C. §12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## NATURE AND STAGE OF THE PROCEEDINGS

On July 11, 2003, Contec Corporation ("Contec"[1]), a Delaware corporation based in New York, filed a Demand for Arbitration against Remote Solution Co., Ltd. ("Remote Solution"), a Korean entity, with the American Arbitration Association. (Appendix ("App."), Exhibit A[2]).

On July 21, 2003, Contec filed suit against Remote Solution in the U.S. District Court for the Northern District of New York, C.A. No. 1:03-cv-00910-DNH-DRH, seeking to compel Remote Solution to arbitrate (the "New York Action").  On July 31, 2003, Remote Solution answered the Complaint and filed a counterclaim, seeking to stay the arbitration. On July 26, 2003, the Court *sua sponte* dismissed the Complaint (without prejudice to file an amended Complaint) due to the lack of allegations showing subject matter jurisdiction. Contec filed an Amended Complaint on October 1, 2003, and on October 14, 2004, Remote Solution filed a renewed motion to stay arbitration.

Contec subsequently withdrew its demand to compel arbitration, leaving only the issue of staying arbitration.  On December 1, 2003, the Court denied Remote Solution's motion to stay arbitration.  That same day the arbitrator issued an award (i) determining that Contec Corporation had standing to seek arbitration, and (ii) enjoining Remote Solution from prosecuting an action it had filed in Korea to collect money withheld by Contec.  (Ex. B).

_____

[1]

During the course of the arbitration, Contec Corporation changed its name to "FGH Liquidating Corp."  For ease of reference, movant will continue to use the term "Contec" to refer to respondent.

[2]

All exhibits are contained in an appendix filed separately herewith,

1

Contec had that award confirmed by the U.S. District Court for the Northern District of New York. The Court originally awarded Contec its attorneys' fees in connection with the confirmation, but vacated the award for failure to make a timely application. (Ex. F). Contec requested an award of attorneys' fees in connection with the confirmation. The District Court originally granted the motion for attorneys' fees, but subsequently vacated its order. (Ex. F).

Remote Solution filed a Notice of Appeal to the U.S. Court of Appeals for the Second Circuit on December 15, 2003. Remote Solution asked the District Court for a stay pending appeal, which request was denied on February 9, 2004. However, on March 19, 2004, the Second Circuit issued a stay of arbitration pending appeal. The Second Circuit affirmed the decision of the District Court on February 14, 2005, and the arbitration resumed.

The parties agreed to bifurcate the proceeding between liability and damages, and agreed to attempt to resolve the case on a paper record without live testimony and with stipulated facts to the extent possible. The parties provided the arbitrator with legal memoranda and hard copies of all cases cited therein. The arbitrator issued his award on liability on July 26, 2005 (Ex. C), and his award on damages on December 26, 2005. (Ex. D).

Remote Solution filed a Motion to Vacate or Modify Arbitration Awards on January 3, 2006. This is Remote Solution's opening brief in support of that Motion.

2

## SUMMARY OF ARGUMENT

1.      The liability award is void as the arbitrator failed to perform according to the terms of the Manufacturing and Purchase Agreement entered into between the parties dated February 16, 1999 (the "MPA," Ex. E), which contains the arbitration provision, in that he failed to make findings of fact and provide reasons for his decision on liability.

2.      In concluding that the language of the indemnification provision of the MPA permits indemnification of Contec for patent infringement when Contec was the cause of such infringement, the arbitrator manifestly disregarded uncontradicted law which had been provided to him. As a consequence, the arbitrator interpreted the indemnification provision of the MPA in a manner which violates the established public policy of the State of New York.

3.      The arbitrator exceeded his authority by disregarding the unambiguous language of both the MPA and the settlement agreement between Contec and Philips and requiring Remote Solution to reimburse Contec a portion of its settlement payment to Philips, when (a) the language of the MPA permits reimbursement only of payments awarded by final judgment, and (b) the settlement agreement between Contec and Philips clearly and unambiguously states that the payment to Philips represented amounts arising exclusively from infringement by another supplier (Seoby).

4.      The arbitrator manifestly disregarded uncontradicted law that had been supplied to him by holding that the MPA authorized reimbursement of Contec's legal fees and expenses incurred in the New York Action.

3

5.    The arbitrator exceeded his authority by awarding Contec attorneys' fees in excess of the amounts incurred by Remote Solution, when the MPA clearly and unambiguous stated that "in no event will the recovery of [the winner's] attorney's fees ben in excess of the actual cost of the other party's attorney's fees." In applying the implied covenant of good faith to supersede this express language, the arbitrator manifestly disregarded uncontradicted law which had been provided to him, which clearly stated that the implied covenant of good faith may not be applied to contradict express terms of a contract.

4

## STATEMENT OF STIPULATED FACTS[3]

In 1996, Contec began selling "universal" remote control units ("URCs") that allowed consumers to control different appliances from different manufacturers using only one remote control device. The URCs included two alternative methods for programming the URCs to work with a particular appliance. One was a search method, called "Point and Press" or "Auto Scan," whereby the user pointed the URC at an appliance and held down a button or series or buttons. The URC would then send out a series of signals, going through its stored library of codes, until the appliance recognized the signal and responded, at which time the specific signal would be stored for future use. The other method was a "direct entry" method, whereby the end user was required to input a 3-digit code associated with a given appliance (codes were identified in the instructions), so that the appliance recognized the signal, which was then stored for future use. (Ex. M, Stipulated Fact 1).

In the beginning, Contec purchased URCs containing the two methods described above from Compo Micro Tech, Inc. ("CMT"). (Ex. M, Stipulated Fact 2). In 1998, Contec begin also purchasing URCs with the two programming methods from a company called Kyung. (Ex. M, Stipulated Fact 3). In 1999, Contec added Seoby Electronics to its list of suppliers of URCs containing the programming methods. (Ex. M, Stipulated Fact 4).

On February 16, 1999, Contec entered into the MPA with Remote Solution (which was then called Hango Electronics Co., Ltd.). (Ex. M, Stipulated Facts 5 & 6; Ex. E).

Section 1(a) of the MPA provided that:

---

[3] The parties stipulated as to certain facts in lieu of live testimony.

5

Purchaser [Contec] will provide Seller [Remote Solution] with specifications (which may or may not include design parameters, functionality, layout and overlay) with respect to the RCUs to be designed, manufactured and sold pursuant to this Agreement. Seller will thereupon design an RCU in accordance with such specifications. (RCUs designed and/or manufactured and sold by Seller to Purchaser pursuant to this Agreement are referred to herein as "Products").

(Ex. M, Stipulated Fact 8; Ex. E at ¶1(a)).

Section 3(a) of the MPA states that:

All of the following items, if supplied by Purchaser to Seller are considered Purchaser's proprietary, confidential information or if developed by Seller in connection with its performance of its obligations pursuant to this Agreement are considered work for hire on behalf of Purchaser and shall be and are the Purchaser's proprietary, confidential information and property:

    (i)    RCU designs (including conceptual designs),specifications, overlays, functionality and layout;

    (ii)    Plastic case designs;

    (iii)    Software code; and

    (iv)    Semiconductor-chips

(All of the foregoing is referred to as "Proprietary Information").

Seller shall and hereby does assign to Purchaser all of its rights in and to the Proprietary Information. Seller agrees to perform all reasonable acts and execute all necessary or appropriate documents and otherwise provide assistance so as to vest title to the Proprietary Information in Purchaser and so as to enable Purchaser to obtain for itself or its nominees patents, copyrights and other legal protection for the Proprietary Information.

(Ex. M, Stipulated Fact 9; Ex. E at ¶3(a)).

Section 3(c) of the MPA provides that:

Seller shall defend any suit or proceeding brought against Purchaser to the extent that such suit or proceeding is based

6

on a claim that the Products constitute an infringement of any valid United States or foreign patent, copyright, trade secret or other intellectual property right and Seller shall pay all damages and costs awarded by final judgment against Purchaser.

(Ex. M, Stipulated Fact 10; Ex. E at ¶3(c)).

Section 13(a) of the MPA provided that:

Each party shall indemnify and hold harmless the other party, its shareholders, directors, officers, employees, agents, designees and assignees, or any of them, from and against all losses, damages, liabilities, expenses, costs, claims, suits, demands, actions, causes of actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "Damages") caused by, relating to, arising from a default in the performance by such party in accordance with this Agreement of its obligations hereunder, or a breach of its obligations hereunder, or a breach of its warranties or representations as made herein.

In the event of a claim with respect to which a party may be the indemnified party hereunder, such party (the "Indemnified Party") shall notify the other party (the "Indemnifying Party") in writing as soon as practicable, but in no event later than thirty (30) days after receipt of such claims. The Indemnified Party's failure to provide such notice shall not preclude it from seeking indemnification hereunder unless such failure has materially prejudiced the Indemnifying Party's ability to defend such claim. The Indemnifying Party shall promptly defend such claim (with counsel of its own choosing) and the Indemnified Party shall cooperate with the Indemnifying Party in the defense of such claim, including the settlement of the matter on the basis stipulated by the Indemnifying Party (with the Indemnifying Party being responsible for all costs and expenses of such settlement). If the Indemnifying Party within a reasonable time after notice of a claim fails to defend the Indemnified Party, the Indemnified Party shall be entitled to undertake the defense, compromise or settlement of such claim at the expense of the Indemnifying Party. Upon the assumption of the defense of such claim, the Indemnifying Party may settle, compromise or defend as it sees fit.

7

(Ex. M, Stipulated Fact 11; Ex. E at ¶13(a)).

At the time immediately after the MPA was entered into, Remote Solution was supplying only dedicated remote control units (*i.e.,* remote control units that operated only one appliance) to Contec. (Ex. M, Stipulated Fact 12).

On March 16, 2000, Contec sent Remote Solution a sample of Contec's RT-U49C URC (containing the autoscan and direct entry methods of programming) and asked Remote Solution for a price quote for manufacturing that unit. (Ex. M, Stipulated Fact 13).

On April 7, 2000, Contec placed an order with Remote Solution for the development of the mold and software for the RT-U49C. Contec advised Remote Solution at that time that Remote Solution's development of the software and mold was intended to develop a secondary source for Contec's RT-U49C production.     (Ex. M, Stipulated Fact 14). Thereafter, pursuant to purchase orders from Contec, Remote Solution would manufacture URCs according to specifications provided by Contec. (Ex. M, Stipulated Fact 23).



On or about February 12, 2002, Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, "Philips") filed suit against Contec Corporation in the U.S. District Court for the District of Delaware, Civil Action No. 02-123, alleging patent infringement in connection with the two programming methods for the URCs. Philips subsequently amended its Complaint to include Remote Solution Co., Ltd., as a defendant, along with two other of Contec's suppliers, CMT and Seoby.

Contec and Seoby settled with Philips. On August 28, 2003, the Hon. Kent A. Jordan entered a publicly-filed Consent Judgment and Order that states, in part, that "Contec and Seoby have infringed United States Letters Patent Nos. 4,703,359 and 5,872,562 by their manufacture and sale of universal remote control units using (i) the programming system Contec referred to in connection with the remote control units accused in this Action as "Point and Press Programming" and (ii) a programming system that Contec used in connection with the remote control units accused in this Action that required the user to input "setup" codes for different appliances, both of which (i) and (ii) refer to specific methodology employed in remote control units sold prior to this time and that were at issue in this litigation." (D.I. 258 in C.A. No. 02-123).

---

4

    In the stipulated facts, Contec lodged an objection to Stipulated Fact 27, but the objection was based on relevance, not accuracy.

## ARGUMENT

## I.     INTRODUCTION.

This action arises from an arbitration between a Delaware corporation and a Korean entity regarding international commerce. As such, it falls under the Federal Arbitration Act. 9 U.S.C. §§1, 2. This Court has subject matter jurisdiction over the present motion pursuant to 8 U.S.C. §§10-12.

Although the decision of an arbitrator is entitled to deference on a motion to vacate an arbitration award, such deference "is not the equivalent of a grant of limitless power." **Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6647**, 916 F.2d 63, 65 (2nd Cir. 1990). Indeed, "courts are neither entitled nor encouraged to 'rubber stamp' the interpretations and decisions or arbitrators." **Mattesson v. Ryder Systems, Inc.**, 99 F.3d 108, 113 (3rd Cir. 1996).

In this motion, Remote Solution is not asking the Court to adopt new principles of law or deviate from any established principles of law. The grounds put forth by Remote Solution are all well-established. In this case, there are examples of manifest and knowing disregard of uncontradicted law, violations of well-established public policy and disregard of unambiguous language in the contract, with the arbitrator exceeding his authority and dispensing his personal brand of justice. Any one of these reasons is grounds for modifying (if not vacating) the arbitrator's award. Collectively, they add up to one of those rare instances where the Court must step in and undo the wrong.

## II.    THE ARBITRATOR EXCEEDED HIS AUTHORITY BY FAILING TO MAKE FINDINGS OF FACT AND FAILING TO PROVIDE REASONS FOR HIS DECISION ON LIABILITY AS REQUIRED BY THE MPA.

The parties agreed to bifurcate the arbitration proceedings, first dealing with the issue of whether Contec was entitled to indemnification, and then, if so, dealing with the issue of damages.

The parties submitted a statement of agreed-upon facts along with legal memoranda. (Exs. I-M). In the liability phase there were two issues, one legal and one factual. First, under applicable New York law, did the language of the indemnity provision of the MPA encompass indemnification for patent infringement where Contec, as indemnitee, caused such infringement by supplying infringing specifications to Remote Solution?

If the answer to the that issue was "yes", the factual issue was whether Contec's failure to investigate whether the specifications were infringing before submitting them to Remote Solution, and failing to notify Remote Solution of known claims of patent infringement made by UEI, rose to the level of gross negligence or recklessness so as to preclude indemnity as a matter of law, especially given that Contec, as indemnitee, owed a legal duty to Remote Solution, as indemnitor, to act reasonably to protect Remote Solution against liability.[5]

The arbitrator responded to these arguments by ruling that (i) "Section 3(c) of the 1999 Agreement is clear and unambiguous," (ii) "Section 3(c) constitutes an express

---

[5]

**American Export Isbrandtsen Lines, Inc. v. U.S.**, 390 F.Supp. 63, 68 (S.D.N.Y. 1975) ("[a]n indemnitee has a duty to act reasonably under all the circumstances so as to protect the indemnitor against liability").

agreement by Remote Solution to defend any suit or proceeding against Contec based on a claim that inter alia "Products" (i.e. 'Designed and/or manufactured and sold by Seller [Remote Solution] to Purchaser [Contec] pursuant to this Agreement") infringe a valid United States patent," and (iii) "Remote Solution's defenses do not avail it here." (Ex. C).

This ruling by the arbitrator is inadequate under the terms of the MPA. Section 19 of the MPA states, in pertinent part, that the "award of the panel shall be accompanied by findings of fact and a statement of reasons for the decision." (Ex. E at ¶19). As such, Remote Solution was entitled to findings of fact and reasons why Contec should be entitled to indemnification, in light of both (i) New York law strictly construing indemnification provisions against claims arising from the indemnitee's own misconduct, and (2) Contec's reckless or grossly negligent failure to protect Remote Solution from being in a position to have to indemnify Contec.

In **Western Employers Ins. Co. v. Jefferies & Co., Inc.**, 958 F.2d 258 (9th Cir. 1992), as in the present case, the arbitrator failed to make findings of fact and conclusions of law as required by the arbitration agreement. The Eighth Circuit ruled as follows:

> Western does, however, have a right to arbitration according to the terms for which it contracted. The Federal Arbitration Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Parties cannot be compelled to arbitrate unless they have agreed to do so. Presumably, had Western discovered on the first day of the hearings that the arbitrators would not make the requested findings and consequently refused to submit to arbitration, a court could not have compelled it to submit to arbitration. If a court would not hold Western to its agreement to arbitrate before the hearings took place, we do not see how the difference in timing can justify a different result today.

12

*       *       *

By failing to provide Western with findings of fact and conclusions of law, the NASD panel clearly failed to arbitrate the dispute according to the terms of the arbitration agreement. In so doing, the panel exceeded its authority under 9 U.S.C. §10(d). We recognize that we have traditionally vacated arbitration awards under thus provision in cases where the arbitrators somehow alter the *parties'* contractual obligations, and Jefferies has fulfilled all of its obligations to Western. However, arbitrators can also "exceed their powers" under 9 U.S.C. §10(d) when they fail to meet *their* obligations, as specified in a given contract, to the parties. We therefore vacate the award.

**Id.** at 261-62 (citations and footnote omitted; italics in the original).

The arbitrator's failure to provide findings of fact and reasons supporting his legal and factual conclusions renders the award void as in violation of the arbitrator's duties under the arbitration agreement.

13

II.    **THE ARBITRATOR VIOLATED PUBLIC POLICY AND MANIFESTLY DISREGARD APPLICABLE NEW YORK LAW IN DETERMINING THAT THE MPA GRANTED INDEMNIFICATION ARISING FROM CONTEC'S OWN ACT IN CAUSING THE INFRINGEMENT BY PROVIDING INFRINGING SPECIFICATIONS TO REMOTE SOLUTION.**

If the Court determines for some reason that the arbitrator's failure to provide findings of fact and explanations as to liability does not warrant vacating the award, then the Court must address whether the arbitrator, in interpreting the language of the indemnity provision so as to permit indemnity under these circumstances, exhibited manifest disregard of the law and/or violated public policy.

An award may be vacated under circumstances where the arbitrators manifestly disregarded the law or where enforcement would violate public policy. **Greenberg v. Bear, Stearns & Co.**, 220 F.3d 22, 27 (2nd Cir. 2000).

An award may be deemed void as violating public policy, provided that the public policy asserted is well-defined and ascertainable by reference to legal precedent and laws and not merely from general considerations of the public interest. **Exxon Shipping Co. v. Exxon Seamen's Union**, 993 F.2d 357, 360 (3rd Cir. 1993). Where the issue is whether the decision of the arbitrator violated an explicit public policy, the Court accepts the facts as found by the arbitrator (although in this case the arbitrator did not make any findings of fact), but reviews the arbitrator's conclusions *de novo.* **Paine Webber, Inc. v. Agnon**, 49 F.3d 347, 350 (8th Cir. 1995); **G.B. Goldman Paper Co. v. United Paperworkers International Union, Local 286**, 957 F.Supp. 607, 618 (E.D. Pa. 1997).

14

An award demonstrates manifest disregard for the law where the evidence discloses that the arbitrator was aware of the law but ignored it. **Duferco Int'l Steel Trading v. T. Klavness Shipping A/S**, 333 F.3d 383, 389 (2d Cir. 2003). Manifest disregard also exists where the arbitrator's conclusion is unsupported by principles of contract construction. **Int'l Brotherhood of Teamsters, Chaffeurs, Warehousemen and Helpers of America, Local 1249 v. Western Pennsylvania Motor Carriers Ass'n**, 574 F.2d 783, 786 (3rd Cir. 1978).

The well-established public policy of New York[6] expressly prohibits indemnification for one's own intentional, reckless or grossly negligent conduct. **American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities, Inc.**, 351 F.Supp.2d 79, 99 (S.D.N.Y. 2004). Moreover, an agreement purporting to indemnify against the indemnitee's own acts of negligence or strict indemnity does not violate New Yoek public policy *only if* the language of the agreement, when strictly construed, clearly and unequivocally demonstrates an intent to provide for such indemnification. **Jordan v. City of New York**, 162 N.Y.S.2d 145, 147 (N.Y.A.D. 1957), *aff'd*, 152 N.E.2d 667 (N.Y. 1958). *Accord* **Eggeling v. Ryder Truck Rental, Inc.**, 677 N.Y.S.2d 845, 846 (N.Y.A.D. 4th Dept. 1998) (negligence); **Grant Airmass Corp. v. Gaymar Industries, Inc.**, 645 F. Supp. 1507, 1515 (S.D.N.Y. 1986) (negligence); **Altman v. Strong's Marineland**, 580 N.Y.S.2d 425 (N.Y.A.D. 2nd Dep't 1992) (strict liability); **Fendley v. Power Battery Co.**, 561 N.Y.S.2d 760 (N.Y.A.D. 1st Dep't 1990) (strict liability).[7] *See also* **Leibel v. Flynn Hill Elevator Co.**, 791 N.Y.S.2d

---

[6]

The MPA is governed by New York law. (Ex. E ¶25).

[7]

(continued...)

15

639 (N.Y.A.D. 2nd Dept. 2005) (contract which indemnifies indemnitee against own negligence violates public policy").

"The public policy behind voiding any contract provision that indemnifies a wrongdoer from paying the price for his wrongful conduct is to avoid encouraging the wrongful conduct by removing the risk of loss." **Weissman v. First Unum Life Insurance Co.,** 44 F.Supp.2d 512, 520 (S.D.N.Y.1999).

Therefore, it is necessary to determine whether the language of the indemnity provision of the MPA providing indemnification of "any suit or proceeding" clearly and unequivocally demonstrates an intent to indemnify Contec for a patent infringement case that arose because of Remote Solution's manufacture and sale of universal remote controls to Contec's which contained infringing specifications that were supplied to Remote Solution by Contec. The answer resoundingly is "no," and the arbitrator's contrary decision flies in the face of well-established and consistent New York law and public policy.

New York cases repeatedly demonstrate that a general reference to "any suit or proceeding," without more, is insufficient to demonstrate that the parties intended to cover the indemnitee's own wrongdoing. *E.g.,* **Sweeney v. Hertz Corp.,** 704 N.Y.S.2d 19, 21 (N.Y.A.D. 1st Dept. 2002) (contract providing that indemnitor "will indemnify and hold Hertz, its agents and employees harmless from and against any loss, liability and expense ...arising from the use or possession of the car by you or any operators with your, his or her

---

[7](...continued)
Although these latter cases involve strict tort liability, the distinction is one without a difference since "[i]nfringement, whether direct or contributory, is essentially a tort...." **Carbice Corp. of America v. American Patents Development Corp.,** 293 U.S. 27, 33 (1931).

16

permission," did "not clearly and unequivocally express an intent to indemnify Hertz against its own negligence"); **Eggeling**, 677 N.Y.S.2d at 846 (indemnity provision covering "any claim or cause of action 'arising out of or caused by the use of the Vehicle rented'," did "not clearly and unequivocally express an intent to indemnify Ruder against its own negligence"); **Facilities Development Corporation v. Miletta**, 584 N.Y.S.2d 491, 494 (N.Y.A.D. 3rd Dept. 1992) (indemnification "from suits, actions, damages and costs of every nature and description resulting from the work under this [c]ontract" did "not clearly connote an intent to provide for the indemnification of plaintiff's representative for damages caused by the representative's own tortious conduct and/or breach of contract"); **Quinones**, 469 N.Y.S.2d at 744 (agreement indemnifying against "all claims and demands for, or in connection with any accident, injury or damage whatsoever caused to any person or property arising, directly or indirectly, out of the business conducted by the Licensee" did not permit court to determine "with the requisite certainty that the licensing agreement was intended either to exculpate Waldbaum's from the consequences of its own negligence or to provide indemnity under the circumstances of this accident"); **Grant Airmass Corp.**, 645 F. Supp. at 1516 (where "[t]he Purchaser agrees to indemnify and save harmless Calspan and its employees against any and all claims for personal injury or property damage arising from the use of or related in any way to the test results or data delivered by Calspan pursuant to this contract," court holds that "[t]he indemnity provision here is not so broad or inclusive, nor were negotiations of the provision so extensive, as to allow the Court to construe the provision to cover Calspan's own negligence"). *See also* **Baut v. Pethick Construction Co.**, 262 F.Supp. 350, 363 (M.D. Pa. 1966) (under similar Pennsylvania law, statement that "[a]ll

17

apparatus, appliance or materials must be furnished by the contractor under guarantee against claims for royalties or infringements of patents" did not include indemnification against indemnitee's own infringement); **Travelers Indemnity Co. v. AMR Services Corp.**, 921 F.Supp. 176, 186 (S.D.N.Y. 1996) ("indemnification clauses, such as that involved here, expressly agreeing to indemnify against 'any and all claims,' etc., 'including those attributable in whole or in part to the negligence [except gross negligence] of either party,' are subject to strict construction rather than expansive application. A contract of indemnification must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed").

Remote Solution cited these cases to the arbitrator and provided copies of these cases to him. (Ex. J at 8-14). Contec did not cite or offer any cases showing any contrary interpretation. (Ex. K at 3-7; Ex. M at 22-28). As such, this is not a case where the arbitrator merely chose between competing interpretations. Instead, this is a case where well-established principles of contract interpretation and case precedent permitted only one interpretation, and the arbitrator knowingly chose to ignore it.

The arbitrator stated that "Section 3(c) of the 1999 Agreement is clear and unambiguous" and that it "constitutes an express agreement by Remote Solution to defend any suit or proceeding against Contec based on a claim that the 'Products'...infringe a valid United States patent...." The import of that language under New York law, however, mandated a result contrary to that found by the arbitrator. The arbitrator made no effort to reconcile the conflict between his ruling and the abundance of case law holding directly to the contrary. As such, the decision of the arbitrator is irrational and not drawn from the

18

essence of the contract, and so the liability award must be vacated. **George A. Hormel & Co. v. United Food & Commercial Workers, Local 9**, 879 F.2d 347, 351 (8th Cir, 1989) ("where an arbitrator fails to discuss a probative contract term, and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract"); **Clinchfield Coal Co. v. Dist. 28, United Mine Workers**, 720 F.2d 1365, 1369 (4th Cir. 1983) ("[w]here, as here, the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract").

Additionally and alternatively, as the arbitrator's award flies in the face of well-established public policy requiring clear and unequivocal language permitting indemnification for one's own wrongdoing, in broader terms than in the present agreement, the award should be deemed void.

### III.    THE ARBITRATOR ERRED BY AWARDING CONTEC A SHARE OF CONTEC'S PAYMENT UNDER THE SETTLEMENT AGREEMENT WITH PHILIPS, IN DISREGARD OF UNAMBIGUOUS LANGUAGE.

An arbitrator may not disregard or modify unambiguous language in a contract. If the arbitrator interprets unambiguous language in any way different from its plain meaning, the arbitrator has exceeded his authority. **Missouri River Services, Inc. v. Omaha Tribe of Nebraska**, 267 F.3d 848, 855 (8th Cir. 2001).



As demonstrated below, these payments are not encompassed within the clear and unambiguous language of either the MPA or the settlement agreements in question. In disregarding such clear and unambiguous language, the arbitrator exceeded his authority.

### A.    THE INDEMNIFICATION PROVISION OF THE MPA DOES NOT INCLUDE AMOUNTS OBTAINED IN SETTLEMENT.

Section 3(c) of the MPA states that "Seller shall pay all damages and costs *awarded by final judgment* against Purchaser." (Ex. E at ¶3(c)). (Italics added). Although Remote Solution pointed out this language to the arbitrator (Ex. O at 1), the arbitrator did not make

---



any attempt to justify the award in light of these terms, but instead ignored the language of the MPA.

      This action did not involve final judgments, but rather settlements before judgment. *See* **Furrer v. C.I.R.**, 566 F.2d 1115, 1116 (9th Cir. 1977), ***cert. denied***, 437 U.S. 903 (1978) (noting distinction between final judgments and settlements).

      Even if the Court were to consider the *Philips* action a "final judgment" because the Court entered a consent decree, the Court did not "award" damages. Rather, payment was negotiated between the parties. This does not meet any legal or lay interpretation of the term "awarded."

      Additionally, there was no consent judgment entered in the UEI case (presumably because, unlike the settlement agreement in the Philips case, the settlement agreement did not require Contec to admit infringement), but rather simply a stipulation of dismissal.[10] (Ex. G). As such, there was no "final judgment," much less a "final judgment" that "awarded" any damages.

      In the absence of any justification for interpreting settlements as "final judgments," and negotiated settlement payments as "awards" under any principles of contract interpretation, the arbitrator exceeded his authority and disregarded the unambiguous language of the MPA and this portion of the award should be deemed void.

---

[10] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

**B.    THE ARBITRATOR DISREGARDED THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE SETTLEMENT AGREEMENT WITH PHILIPS WHICH ALLOCATES THE PAYMENTS EXCLUSIVELY TO ACTS OF INFRINGEMENT BY ANOTHER SUPPLIER.**



---

11

> In candor to the Court, Remote Solution has argued in the Pre-Trial Order in the Philips case that any judgment against Remote Solution should be reduced by the amount paid by Contec in the settlement agreement. If the Court agrees (as it should) that the arbitrator did not have authority to award Contec any portion of the settlement agreement with Philips for the reasons stated above, then Remote Solution will withdraw its argument
>
> (continued...)

22

In light of the clear and unambiguous language of the settlement agreement, and the arbitrator's failure to address this language, the arbitrator exceeded his authority in awarding Contec any portion of the settlement agreement with Philips.

------

[11](...continued)

in the Philips action.  However, if the Court determines for some reason that the clear and unambiguous language quoted above permitted the arbitrator's award to Contec, then the import of that decision is that a portion of such settlement amount was attributable to sales of universal remote controls by Remote Solution.  In that case, Remote Solution's motion in the Philips case remains viable.

The assertion of the argument in the Philips case does not judicially estop Remote Solution from asserting a contrary position in this case, as the doctrine of judicial estoppel does not arise until Remote Solution prevails on one position or the other.  **In re Armstrong World Industries, Inc.**, 432 F.3d 507, 517-18 (3rd Cir. 2005).

IV.    **THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND THE TERMS OF THE MPA BY AWARDING ATTORNEYS FEES IN CONNECTION WITH FEDERAL COURT LITIGATION TO STAY THE ARBITRATION.**

Contec sought, and the arbitrator awarded, reimbursement of Contec's attorneys' fees incurred in federal court litigation, which Contec originally initiated to compel arbitration, and in which Remote Solution sought to stay arbitration pending a judicial ruling on arbitrability.[12]  (Ex. D at 17).

In making that award, the arbitrator manifestly disregarded controlling New York law, which was provided to him.  Under that law, as interpreted by New York's highest court, contractual provisions may not be interpreted as permitting recovery of attorney's fees incurred in litigation between the parties unless the intention of the parties to so provide is "unmistakably clear." **Hooper Associates, Ltd. v. AGS Computers, Inc.**, 548 N.E.2d 903, 905-06 (N.Y. 1989).  Further, under applicable New York law,[13] a contractual provision indemnifying against "any and all claims, demands or causes of action, any and all costs or expenses, including attorney fees" is not an "unmistakably clear statement that [attorneys' fees incurred in actions between parties to the contract] were intended." **Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.**, 98 F.3d 13, 20-21 (2nd Cir. 1996). *See also* **Hooper Associates**, 548 N.E.2d at 903 (statement that party would "indemnify and hold harmless...from any and all claims, damages, liabilities, costs and

---

[12]
      **Remote Solution Co., Ltd. v. Contec Corporation**, 398 F.3d 205 (2nd Cir. 2005).

[13]
      Federal courts apply state law when addressing contractual attorneys' fees provisions. **Alderman v. Pan Am World Airways**, 169 F.3d 99, 103 (2nd Cir. 1999).  The MPA is governed by New York law.  (Ex. E at ¶25).

24

expenses, including reasonable counsel fees" arising out of, among other things, patent infringement, did not include litigation to enforce that agreement); **Klock v. Grosodonia**, 674 N.Y.S.2d 187 (N.Y.A.D. 4th Dept. 1998) (agreement indemnifying against "any and all injury, loss or damage of whatever nature" did not include attorneys' fees incurred in establishing the right to indemnification").[14]

Section 13(a) of the MPA refers to "all losses, damages, liabilities, expenses..." (Ex. E at 13(a)). This language, under the precedent cited, clearly does not justify attorneys' fees in connection with the motion to stay arbitration. This conclusion is supported by the fact that Section 13(b) states that "IN NO EVENT SHALL EITHER PARTY HEREUNDER BE LIABLE TO THE OTHER ... FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT...." (Capitalization in original).

The arbitrator sidestepped Section 13(a) by stating that "Remote Solution's contentions based on New York indemnity cases are misplaced. This Contec claim for attorneys' fees and expenses is based on Section 19 of the [MPA], not an indemnity agreement." (Ex. D at 17). Section 19 of the MPA states that "[t]he prevailing party in any such situation will be entitled to recover from the other party all of its expenses, including... Its attorneys fees incurred in the conduct of such arbitration...." (Ex. E at 10).

The arbitrator did not explain why the rule of **Hooper Associates** is limited to a clause that expressly uses the term "indemnification." Any contractual provision that permits

---

[14] These cases were cited to and provided to the arbitrator.

25

recovery of legal expenses is an "indemnification" provision subject to strict construction. *E.g.,* **Oscar Gruss & Son, Inc. v. Hollander,** 337 F.3d 186, 198-99 (2nd Cir. 2003).  As such, the distinction drawn by the arbitrator is irrational.

Moreover, the arbitrator made no effort to construe the language of Section 19 and explain why that language, which is much more limited than the language of Section 13(a), permits an award of attorneys' fees in federal court litigation.  Additionally, the arbitrator failed to reconcile the language of Section 13(b). *See* **George A. Hormel & Co.,** 879 F.2d at 351 ("where an arbitrator fails to discuss a probative contract term, and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract"); **Clinchfield Coal Co.,** 720 F.2d at 1369 ("[w]here, as here, the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract").

Finally, it appears that the arbitrator's decision was improperly based, at least in part, on factors extrinsic to and unrelated to the MPA.  In addressing these provisions, the arbitrator stated that "Remote Solution strove mightily in the New York action to derail this arbitration.  In Korea, Remote Solution initiated an action whose subject matter clearly is within the scope of Section 19.  Remote Solution's conduct in attempting to frustrate the purpose of Section 19 is palpable."  (Ex. D at 17).  As this information does not assist in construing any allegedly ambiguous contract language, it is evident that the arbitrator's distaste for certain conduct of Remote Solution improperly rendered his decision based on some feeling or thought outside the terms of the contract.

26

The arbitrator's failures in these regards renders his award in excess of his authority, in manifest disregard of the law, and not drawn from the essence of the MPA, and so void.

V.      **THE ARBITRATOR DISREGARDED THE EXPRESS LANGUAGE OF THE MPA, AND SO EXCEEDED HIS AUTHORITY, BY AWARDING CONTEC ITS ATTORNEYS' FEES IN EXCESS OF THE FEES INCURRED BY REMOTE SOLUTION.**

Section 19 of the MPA states, in pertinent part, that the "prevailing party...will be entitled to recover from the other all of its expenses, including, without limitation... its attorneys fees incurred in the conduct of such arbitration *but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees."* (Ex. E at ¶19, italics and bolding added).

In what may be the most egregious abuse of the arbitrator's power, the arbitrator disregarded this express limitation on attorneys' fees and awarded more than the actual cost incurred by Remote Solution, as shown by the below-chart:

|  | Amount Awarded Contec | Remote Solution's Fees |
|---|---|---|
| Arbitration | ███████████ | █████████ |
| New York Action[15] | ████████████ | ██████████[16] |

Although an arbitrator is empowered to interpret a contract, he may not re-write, amend, modify or disregard clear and unambiguous terms of a contract. **McGrann v. First Albany Corp.**, 424 F.3d 743, 749 (8th Cir. 2005). When an arbitrator does that, he exceeds

---

[15]     If the Court determines that the arbitrator acted properly in awarding attorneys' fees in connection with the New York Action under Section 19, then the restriction in Section 19 limiting fees to the opposing party's actual costs must be equally applicable.

[16]     Rather than burden the record with the hundreds of pages of legal bills that were submitted in the arbitration, Remote Solution provides the totals here. In the event that Contec disagrees with these numbers, and the parties are unable to reconcile the figures, Remote Solution will submit the bills into the record.

28

his authority. **Katz v. Feinberg**, 167 F.Supp.2d 556, 572 (S.D.N.Y. 2001), *aff'd*, 290 F.3d

95 (2nd Cir. 2002).

      The arbitrator explained his action this way:

> Section 19 plainly provides that "in no event will the recovery of its [the prevailing party's] attorney's fees be in excess of the actual cost of the other party's attorney's fees." However, it is equally plain to the Arbitrator that Remote Solution has breached its obligation of good faith and fair dealing under New York law and has thus frustrated an appropriate recovery of attorneys' fees and expenses by Contec. Contec's point is well taken that Remote Solution's unusually low billings here cannot provide a basis for negating the spirit of Section 19. Surely, it was not the intent of the parties that one party could reduce to zero, or even 10%, the right of the prevailing party to recover fees and expenses by way of arranging for the losing party's attorney's fees and expenses to approach zero. Reading Section 19 in an objectively reasonable manner, the Arbitrator finds that Remote Solution cannot properly invoke Section 19's limitation on the recovery of attorney's fees under the circumstances created here by Remote Solution and its counsel.

(Ex. D at 18).[17]

      The problem with the arbitrator's "objectively reasonable" reading of Section 19 is

that it relies on a violation of the implied covenant of good faith and fair dealing, and the

---

[17]

      Oddly, the arbitrator addresses the intent of the parties even though there was no testimony or other evidence about the intent of the parties. Further, the arbitrator's disparaging comment that Remote Solution and its counsel "arranged" for Remote Solution's legal fees "to approach zero" is similarly unsupported in the record. Remote Solution provided the arbitrator with its fee agreement with counsel showing a rate of $225.00 per hour. Remote Solution's counsel recorded his time consistent with his sense of ethics and professionalism. Similarly, the arbitrator's pejorative comment that Remote Solution and its counsel "created" these circumstances is unwarranted. It is evident from these comments that the arbitrator based his decision on matters unrelated to the contractual language.

29

arbitrator was informed prior to his ruling that under applicable New York law the implied covenant of good faith and fair dealing may not be invoked where it conflicts with the express terms of a contract. (Ex.Q at 1, citing **Mark Patterson, Inc. v. Bowie**, 654 N.Y.S.2d 769, 771 (N.Y.A.D. 1st Dept. 1997)). This limitation that the implied covenant of good faith and fair dealing may not be invoked to contradict express terms of a contract is firmly rooted in New York law. **Consolidated Edison, Inc. v. Northeast Utilities**, 426 F.3d 524, 529 (2nd Cir. 2005) (citing additional cases); **Times Mirror Magazines, Inc. v. Field & Stream Licenses Company**, 294 F.3d 383, 394-96 (2nd Cir. 2002) ("TM cannot avoid the express terms of the contract by relying on the implied covenant of good faith and fair dealing"); **Emigrant Industrial Sav. Bank v. One Hundred Eight West Forty Ninth Street Corporation**, 8 N.Y.S.2d 354, 359 (N.Y.A.D. 1st Dept. 1938), *aff'd*, 21 N.E.2d 620 (N.Y. 1939) ("[t]he rule is that where there is an express covenant in regard to any subject, no covenants are to be implied as to the same subject"). For obvious reasons, Contec did not provide the arbitrator with any legal authority contradicting this steadfast rule of law. The arbitrator made no effort to address this rule of law, and chose instead to ignore it.

The MPA expressly states that "***in no event*** will the recovery of [the winner of the arbitration's]s attorney's fees be in excess of the actual cost of the other party's attorney's fees." (Italics and bolding added). The language could not be any clearer. The only way the arbitrator could reach his result was to disregard clear, unequivocal and consistent law on the issue and impose his own personal view of right and wrong. This is not an issue of contract interpretation, as there was no ambiguity or conflicting law or interpretation. Instead, the

30

arbitrator's award was nothing more than judgment by personal fiat in order to give Contec what the arbitrator considered "an appropriate recovery." (Ex. D at 18).

To permit this ruling to stand would be to eviscerate the rule that arbitrators may not ignore or re-write unambiguous contract terms. All an arbitrator would have to do is invoke the implied covenant of good faith, regardless of the legitimacy of that invocation, and the arbitrator would be free to reach whatever result he or she deemed just. As the arbitrator's decision is irrational, unsupportable by any principle of contract interpretation and is in manifest disregard of the law and the express language of the MPA, it should be voided.

VI.    **THE ARBITRATOR ERRED BY AWARDING ATTORNEYS' FEES INCURRED IN OBTAINING COURT CONFIRMATION OF THE FIRST INTERIM AWARD AFTER THE DISTRICT COURT DENIED AN AWARD OF THE SAME FEES.**

After the arbitrator issued his initial award which, among other things, enjoined Remote Solution from proceeding with litigation in Korea, Contec had the interim award confirmed in the U.S. District Court for the Northern District of New York. Contec requested attorneys' fees in connection with that application. The Court initially granted the request for attorneys' fees, but vacated his Order after Contec's lawyers failed to submit their statement of the amount of fees in time. **Contec Corporation v. Remote Solution Co., Ltd.**, C.A. No. 1:04-CV-910, Hurd, J. (N.D.N.Y. Feb. 11, 2004) (noting that Contec's fee application was "in excess of $30,000, an amount that is grossly excessive") (Ex. F).

Having lost its claim for fees in the District Court, Contec sought a second bite of the apple and requested such fees from the arbitrator. Although the arbitrator does not specifically refer to those fees in his ruling, they apparently are included in his general award of fees in connection with the New York Action. However, principles of collateral estoppel preclude an arbitrator from relitigating issues decided by a federal court. **McCown v. Sears, Roebuck and Co.**, 908 F.2d 1099, 1107 (2nd Cir. 1990); **Mansbach v. Prescott, Ball and Turben**, 598 F.2d 1017, 1031 (6th Cir. 1979).

As the District Court denied the request for attorneys' fees in connection with the confirmation of the interim award, the arbitrator had no authority to include such fees in his award, and the $30,000 should be deducted from the award.

## CONCLUSION

Arbitrators are bound by the contracts and rules which give them the power to act. "An arbitrator who throws aside those rules and implements his 'own brand of industrial justice' oversteps his powers, and the resulting award must be set aside." **Lindland v. U.S. Wrestling Ass'n, Inc.**, 227 F.3d 1000, 1004 (7th Cir. 2000) (quoting **Steelworkers v. Enterprise Wheel & Car Corp.**, 363 U.S. 593, 597 (1960)).

The arbitrator here made implausible interpretations of the MPA, and made rulings directly contrary to controlling law not only with both full knowledge of that law but without any contradictory precedent from Contec. He interpreted the MPA in a way that violates the clearly expressed public policy of the State of New York. And he did violence to clear and unambiguous contractual language to obtain a result he appeared to favor personally, directly contrary to the express terms if the MPA.

WHEREFORE, and for the foregoing reasons, Remote Solution Co., Ltd. respectfully requests that the Court enter judgment in its favor:

(1)    Vacating the award on liability (and, as a consequence, damages) because (a) the arbitrator failed to provide findings of fact and a statement of reasons as required by the MPA, and/ or (b) the arbitrator's award on liability violated the public policy of New York and/or was in manifest disregard of the law; or

(2)    Modifying the damage award by:

(a)    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

33



; and

    (d)     Reducing the award of attorneys' fees in the New York Action by $30,000, as an amount improperly awarded after the District Court denied such fees;[18] and

    (3)     Awarding Remote Solution its costs and expenses, along with such other and further relief that the Court deems just.

Dated: February 15, 2006

                          Respectfully submitted,

                          David L. Finger (DE Bar ID #2556)
                          Finger & Slanina, LLC
                          One Commerce Center
                          1201 Orange Street, Suite 725
                          Wilmington, DE 19801-1155
                          (302) 884-6766
                          Attorney for movant Remote Solution Co., Ltd.

---

[18]

    To the extent the Court reduces the award below the offset amount of $620,038 accepted by the arbitrator, or vacates the award entirely, Remote Solution retains a claim against Contec for the difference.

## CERTIFICATE OF SERVICE

I, David L. Finger, hereby certify that on this 15th day of February, 2006, I caused

two copies of the foregoing document to be served via hand-delivery on the below-listed

counsel of record:

> Paul E. Crawford, Esq.
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange St.
> Wilmington, DE 19801

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766