INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

In the Matter of the Arbitration between:

CONTEC CORPORATION,              )
                                 )
                  Claimant,      )       No. 50 T 133 00325 03
                                 )
        v.                       )
                                 )
REMOTE SOLUTION CO., LTD.,       )
                                 )
                  Respondent.    )

## AWARD OF ARBITRATOR RE DAMAGES

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with a February 16, 1999 arbitration agreement to which the parties are subject, and having been duly sworn, and having duly considered the submissions and allegations of the parties, do hereby AWARD as follows:

I.   **INTRODUCTION**

   A.   The Issue And The Parties

This Award is directed to the issue of the quantum of damages Contec Corporation is entitled to collect under the February 16, 1999 Manufacturing and Purchase Agreement ("1999 Agreement") between Contec L.P. and Hango Electronics Co., Ltd. ("Hango").

Contec L.P. was a New York limited partnership. On August 18, 1999, Contec L.P. was "converted" to a New York limited liability company, under the name, Contec LLC. On January 1, 2001, Contec LLC merged into Contec Corporation, a Delaware corporation. Contec Corporation, the surviving entity, is claimant here.[1]

---

[1]   On February 15, 2005, counsel for Contec advised the AAA, the Arbitrator and counsel for Remote Solution that Contec "has recently changed its name to FGH Liquidating Corp." Apparently, the caption of this arbitration has not been modified to reflect this change.

Subsequent to February 16, 1999, Hango changed its name to Remote Solution Co., Ltd. ("Remote Solution"), respondent here.

In prior proceedings in this matter, the Arbitrator has ruled that (1) Contec has standing to enforce the 1999 Agreement against Remote Solution, and (2) Contec is entitled to recover damages in an amount to be determined. This Award Of Arbitrator Re Damages determines that amount.

B. The Arbitration Clause

Section 19 of the 1999 Agreement provides, inter alia —

"In the event of any controversy arising with respect to this Agreement, ... such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'AAA') ... . The arbitrators shall have full authority, including authority to grant specific performance, injunctive or other equitable relief provided that this Section 21 [sic] shall in no way affect the right of any party to seek interim equitable relief to maintain the status quo in aid of the arbitration in any court of competent jurisdiction."

It is under this clause that the Arbitrator has previously ruled Contec Corporation has standing in this arbitration to enforce the 1999 Agreement against Remote Solution.

II. BACKGROUND

On July 11, 2003, Contec Corporation filed a demand for arbitration against Remote.

According to the demand, Contec Corporation had been a defendant in an action for patent infringement pending in the United States District Court for the District of Delaware, which was settled in May 2002 (the "UEI action"). Also, Contec Corporation and Remote Solution had been defendants in another patent infringement action pending in the same court (the "Philips action"). Contec Corporation settled with Philips in March 2003. Apparently, the Philips action has continued with Remote Solution among the defendants. On May 23, 2003, it appears that Remote Solution, through its U.S. subsidiary, moved in the Philips action for leave to assert a cross-claim against Contec Corporation for indemnification or contribution. Contec Corporation opposed the motion.

In its demand for arbitration, Contec Corporation alleges Remote Solution has not satisfied its indemnity obligations to Contec Corporation under the 1999 Agreement, with respect to fees and expenses incurred by Contec Corporation in defending itself in the UEI action "and in settling the matter." In addition, Contec Corporation has requested that Remote Solution satisfy its indemnity obligation with respect to the Philips action. Contec Corporation avers that, on

Page -2-

August 2, 2002, Remote Solution declined "to defend Contec, stating that '[a] share of fees and damage of Patents are a heavy burden for us so we can not bear these expense.'" Contec Corporation avers Remote Solution has refused to pay to Contec Corporation "any of the fees and expenses incurred by Contec in defending itself in the [Philips action] and in settling that matter."

Contec Corporation alleges that, on June 20, 2003, Remote Solution's Korean counsel transmitted to Contec Corporation a copy of a complaint against Contec Corporation filed in a Korean court and seeking payment for units shipped to Contec in January 2003. Contec Corporation avers that that payment has been withheld as a set-off against amounts owed to Contec Corporation under Remote Solution's indemnity obligations. Also, Contec Corporation avers Remote Solution's claim for payment is governed by the Section 19 arbitration provision.

In its demand for arbitration, Contec Corporation seeks inter alia –

> An award of its "defense costs ... including attorneys' fees, damages, settlement costs, royalties and interest thereon" with respect to the UEI action and the Philps action.
>
> An award directing Remote Solution to dismiss its Korean action.
>
> An award of damages "sufficient to compensate it for enforcing" the 1999 Agreement, including damages and expenses, including attorneys' fees, incurred in connection with this arbitration, Remote Solution's Korean action, and Remote Solution's cross-claim in the Philips action.

On about July 21, 2003, Contec Corporation filed a complaint in the United States District Court for the Northern District of New York (Northern District action) seeking an order that, inter alia, (1) Remote Solution arbitrate in accordance with Section 19 of the 1999 Agreement and dismiss or stay its Korean action, and (2) enjoining Remote Solution from bringing any other action or proceeding relating to any dispute arising out of the 1999 Agreement.

On September 26, 2003, the Court in the Northern District action dismissed the complaint for lack of subject matter jurisdiction. On October 1, 2003, Contec Corporation filed an amended complaint in the Northern District action. The amended complaint seeks essentially the same relief as the original complaint.

On October 12, 2003, after considering submissions from the parties, this Arbitrator issued an award, ruling that he had authority to determine whether or not Contec Corporation is entitled to enforce the 1999 Agreement and to proceed with this arbitration.

The Court in the Northern District of New York entered judgment confirming the Arbitrator's October 12, 2003 award, i.e. finding that all claims set forth in the complaint and

counter-claim are subject to arbitration. On February 14, 2005, the Court of Appeals for the Second Circuit affirmed the District Court's judgment. Thereafter, this matter reverted to the Arbitrator.

On August 18, 2005, after various written and oral submissions by the parties and preliminary rulings by the Arbitrator, the Arbitrator ruled via letter to counsel that all bases for damages relief asserted by Contec, including without limitation payments by Contec to Philips in connection with the Philips settlement agreement, would be the subject of these proceedings.

### III.   THE PARTIES' CONTENTIONS WITH REGARD TO DAMAGES

Procedurally, Contec's damages claim is being resolved by agreement on written submissions, without oral hearing. In accordance with this procedure, the parties filed, among others, the following submissions --

| Date | Submission |
|---|---|
| March 25, 2005 | Supplemental Declaration of Kenneth L. Stein, together with exhibits. |
| June 3, 2005 | Joint Statement Regarding Contec's Claim To Indemnification From Remote Solution, together with exhibits and copies of authorities cited. The Joint Statement is directed to the issue of Contec's entitlement to damages. That issue was resolved by the Arbitrator by letter ruling on July 26, 2005. The Arbitrator ruled that Contec is entitled to seek damages by way of indemnification from Remote Solution. |
| August 9, 2005 | Contec Corporation's Statement Of Damages, together with Second Supplemental Declaration Of Kenneth L. Stein and exhibit. |
| August 18, 2005 | Copies of authorities submitted by Contec. |
| August 29, 2005 | Objections of Remote Solution Co., Ltd. To Contec Corporation's Statement Of Damages, together with exhibits and authorities. |
| September 7, 2005 | Contec's Reply Brief In Support Of Its Statement of Damages, together with Third Supplemental Declaration Of Kenneth L. Stein and exhibits. |
| September 8, 2005 | Remote Solution's counsel's letter purportedly addressing new matters in Contec's reply brief. |
| November 2, 2005 | Contec's counsel's declaration, together with submission of unredacted portions of attorneys' bills re all time entries that comprise a portion of Contec's claim. |

November 23, 2005    Remote Solution's counsel's letter objecting to time entries
disclosed by Contec on November 2, 2005.

A. <u>The 1999 Agreement</u>

To put the parties' contentions in perspective, we turn first to a summary of salient aspects of the 1999 Agreement.

Under "Recitals", Contec wished to engage Hango (hereafter referred to as Remote Solution) to "design and manufacture RCU's", i.e. remote control units, for Contec and "to sell RCU's" to Contec pursuant to the terms and conditions of the 1999 Agreement.

Pursuant to Section 1(a), Contec was to provide Remote Solution with "specifications (which may or may not include design parameters, functionality, layout and overlay) with respect to RCU's to be designed, manufactured and sold pursuant to this Agreement." Remote Solution was to design an RCU "in accordance with such specifications." Such RCU's are referred to as "Products".

Pursuant to Section 1(b), Products were to be "designed by" Remote Solution for Contec.

Pursuant to Section 3(a), Remote Solution's performance was to be considered "work for hire" on behalf of Contec. Contec's RCU designs, plastic case designs, software code and semiconductor chips were Contec's "proprietary, confidential information and property."

Pursuant to Section 3(c), Remote Solution "shall defend any suit or proceeding brought against [Contec] to the extent that such suit or proceeding is based on a claim that the Products constitute an infringement of any valid United States or foreign patent ... and [Remote Solution] shall pay all damages and costs awarded by final judgment against [Contec]."

Section 13(a) provides that each party shall indemnify and hold harmless the other party against "all losses, damages, liabilities, expenses, costs, claims, suits, ... and charges (collectively, 'Damages') caused by, relating to, or arising from a default in the performance by such party in accordance with this Agreement of its obligations hereunder, or a breach of its obligations hereunder ...." Section 13(a) further provides –

> "In the event of a claim with respect to which a party may be the indemnified party hereunder, such party (the 'Indemnified Party') shall notify the other party (the 'Indemnifying Party') in writing as soon as practicable, but in no event later than thirty (30) days after receipt of such claims. The Indemnified Party's failure to provide such notice shall not preclude it from seeking indemnification hereunder unless such failure has materially prejudiced the Indemnifying Party's ability to defend such claim. The Indemnifying Party shall promptly defend such claim (with counsel of its own choosing) and the Indemnified Party shall cooperate with the

Indemnifying Party in the defense of such claim, including the settlement of the matter on the basis stipulated by the Indemnifying Party (with the Indemnifying Party being responsible for all costs and expenses of such settlement). If the Indemnifying Party within a reasonable time after notice of a claim fails to defend the Indemnified Party, the Indemnified Party shall be entitled to undertake the defense, compromise or settlement of such claim at the expense of the Indemnifying Party. Upon the assumption of the defense of such claim, the Indemnifying Party may settle, compromise or defend as it sees fit."

Section 13(b) provides, inter alia, that neither party shall be liable to the other party for indirect, incidental, special or consequential damages.

Section 19 provides, inter alia, the prevailing party in this arbitration[2] is entitled to recover from the other party "all of its expenses, including, without limitation, all expenses due and payable to the AAA and such party's fees and expenses for witnesses, the arbitrators [sic] and its attorney's fees incurred in the conduct of such arbitration but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees."

Section 25 provides the 1999 Agreement shall be governed by the laws of the State of New York.

    B.    <u>Contec Corporation's Claim for Damages and Remote Solution's Objections</u>

In its 2005 submissions, Contec seeks the following relief –

1. All damages, costs and expenses, including attorney's fees, incurred by Contec and its predecessors-in-interest, in connection with defending against and settling Philips's infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement.

2. Similar relief with respect to Contec's defense of UEI's infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement.

3. All damages costs, and expenses, including attorney's fees and arbitration fees, incurred in connection with this arbitration and the actions in (a) the Northern District of New York (No. 03-CV-910 DNH/DRH), (b) the Court of Appeals for the Second Circuit (No. 04-0382), and (c) Korea (Case No. 2003 GA-HAB 540,

---

[2] Section 19 specifies "in any such situation", the predicate for which in Section 19 is plainly this arbitration (or a similar arbitral proceeding).

Daegu District Court, Kimchon Branch, Republic of Korea), all of which allegedly relate to this arbitration.

4. A permanent injunction against Remote Solution's prosecuting or otherwise permitting its Korean lawsuit to go forward and from bringing any other action of any kind in Korea or elsewhere that relates to any dispute arising out of or relating to the 1999 Agreement.

We set out in the ensuing subsections some of the parties' contentions regarding these Contec claims.

1. Philips's and UEI's Infringement Actions

Contec contends that, under Section 3(c) of the 1999 Agreement, Remote Solution was required to defend and pay all damages and costs awarded by final judgment against claims such as Philips's and UEI's. Contec asserts Contec provided notice under Section 13(a) of the 1999 Agreement to Remote Solution of the Philips and UEI claims, Remote Solution failed to defend, and accordingly, Contec was entitled to defend against and settle those claims at Remote Solution's expense. Thus, Contec argues Contec is entitled to collect from Remote Solution all expenses that Contec incurred in defending against and settling Philips's and UEI's infringement claims "relating to products Remote Solution manufactured and sold to Contec under the 1999 Agreement." In calculating Contec's damages to be reimbursed by Remote Solution, Contec has included only Remote Solution's pro rata share of the total amount paid by Contec to Philips and to UEI.[3]

Contec argues that, even without Section 13(a), New York law establishes that an indemnitor who, after receiving notice, fails to defend is conclusively bound by any reasonable good faith settlement the indemnitee may make.



Contec asserts that the Philips and UEI infringement claims were not specific to remote control units supplied by particular suppliers – thus implicating from the beginning units supplied by Remote Solution. Contec contends it is not required to seek indemnification from every party against which it may have a claim.

---

[3] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓n.

Contec contends that, had Remote Solution defended Contec in the Philips and UEI actions, Contec would have incurred little or no attorneys' fees or expenses.

Contec contends Remote Solution should not be permitted to vouch in non-parties Seoby and CMT on the ground that Remote Solution has "a claim for partial indemnification" against them. Contec says that Remote Solution has no indemnification claim against those companies.

Inter alia, Remote Solution contends any award to Contec should be reduced by amounts Contec received from others. Remote Solution argues that, if Seoby made any payment toward attorneys' fees, Contec should not be permitted a duplicative recovery. Remote Solution cites McKinney's N.Y. General Obligations Law §15-108. Thus, Remote Solution says Contec should disclose the Seoby settlement agreement as well as other collateral sources of payment. Remote Solution says "due process and fundamental fairness" require disclosure of the settlement agreement. Remote Solution says this is especially so because Contec is seeking payment from Remote Solution for "damages arising from Contec's sale of devices supplied by Seoby." Remote Solution argues Contec should be bound by its election not to produce the Seoby agreement, "with the result being that Contec may not be awarded any fees for failure to provide evidence necessary to justify a specific amount."

Contec asserts it is entitled to all of its attorneys' fees in the Delaware actions, arguing "there is no principled reason for distinguishing between settlement amounts and attorneys' fees."

    2.    Expenses in this Arbitration, the New York
            Actions, and the Korean Action

Contec contends that, pursuant to Section 19 of the 1999 Agreement, Contec is entitled to collect from Remote Solution all expenses incurred by Contec in connection with this arbitration. Contec asserts that such expenses include expenses incurred by Contec in connection with the action in the Northern District of New York, the appeal in the Court of Appeals for the Second Circuit, and Remote Solution's Korean action. Contec asserts the Northern District of New York action was to compel arbitration and stop the Korean proceeding, and the Court of Appeals affirmed the District Court's decision. Contec cites authority, but none from New York, in support of these propositions.

Contec cites a General Agreement for the Trade, dated January 4, 2002, and executed by both Contec and Remote Solution's predecessor HangGo Electronics (General Agreement). Contec asserts the General Agreement expressly acknowledges, in Paragraph 15, that the 1999 Agreement governs the business dealings between the two companies. In light of the General Agreement, Contec says Remote Solution had no reasonable basis for (1) disputing that the Arbitrator had the authority to decide whether Contec could enforce the 1999 Agreement, (2) filing Remote Solution's Korean action, (3) asserting Contec could not enforce the 1999 Agreement, and (4) asking the Arbitrator and the Courts to stay this arbitration. Contec contends an award of attorneys' fees to Contec is "particularly appropriate here."

Remote Solution contends Contec, as a matter of law, is not entitled to recover its costs in connection with the New York and Korean actions "to enforce its claimed right to indemnity." Remote Solution argues that under New York law it is clear that Section 13(a) of the 1999 Agreement was not intended to apply to attorneys' fees for actions between Contec and Remote Solution. Further, under Section 19 of the 1999 Agreement, Remote Solution contends an award of attorneys' fees is authorized only with regard to this arbitration itself. Remote Solution argues the New York and Korean litigation was not "in the conduct of such arbitration," but rather was for the purpose of "halting the conduct of 'such arbitration'."

Remote Solution contends Contec is not entitled to recover its attorneys' fees in obtaining judicial confirmation of the Award Re Standing. Remote Solution says Contec has provided no legal authority in support of this claim. Without citing supporting law or evidence, Remote Solution argues such awards of fees "are generally given by the Court."

Contec argues that the language in Section 19 defining the scope of the arbitration is comparable to language in Illinois authority cited by Remote Solution which held the arbitral panel was within the scope of its authority in awarding fees incurred in a lawsuit filed by defendant to avoid arbitration. In addition, Contec cites California authority in support of this Contec claim for attorneys' fees.

3. Reasonableness of Contec's Attorneys' Fees

a. Contec's invoices for fees

Contec asserts its lawyers' fees are reasonable. Contec says the rates charged by Contec's attorneys were well within the range of rates charged by New York law firms. Further, Contec argues that, under New York law, the fact that Contec paid its attorneys' fee is presumptive evidence of the reasonableness of those fees. Thus, according to Contec, the burden is on Remote Solution to object to the reasonableness of Contec's attorneys' fees.

Contec asserts it is well recognized that patent litigation is costly. Contec cites attorneys' fees and expenses claimed by Philips in the Delaware action against CMT as illustrative of fees and expenses charged in the Philips litigation that are "at least comparable" to those claimed by Contec here.[4]

---

[4] Contec does not mention that, in its submission to the court, Philips acknowledged that the Philips action involved more than one patent as well as parties other than CMT. Thus, Philips included in its request fees and expenses attributable only to CMT and to a specific patent, and not to other parties and other patents.

Contec argues the two instances Remote Solution cites of "excessive and unreasonable" fees were situations which warranted counsel's devoting time to them. Contec says the relatively little charged by Remote Solution's attorney for work on these matters is not relevant. One matter related to Remote Solution's attempt to avoid arbitration. The other related to Contec's request for attorneys' fees in light of Contec's misconduct. Remote Solution contends that New York rates are not relevant. Citing Sixth Circuit authority, Remote Solution argues Delaware rates are relevant, because that is "the venue where the case was litigated." Also, Remote Solution asserts that Contec never requested Remote Solution to assume the defense of the case. Remote Solution contends that Contec's hiring out-of state counsel as well as Delaware counsel led to extravagant and duplicative costs.[5] Contec replies with citations to authority, including a Northern District of New York case, justifying retaining non-local patent litigation counsel.



Remote Solution criticizes Contec's failure to "break out tasks, explain or summarize how much time was spent on each task ... , why several lawyers were necessary on a given task, etc." Remote Solution cites authority from jurisdictions other than New York as to inadequate showings of reasonableness. Remote Solution argues that New York authority cited by Contec (<u>Gray Mfg. Co. v. Pathe Indus., Inc.</u>, 305 N.Y.S.2d 794 (App.Div. 1st Dept. 1969), aff'd 312 N.Y.S.2d 200 (N.Y. 1970), for the proposition that the burden is on Remote Solution to make specific objections, is inapposite because in <u>Gray</u> the burden had shifted after the indemnitee had made a clear factual showing justifying reasonableness. Here, Remote Solution says Contec has not submitted any evidence as to reasonableness.

Remote Solution contends that the redacted copies of bills from Contec's attorneys originally submitted by Contec make it impossible to test the redacted portions for relevance, duplication, excessiveness, or reasonableness. Remote Solution cites D.C. Circuit authority rejecting the proposition that attorneys' fees could be awarded for only unredacted portions. Remote Solution cites <u>Measom v. Greenwich and Perry Street Housing Corp.</u>, 752 N.Y.S.2d 194 (N.Y.Civ. 2002), as to the same effect.

---

[5]    Philips stated it was not claiming reimbursement of its local Delaware counsel's fees, except those incurred for April 2004.

Remote Solution asserts every invoice in Tab D of Contec's November 2, 2005 re-submission regarding attorneys fees continues to contain redactions which make it impossible for Remote Solution to analyze for "duplicative, excessiveness, etc." Remote Solution criticizes other entries in Tabs A, B, C and E for the same reasons.

Remote Solution criticizes entries regarding "other defendants", arguing that Contec is not entitled to recover from Remote Solution fees for time spent on matters related exclusively to other defendants. Remote Solution cites entries in 18 invoices. Remote Solution contends Contec cannot properly recover fees for time spent "creating and possibly patenting design arounds," citing entries in 20 invoices. Remote Solution says Contec claims attorneys' fees for matters unrelated to Remote Solution. Remote Solution cites more than two dozen entries relating to suppliers other than Remote Solution. Remote Solution asserts Contec has not discharged its burden in this regard.



Contec argues that Remote Solution misses the point in contending that the 1999 Agreement does not obligate Remote Solution to indemnify Contec for legal fees not involving "Products". Contec says "there is great commonality between the accused units supplied by all of Contec's suppliers." Thus, Contec argues a time entry referring to another supplier "does not mean that that work was not also applicable to Remote Solution's products or to matters common to all suppliers."

    b.    <u>Pre-suit fees</u>



---

[6] 

Page -11-

c.  Pro-rating fees in Delaware actions



Remote Solution argues "it is just and fair" that any Contec right to recover attorneys' fees be limited "at most to a proportionate share." Remote Solution contends Contec should not be permitted to pick and choose among indmenitors "so as to act oppressively against the smallest of its suppliers." Contec asserts that, when Philips filed suit, Remote Solution accounted for 50% of the Contec units charged to infringe.

Contec argues that Remote Solution does not dispute the proposition that, had Remote Solution defended Contec, Contec would have incurred little or no expense, because Contec would have relied on Remote Solution's defense. Contec says it relied on CMT's defenses "to keep its expenses at a minimum" in the Philips litigation.

Contec iterates there is no justification for pro-rating attorneys' fees and expenses in the same manner as the settlement amounts. Contec argues the settlement amounts account for "only past damages" whereas the infringement claim also posed the risk of an injunction or royalty payments going forward. Thus, Contec contends past sales do not reflect the amount of overall damage and risk.

d.  Remote Solution's attorneys' fees

Remote Solution invokes the last clause of Section 19 of the 1999 Arbitration Agreement, which limits the amount Contec may recover to the actual cost of Remote Solution's attorneys' fees. Remote Solution states its actual attorneys' fees arising from the New York litigation total $54,273.75. Remote Solution's counsel's November 1, 2005 declaration states he has not participated in or billed for any work done in the Korean action. Remote Solution has not submitted any information as to its attorneys' fees in connection with the Korean action.

Remote Solution states that the "actual cost" of its attorney fees in connection with this arbitration as of August 29, 2005 totals $13,581.11. Remote Solution contends this is the maximum extent to which Contec may claim reimbursement in connection with this arbitration.

Contec contends this portion of Section 19 is not controlling because Remote Solution has breached its obligation of good faith and fair dealing under New York law and the New York UCC. Contec argues that Remote Solution has nullified this provision by billing "no time or ridiculously small" amounts of time in the arbitration and related court proceedings. Contec contends this provision was not intended to create a loophole by which the remainder of Section 19 could be rendered meaningless. Contec posits that "if the losing party found counsel to represent it without charge or agreed to charge only if that party prevailed, the prevailing party would be entitled to <u>no</u> attorneys' fees." Contec says this plainly disregards the intent of Section 19.

Thus, Contec argues that, by retaining counsel who did not bill for substantial portions of his time, Remote Solution has attempted to "destroy or injure" Contec's rights under Section 19. Contec cites 30 illustrative instances in which Remote Solution's counsel billed for little or no time. Contec says numerous other examples show Remote Solution's counsel's billing records reflect little or no charges for work performed.

Contec urges that Remote Solution's conduct in this arbitration and related proceedings exacerbates the situation. Contec contends that Remote Solution could have had no reasonable expectation that a court which differ from the Arbitrator's ruling on standing. Moreover, says Contec, Remote Solution has caused the proceedings to be extremely protracted. Also, Contec asserts that Remote Solution has lost on every substantive issue it has raised in this arbitration or in the New York action.

In short, Contec asserts that Remote Solution's counsel's billing practice (and other conduct) should not be permitted to nullify Remote Solution's contractual obligation to Contec under Section 19.[7]

      e.    <u>Off-set</u>

Remote Solution contends any award to Contec should be reduced by the amount Contec owes Remote Solution. Remote Solution appears to accept that $620,038 is the proper number for this off-set.

      4.    <u>Summary of Contec's Damages Claim</u>

Contec agrees that Remote Solution is entitled to a set-off of $620,038, which does not include $72,474 for products never delivered by Remote Solution to Contec.

---

[7]    Notwithstanding Contec's criticism of Remote Solution's reliance on this provision in Section 19, Contec invoked on the same provision in response to Remote Solution's reliance on the District Court's characterization of a Contec application for attorneys' fees.



Contec notes that (a) the foregoing total should be reduced by Remote Solution's set-off of US$620,038, and (b) the total will be supplemented to include additional invoices from the Arbitrator and the AAA.

4. <u>Permanent Injunction</u>

Contec seeks a permanent injunction against Remote Solution's pursuing the Korean action. Contec notes that the December 1, 2003 Award Re Claimant's Standing enjoined Remote from "prosecuting or otherwise permitting the Korean action to go forward, pending the outcome of this arbitration on the merits." Having prevailed in this arbitration, Contec argues it is entitled to an award enjoining Remote from proceeding in Korea or elsewhere regarding any dispute arising out of or relating to the 1999 Agreement, because all such disputes should be resolved by arbitration pursuant to Section 19 of the 1999 Agreement.

Remote Solution argues Contec is not entitled to a permanent injunction. Remote Solution says Contec seeks an "unprecedented degree of relief." Remote Solution urges the purpose of the previously issued interim injunction was to preserve the integrity of the arbitration process. Remote Solution argues once the arbitration process is completed, there is no need for injunctive relief. Remote Solution asserts (1) presumably, Contec will seek court confirmation of the Final Award, and (2) Contec has not established a risk of future disputes justifying "enjoining speculative future litigation."

In its August 9, 2005 Statement of Damages (page 2), Contec seeks a permanent injunction against Remote Solution's "prosecuting or otherwise permitting its Korean lawsuit to go forward and from bringing any other action of any kind in Korea or elsewhere that relates to any dispute arising out of or relating to the 1999 Agreement." In its September 7, 2005 Reply Brief In Support Of Its Statement Of Damages (pages 29-30), Contec acknowledges Remote Solution's criticism of the breadth of Contec's August 9 request of an injunction and appears to confine the requested injunction to the Korean action and enjoining Remote Solution from doing what is "expressly forbidden ... under Section 19 of the [1999] Agreement."

## IV. DISCUSSION

This discussion comprises the Arbitrator's findings of fact and reasons for this Award.

### A. Contec's Payments In Settling the Philips And UEI Actions In Delaware



### B. Contec's Attorneys' Fees And Expenses In The Delaware Actions



Contec contends Remote Solution should be charged with 100% of these fees and expenses, arguing there is no relation between Contec's allocation of the settlement amounts and Contec's claims for attorneys' fees and expenses. Contec asserts that, had Remote Solution defended Contec as Remote Solution was obligated to do, Contec would have incurred little or no attorneys' fees and expenses.

It is not at all as clear as Contec would have it that, if Remote Solution had defended Contec in the Delaware actions, Remote Solution would have defended on behalf of all suppliers of Contec's accused devices. What would have happened, if Remote Solution had stepped in from the beginning, is at best speculative. Settlements are often entered into for practical business reasons. We have no evidence of the factors Contec considered in settling the Delaware actions.

In light of Contec's having adduced no competent evidence in support of its argument as to its entitlement to 100% of attorneys' fees and related expenses, it seems eminently reasonable and fair to apply to this total the same pro-rata analysis Contec utilized in allocating to Remote Solution its portion of the amounts Contec paid to Philips and to UEI in settlement of the Delaware actions. Concomitantly, it seems entirely unfair to saddle Remote Solution with 100% of Contec's asserted attorneys' fees and related expenses when Contec itself has apportioned the amounts Contec paid in settlement of the Delaware actions.

This conclusion is buttressed by the express language of Section 3(c), limiting Remote Solution's obligation to pay "all damages and costs" to claims that "Products" constitute an infringement. Attorneys' fees and expenses are embraced by the term "costs".



Contec's argument that it cannot break out attorneys' work done in connection with other matters and for other suppliers rings hollow in light of (1) Contec's own estimates of the value of "disputed entries" mentioned by Remote Solution and (2) Contec's reliance on Philips's submission to the Delaware court. If Philips can estimate work applicable only to a single defendant in that action, so can Contec estimate work done for Remote Solution.

Contec's argument that all the devices in suit in Delaware had common characteristics is not enough to support Contec's position. Mere commonality of characteristics does not compel the conclusion that all issues in the Delaware action were the same for all defendants, or that work done regarding a defendant other than Remote Solution was also for Remote Solution.



C.  Contec's Attorneys' Fees And Expenses In The New York And Korean Actions

Contec has cited no authority establishing that under New York law Contec may recover its attorneys' fees and related expenses for the New York action and the Korean action. I find that the Illinois and California cases cited by Contec are not controlling here. Among other reasons, the facts there are materially different from the facts here, and the arbitration clauses in issue there (to the extent ascertainable) are materially different from Section 19 here.

Remote Solution's contentions based on New York indemnity cases are misplaced. This Contec claim for attorneys' fees and expenses is based on Section 19 of the 1999 Agreement, not an indemnity provision.

The Arbitrator has weighed carefully Remote Solution's contention that an award of attorneys' fees must be confined to fees incurred in this arbitration itself. These contentions cannot carry the day for Remote Solution under the circumstances here. Remote Solution strove mightily in the New York action to derail this arbitration. In Korea, Remote Solution initiated an action whose subject matter clearly is within the scope of Section 19. Remote Solution's conduct in attempting to frustrate the purpose of Section 19 is palpable. That conduct compelled Contec to participate in the New York action in order to preserve Contec's right to arbitrate under Section 19. The Arbitrator finds that Contec's attorneys' fees and expenses incurred in connection with the New York action and the Korean action were clearly incurred in the conduct of this arbitration

Remote Solution's conduct is especially suspect in light of the post-New York action disclosure here of the 2002 General Agreement – executed shortly before the New York action. At minimum, it is curious that neither party advised either the District Court or the Court of Appeals in the New York action of the 2002 General Agreement. Regardless of the circumstances under which that relatively contemporaneous agreement came to light, the General Agreement completely undercuts any basis for Remote Solution's contention that Contec is not a proper party to this arbitration proceeding.



D.  Contec's Attorneys' Fees And Expenses In This Arbitration



8

E.  <u>Remote Solution's Reported Attorneys' Fees and Expenses</u>

Remote Solution's reliance on the Section 19 provision limiting recovery of attorneys' fees and expenses is misplaced. Remote Solution's counsel's bills for counsel's work in this arbitration and the related New York action are unreasonably low, viz. less than 10% of the fees and expenses claimed by Contec for work in this arbitration and the New York action, and only about 13% of the amount awarded to Contec for Contec's fees and expenses in those proceedings. Even if Contec's attorneys' fees and expenses were grossly inflated (which they were not), Remote Solution's attorneys' fees and expenses would remain inexplicably low.

Section 19 plainly provides that "in no event will the recovery of its [the prevailing party's] attorney's fees be in excess of the actual cost of the other party's attorney's fees." However, it is equally plain to the Arbitrator that Remote Solution has breached its obligation of good faith and fair dealing under New York law and has thus frustrated an appropriate recovery of attorneys' fees and expenses by Contec. Contec's point is well taken that Remote Solution's unusually low billings here cannot provide a basis for negating the spirit of Section 19. Surely, it was not the intent of the parties that one party could reduce to zero, or even 10%, the right of the prevailing party to recover fees and expenses by way of arranging for the losing party's attorney's fees and expenses to approach zero. Reading Section 19 in an objectively reasonable manner, the Arbitrator finds that Remote Solution cannot properly invoke Section 19's limitation on the recovery of attorneys' fees under the circumstances created here by Remote Solution and its counsel.

F.  <u>Set-Off</u>

The parties appear to be in accord that Remote Solution is entitled to a set off of $620,038. That amount will be subtracted from the total due to Contec under this Award.

G.  <u>Total Due To Contec Under Sections A.-E. Above Pursuant To This Award</u>



H.  **Permanent Injunction**

As noted in Section III.B.4., Contec appears to have retreated from its request for sweeping injunctive relief.

The appropriate scope for a permanent injunction is an injunction limited to actions in Korea or elsewhere regarding any dispute which is the subject of this arbitration proceeding. It is not appropriate to attempt to enjoin other, speculative conduct.

However, the injunction cannot be so broad as to preclude Remote Solution from challenging this Award, insofar as it may do so consistent with Section 19 of the 1999 Agreement. (Section 19 provides, inter alia, "All parties agree to be bound by the results of this arbitration ... .")

I.  **Prevailing Party**

In terms of money to be paid and a permanent injunction, Contec is on balance the prevailing party. However, Contec has not prevailed nearly to the extent it has claimed.

Accordingly, the Arbitrator rules that Remote Solution shall bear 75% of the (a) administrative costs and fees in this arbitration and (b) the Arbitrator's fees in this proceeding, and Contec shall bear 25% of such costs and fees.

V.  **AWARD**



Effective immediately, Remote Solution, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this Award, are permanently enjoined from initiating or participating in any action in Korea or elsewhere regarding any dispute to which this Award relates; provided, however, this injunction shall not extend to a challenge to this Award in a court of competent jurisdiction to the extent permitted by Section 19 or the 1999 Agreement.

The administrative fees and expenses of the American Arbitration Association totaling US$8,500.00 shall be borne 75% by Remote Solution and 25% by Contec; and the compensation and expenses of the Arbitrator totaling US$36,160.00 shall be borne 75% by Remote Solution and 25% by Contec. Therefore, Remote Solution shall reimburse Contec the sum of US$15,415.00 representing that portion of said fees and expenses Contec is entitled to recover..

This Award is in full settlement of all claims and set-offs submitted in this arbitration proceeding.

I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Award Re Damages was made in Albany, New York, U.S.A.

December 26, 2005

_____
David W. Plant

State of New Hampshire        }
                              } SS:
County of Merrimack           }

I, David W. Plant, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award Re Damages.

_____        _____
Date                             David W. Plant