AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| CONTEC CORPORATION,<br>　　　　　　　　　　Claimant,<br><br>　　　　v.<br><br>REMOTE SOLUTION CO., LTD.,<br>　　　　　　　　　　Respondent. | Arbitration No.<br><br>50 T 133 00325 03<br><br>David W. Plant, Esq. |

**STATEMENT OF CONTEC CORPORATION REGARDING ITS BASES FOR RELIEF**

NYJD: 1502769.4

Contec submits this statement pursuant to the Arbitrator's December 23, 2003 letter, directing Contec to specify "the bases for relief to which it claims it is entitled in this arbitration."

Remote Solution was required under Section 3(c) of the February 16, 1999 Manufacturing and Purchase Agreement ("1999 Agreement") between Contec L.P. and Hango Electronics Co., Ltd., now Remote Solution Co., Ltd., to indemnify Contec against the patent infringement claims brought against it by Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, "Philips") and by Universal Electronics, Inc. ("UEI"). Remote Solution refused to do so and Contec was accordingly entitled, under Section 13(a) of the 1999 Agreement, to defend against and settle those claims <u>at Remote Solution's expense</u>. The 1999 Agreement also provides that disputes arising from the Agreement are to be decided by arbitration and that the prevailing party in such disputes is entitled to all its expenses including, *inter alia*, its attorneys' fees and arbitration fees.

Contec accordingly seeks the following relief:

1.   All damages, costs, and expenses, including attorneys' fees, incurred by Contec Corporation and its predecessors-in-interest, Contec L.P. and Contec LLC (collectively, "Contec"), in connection with defending against and settling Philips' infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement;

2.   All damages, costs, and expenses, including attorneys' fees, incurred by Contec in connection with defending against and settling UEI's infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement;

1

3.    All damages, costs, and expenses, including attorneys' fees and arbitration fees, incurred in connection with this arbitration and the actions in the Northern District of New York[1] and Korea[2] relating to this arbitration; and

4.    A permanent injunction against Remote Solution against prosecuting or otherwise permitting its Korean lawsuit to go forward and from bringing any other action of any kind in Korea or elsewhere that relates to any dispute arising out of or relating to the 1999 Agreement.

## I.   Contractual Basis For Contec's Claims

The Arbitrator ruled, in his December 1, 2003 Award Re Claimant's Standing, that "Contec Corporation is entitled to enforce the 1999 Agreement" against Remote Solution.

The 1999 Agreement requires Remote Solution to indemnify Contec against patent infringement claims, such as those made by Philips and UEI, directed to products manufactured by Remote Solution and purchased by Contec under the Agreement.[3] Section 3(c) is crystal clear on this point:

> Seller shall defend any suit or proceeding brought against Purchaser to the extent that such suit or proceeding is based on a claim that the Products constitute an infringement of any valid United States or foreign patent . . .

"Products" are defined in Section 1(a) as remote control units (RCUs) "designed, manufactured and sold pursuant to [the] Agreement." Remote Solution was thus required to indemnify Contec

---

[1] *Contec Corporation v. Remote Solution Co., Ltd.*, Civil Action No. 03-CV-910 DNH/DRH (N.D.N.Y. July 21, 2003).

[2] *Remote Solution Co., Ltd. v. Contec Corporation*, Case No. 2003 GA-HAB 540, Daegu District Court, Kimchon Branch, Republic of Korea, June 13, 2003.

[3] Philips' infringement claims were directed at, *inter alia*, Model RT-U49C, and models with similar features. (Declaration of Kenneth L. Stein, dated January 30, 2004, "Stein Decl.," Ex. A, p. 3, submitted concurrently herewith). UEI's infringement claims were similarly directed at, *inter alia*, the RT-U49C, and models with similar features. (Stein Decl., Ex. B, p. 3). Remote Solution manufactured and sold such models to Contec under the 1999 Agreement, including the RT-U43C, RT-U46C, RT-U49C, RT-49H+, and RT-U50. *See, e.g.*, Declaration of Harry R. Mickey, dated September 19, 2003, "Mickey Decl.," Exs. B and H, previously submitted on October 24, 2003 in connection with Contec's (1) Response To Remote Solution's Memorandum On The Issue Of Whether Contec Corporation May Enforce The Manufacturing Agreement and (2) Statement Regarding Contec's Request That Remote Solution Stay Or Withdraw Its Pending Korean Action; *see also* Declaration of Gene Griesau, dated January 30, 2004, "Griesau Decl.," Exs. A and B, submitted concurrently herewith.

NYJD: 1502769.4

against Philips' and UEI's claims, and, in particular, to "indemnify and hold [Contec] harmless ... from and against all losses damages, liabilities, expenses, costs, claims, suits demands, actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "Damages") caused by, relating to, or arising from" those claims. *See* Section 13(a). It however refused to do so.[4]

Contec accordingly was entitled, under Section 13(a) of the Agreement, to undertake the "defense, compromise or settlement" of those claims at Remote Solution's expense, and did so. Section 13(a) provides:

> If the Indemnifying Party within a reasonable time after notice of a claim fails to defend the Indemnified Party, the Indemnified Party shall be entitled to undertake the defense, compromise or settlement of such claim at the expense of the Indemnifying Party.

Contec is thus entitled to collect from Remote Solution all expenses that it incurred in defending against and settling Philips' and UEI's infringement claims directed at Remote Solution's products.

Should the arbitrator rule in favor of Contec on its indemnification claim, Contec is also entitled to collect from Remote Solution all expenses incurred by Contec in connection with this arbitration, as provided in Section 19 of the Agreement:

> The prevailing party in any such situation will be entitled to recover from the other party all of its expenses, including, without limitation, all expenses due and payable to the AAA and such party's fees and expenses for witnesses, the arbitrators and its attorney's fees incurred in the conduct of such arbitration but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees.

Those expenses properly include expenses incurred by Contec in connection with the district court action in the Northern District of New York and Remote Solution's Korean action. The New York action was brought by Contec to compel Remote Solution to participate in the

---

[4] *See* Stein Decl., Ex. C, p. 2 and Exs. D-F.

- 3 -

arbitration and to stop it from proceeding with its Korean action, which was filed by Remote Solution in violation of the parties' arbitration agreement.[5] Remote Solution also raised in the New York action issues, such as Contec Corporation's right to enforce the 1999 Agreement, that, as the Court and the Arbitrator independently held, were for the Arbitrator to decide. Contec's expenses in the New York and Korean actions were thus intimately tied to and in aid of the arbitration and they are therefore chargeable expenses under Section 19. *See Christian Dior, Inc. v. Hart Schaffner & Marz*, 637 N.E.2d 546, 550 (Ill. App. Ct. 1994) (affirming arbitrators' award of attorneys' fees to prevailing party, which included costs incurred in connection with defending against a lawsuit brought in violation of the parties' agreement to arbitrate); *see also Kalai v. Gray*, 135 Cal. Rptr. 2d 449, 456 (Ct. App. 2003) ("[R]ecovery could include the fees Gray incurred in the court action, as the scope of recoverable fees is fairly broad, including all fees 'incurred by said prevailing party *in connection with* the Arbitration proceedings.'") (emphasis in original). Certainly this is fair — Remote Solution should not be rewarded for having raised issues in other forums in disregard to its obligation to have those issues decided here in arbitration.

## II. Damages relating to Philips' Infringement Claims

Contec claims damages arising from Philips' infringement claims against Remote Solution's products as follows:

1. ███████████████████████████████████████[6]████[7]█

---

[5] The Arbitrator ruled, in his December 1, 2003 Award Re Claimant's Standing, that Remote Solution's Korean action is "a controversy arising with respect to the 1999 Agreement" and subject to arbitration.

[6] Stein Decl., Ex. G, p. 1.

[7] 

- 4 -

Page 5 is completely redacted

# Page 6 is completely redacted



## V.  Permanent Injunction Against Remote Solution from Proceeding with its Korean Action

The Arbitrator, in his December 1, 2003 Award Re Claimant's Standing, enjoined Remote from "prosecuting or otherwise permitting the Korean action to go forward, <u>pending the outcome of this arbitration on the merits</u>." Contec requests that that injunction be made permanent for the same reasons given by the Arbitrator in issuing the earlier injunction — namely, that Remote Solution's Korean Action is a controversy arising with respect to the 1999 Agreement and must therefore be decided by arbitration in New York under Section 19 of the Agreement.[26] Contec also requests, again for the same reasons, that Remote Solution be



[23] Stein Decl., Ex. M.

[24] *See id.*

[25] This amount reflects charges through November 30, 2003. Contec will submit a supplemental accounting for additional damages incurred after November 30, 2003 at the conclusion of the arbitration and the related proceedings in New York district court and Korea.

[26] *See also* Contec's (1) Response To Remote Solution's Memorandum On The Issue Of Whether Contec Corporation May Enforce The Manufacturing Agreement and (2) Statement Regarding Contec's Request That Remote Solution Stay Or Withdraw Its Pending Korean Action, filed October 24, 2003, pp. 19-20; and Contec's Response to Remote Solution's Reply Memorandum on Whether Contec Corporation May Enforce the Manufacturing Agreement, filed November 4, 2003, p. 5.

NYJD: 1502769.4

enjoined from bringing any other action or proceeding of any kind in Korea or elsewhere which relates to any dispute arising out of or relating to the 1999 Agreement — all such disputes must be resolved by arbitration in Albany, New York, pursuant to Paragraph 19 of the Agreement.

## VI.    Conclusion



Contec also seeks a permanent injunction against Remote Solution as specified above.

Rather than speculating on Remote Solution's objections to this statement and attempting to address those objections now, Contec will address them instead in its reply brief. Since however this statement was under 10 pages, the limit for its reply brief, Contec requests that it be permitted 20 pages for its reply, the limit that was set for this statement, instead of 10. We believe that the additional pages may be needed in order to fully address Remote Solution's objections.

---

[27] Again, Contec will submit a supplemental accounting at the conclusion of the arbitration and the related proceedings in New York district court and Korea for expenses incurred by Contec after November 30, 2003.

- 8 -