## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| CONTEC CORPORATION,<br><br>                            Claimant,<br><br>           v.<br><br>REMOTE SOLUTION CO., LTD.,<br><br>                           Respondent. | Arbitration No.<br><br>50 T 133 00325 03<br><br>David W. Plant, Esq. |

### CONTEC CORPORATION'S STATEMENT OF DAMAGES

NYJD: 1587337.2

Contec submits this Statement pursuant to the Arbitrator's August 1, 2005 letter, directing Contec to specify its current claim for damages and address prior contentions by Remote Solution in opposition to Contec's claim for damages.

On April 29, 2005, the parties proposed, and the Arbitrator agreed to, a process in which the Arbitrator would first decide the issue of Contec's entitlement to indemnification from Remote Solution and then, if decided in Contec's favor, the amount of damages due Contec.[1] The first phase of that process is now complete, the Arbitrator having ruled on July 26, 2005 in Contec's favor on the issue of Contec's entitlement to indemnification from Remote Solution. The remaining issue — the amount of damages due Contec — is now before the Arbitrator.

In the Arbitrator's July 26, 2005 letter, the Arbitrator ruled that Remote Solution had breached Section 3(c) of the parties' February 16, 1999 Manufacturing and Purchase Agreement ("1999 Agreement") by failing to defend Contec against the patent infringement actions brought by Philips[2] and by UEI.[3] As a result of that breach, Contec was entitled, under Section 13(a) of the 1999 Agreement, to <u>defend against</u> and <u>settle</u> those claims <u>at Remote Solution's expense</u>. The 1999 Agreement also provides that disputes arising under the Agreement, such as the indemnification dispute here, are to be decided by arbitration and that the prevailing party in such disputes, here Contec, is entitled to recover from the other party, here Remote Solution, <u>all of its expenses</u>, including its <u>attorneys' fees</u> and <u>arbitration fees</u>, incurred in connection with the arbitration.

Contec accordingly seeks the following relief:

1.  All damages, costs, and expenses, including attorneys' fees, incurred by Contec Corporation and its predecessors-in-interest, Contec L.P. and Contec LLC (collectively,

---

[1] *See* Letter from Mr. Stein to Mr. Plant, dated April 29, 2005; Email from Mr. Plant, dated April 29, 2004.
[2] Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, "Philips").
[3] Universal Electronics, Inc. ("UEI").

1

"Contec"), in connection with defending against and settling Philips' infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement;

2. All damages, costs, and expenses, including attorneys' fees, incurred by Contec in connection with defending against and settling UEI's infringement claims against products purchased by Contec from Remote Solution under the 1999 Agreement;

3. All damages, costs, and expenses, including attorneys' fees and arbitration fees, incurred in connection with this arbitration and the actions in (a) the Northern District of New York,[4] (b) the Court of Appeals for the Second Circuit,[5] and (c) Korea,[6] all of which relate to this arbitration; and

4. A permanent injunction against Remote Solution against prosecuting or otherwise permitting its Korean lawsuit to go forward and from bringing any other action of any kind in Korea or elsewhere that relates to any dispute arising out of or relating to the 1999 Agreement.

I. **Basis For Contec's Damages Claims**

The Arbitrator has ruled that Remote Solution breached Section 3(c) of the 1999 Agreement by failing to defend Contec in the patent infringement actions brought by Philips and UEI.[7, 8] Under Section 3(c), Remote Solution was required <u>to defend</u> and <u>pay all damages and costs awarded by final judgment</u> against claims such as Philips' and UEI's.[9]

---

[4] *Contec Corporation v. Remote Solution Co., Ltd.*, Civil Action No. 03-CV-910 DNH/DRH (N.D.N.Y. July 21, 2003).

[5] *Contec Corporation v. Remote Solution Co., Ltd.*, Civil Action No. 04-0382 (2d Cir. December 15, 2003).

[6] *Remote Solution Co., Ltd. v. Contec Corporation*, Case No. 2003 GA-HAB 540, Daegu District Court, Kimchon Branch, Republic of Korea, June 13, 2003.

[7] Section 3(c) of the 1999 Agreement provides that:

> Seller shall defend any suit or proceeding brought against Purchaser to the extent that such suit or proceeding is based on a claim that the Products constitute an infringement of any valid United States or foreign patent . . .

-2-

Under Section 13(a) of the 1999 Agreement, since Remote Solution failed to defend Contec, Contec was entitled to undertake the "defense, compromise or settlement" of those claims <u>at Remote Solution's expense</u>, and did so. Section 13(a) provides:

> If the Indemnifying Party within a reasonable time after notice of a claim fails to defend the Indemnified Party, the Indemnified Party shall be entitled to <u>undertake the defense, compromise or settlement</u> of such claim <u>at the expense of the Indemnifying Party</u>.

Contec is thus entitled to collect from Remote Solution all expenses that it incurred in defending against and settling Philips' and UEI's infringement claims relating to products Remote Solution manufactured and sold to Contec under the 1999 Agreement.

As the arbitrator has now ruled in favor of Contec on its indemnification claim, Contec is also entitled to collect from Remote Solution all expenses incurred by Contec in connection with this arbitration, as provided in Section 19 of the 1999 Agreement:

> The prevailing party in any such situation will be entitled to recover from the other party all of its expenses, <u>including, without limitation, all expenses due and payable to the AAA and such party's fees and expenses for witnesses, the arbitrators and its attorney's fees incurred in the conduct of such arbitration</u> but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees.

---

[8] Philips' infringement claims were directed at, *inter alia*, Model RT-U49C, and models with similar features. (Declaration of Kenneth L. Stein, dated January 30, 2004, "Stein Decl.," Ex. A, p. 3, previously submitted on January 30, 2004 in connection with "Statement of Contec Corporation Regarding Its Bases for Relief."). UEI's infringement claims were similarly directed at, *inter alia*, the RT-U49C, and models with similar features. (Stein Decl., Ex. B, p. 3). Remote Solution manufactured and sold such models to Contec under the 1999 Agreement, including the RT-U43C, RT-U46C, RT-U49C, RT-49H+, and RT-U50. *See, e.g.,* Declaration of Harry R. Mickey, dated September 19, 2003, "Mickey Decl.," Exs. B and H, previously submitted on October 24, 2003 in connection with Contec's (1) Response To Remote Solution's Memorandum On The Issue Of Whether Contec Corporation May Enforce The Manufacturing Agreement and (2) Statement Regarding Contec's Request That Remote Solution Stay Or Withdraw Its Pending Korean Action; *see also* Declaration of Gene Griesau, dated January 30, 2004, "Griesau Decl.," Exs. A and B, previously submitted on January 30, 2004 in connection with "Statement of Contec Corporation Regarding Its Bases for Relief."

[9] Also, under Section 13(a), Remote Solution was required to "indemnify and hold [Contec] harmless ... from and against all losses damages, liabilities, expenses, costs, claims, suits demands, actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "Damages") caused by, relating to, or arising from" those claims. *See* Section 13(a).

- 3 -

Those expenses properly include expenses incurred by Contec in connection with the district court action in the Northern District of New York, the appeal to the Court of Appeals for the Second Circuit, and Remote Solution's Korean action. The New York action was brought by Contec to compel Remote Solution to participate in the arbitration and to stop it from proceeding with its Korean action, which, as the Arbitrator subsequently held, was filed by Remote Solution in violation of the parties' arbitration agreement.[10] Remote Solution also raised in the New York action issues, such as Contec Corporation's right to enforce the 1999 Agreement, including its arbitration provision, that both the district court and the Arbitrator subsequently held to be for the Arbitrator, not the district court, to decide. Remote Solution subsequently appealed the district court ruling to the Court of Appeals for the Second Circuit, which affirmed the district court's decision. Contec's expenses incurred in connection with the New York district court action, Second Circuit appeal, and Korean actions were thus intimately tied to and in aid of the arbitration and they are therefore chargeable expenses under Section 19. *See Christian Dior, Inc. v. Hart Schaffner & Marz*, 637 N.E.2d 546, 550 (Ill. App. Ct. 1994) (affirming arbitrators' award of attorneys' fees to prevailing party, which included costs incurred in connection with defending against a lawsuit brought in violation of the parties' agreement to arbitrate); *see also Kalai v. Gray*, 135 Cal. Rptr. 2d 449, 456 (Ct. App. 2003) ("[R]ecovery could include the fees Gray incurred in the court action, as the scope of recoverable fees is fairly broad, including all fees 'incurred by said prevailing party *in connection with* the Arbitration proceedings.'") (emphasis in original). Certainly this is fair — Remote Solution should not be rewarded for having raised issues in other forums in disregard to its obligation to have those issues decided here in arbitration.

---

[10] The Arbitrator ruled, in his December 1, 2003 Award Re Claimant's Standing, that Remote Solution's Korean action is "a controversy arising with respect to the 1999 Agreement" and subject to arbitration.

- 4 -

Page 5 is redacted in its entirety

Page 6 is redacted in its entirety



### D. Permanent Injunction Against Remote Solution From Proceeding With Its Korean Action

The Arbitrator, in his December 1, 2003 Award Re Claimant's Standing, enjoined Remote from "prosecuting or otherwise permitting the Korean action to go forward, <u>pending the outcome of this arbitration on the merits</u>." Contec requests that that injunction be made



permanent for the same reasons given by the Arbitrator in issuing the earlier injunction — namely, that Remote Solution's Korean Action is a controversy arising with respect to the 1999 Agreement and must therefore be decided by arbitration in New York under Section 19 of the Agreement.[31] Contec also requests, again for the same reasons, that Remote Solution be enjoined from bringing any other action or proceeding of any kind in Korea or elsewhere which relates to any dispute arising out of or relating to the 1999 Agreement — all such disputes must be resolved by arbitration in Albany, New York, pursuant to Paragraph 19 of the Agreement.



---

[31] *See also* Contec's (1) Response To Remote Solution's Memorandum On The Issue Of Whether Contec Corporation May Enforce The Manufacturing Agreement and (2) Statement Regarding Contec's Request That Remote Solution Stay Or Withdraw Its Pending Korean Action, filed October 24, 2003, pp. 19-20; and Contec's Response to Remote Solution's Reply Memorandum on Whether Contec Corporation May Enforce the Manufacturing Agreement, filed November 4, 2003, p. 5.

[32] As noted, this figure will be supplemented to include additional invoices from the Arbitrator and AAA.

## II. Remote Solution's Arguments That Contec Is Not Entitled To The Full Amount It Seeks In Damages Are All Without Merit[33]

### A. Contec is Entitled to Reimbursements of its Settlement Payments

Remote Solution asserts that the "express language [of Section 3(c)] of the Agreement speaks only of final judgments, not settlements," and "[t]o award settlement amounts would be an improper re-writing of the Agreement." (Brief of Remote Solution Co., Ltd. In Opposition To Contec Corporation's Claim For Relief, dated March 17, 2005, "Opp.," p. 6). Remote Solution is wrong for three reasons. *First*, Section 13(a) of the Agreement expressly provides for reimbursement of settlement amounts under the present circumstances:

> If the Indemnifying Party within a reasonable time after notice of a claim fails to defend the Indemnified Party, the Indemnified Party shall be entitled to undertake the defense, compromise <u>or settlement</u> of such claim at the expense of the Indemnifying Party.

(Declaration of Suk-Kyu Park, "Park Decl.," Ex. A, p. 8, Section 13(a), previously submitted on March 17, 2005 in connection with "Brief of Remote Solution Co., Ltd. In Opposition To Contec Corporation's Claim For Relief."). Thus, when Remote Solution (the indemnifying party), after receiving notice of Philips' and UEI's claims, failed to defend Contec (the indemnified party), Contec was entitled to settle the claims at Remote Solution's expense.[34] *Second*, even if the Agreement did not contain Section 13(a), under well-established, controlling case law, Contec would still have been entitled to settle those claims at Remote Solution's expense.[35] *Third*, in

---

[33] The cases cited herein were previously provided to the Arbitrator on March 25, 2005 in the Compendium of Authorities Cited In Contec's Statement Regarding Its Bases For Relief And In Its Reply Brief In Support Thereof.

[34] Remote Solution's passing statement that Contec "did not ask Remote Solution to assume the defense" (Opp. at 3, 4) is without merit. The Arbitrator has already considered that issue and ruled that Contec provided appropriate notice to Remote Solution of Philips' and UEI's infringement actions. *See* Arbitrator's July 26, 2005 letter, 2nd full para.

[35] *See, e.g., Combustion Eng'g v. Imetal*, 235 F. Supp. 2d 265, 275 (S.D.N.Y. 2003) ("[I]t is well settled New York law that upon receiving notice of a claim or proceeding brought against an indemnitee, an indemnitor who fails to assume responsibility for that claim and declines to defend the action is conclusively bound by <u>any reasonable good faith settlement</u> the indemnitee may make or any litigated judgment that may be rendered."); *Feuer v. Menkes Feuer, Inc.*, 187 N.Y.S.2d 116, 121 (App. Div. 1959) (same) (citations omitted); *Goldmark Indus., Ltd. v. Tessoriere*, 681 N.Y.S.2d 327, 328 (App. Div. 1998) ("When an indemnitor has notice of the claim against it, the

- 9 -

Page 10 is redacted in its entirety



### C. Contec Is Entitled To Recover The Amounts It Has Spent Enforcing The Indemnity Provision

Remote Solution asserts that "[n]othing in the Agreement permits recovery" of "costs [Contec] incurred in connection with federal and Korean judicial proceedings to enforce its



claimed right to indemnity." (Opp., 14). Remote Solution is wrong. Contec's right to those fees flow from Section 19 of the Agreement, which provides for an award of attorneys' fees to the prevailing party in the arbitration, and cases holding that costs incurred in court actions tied to and in aid of arbitration are chargeable expenses under such provisions. (p. 4, *supra*). Remote Solution simply ignores Section 19 and the case law cited by Contec, focusing instead on Section 13 of the Agreement. Contec however never based its claim for fees in connection with the federal and Korean proceedings on that section.

An award of attorneys' fees incurred in connection with those proceedings is especially appropriate here since Exhibit B to the Declaration of Suk-Kyu Park[38] demonstrates that the arguments Remote Solution had earlier made before the Northern District of New York, the Second Circuit Court of Appeals, and the Arbitrator were baseless. Remote Solution's entire basis for objecting to the jurisdiction of the Arbitrator and seeking to enjoin the arbitration was that Contec Corporation, as a non-signatory to the 1999 Manufacturing and Purchase Agreement, could not enforce that agreement, including its arbitration provision, against Remote Solution. However, Exhibit B to Mr. Park's declaration, an agreement entitled "General Agreement for the Trade," expressly acknowledges that the 1999 Manufacturing Agreement governs the business dealings between the two companies:

> This Agreement shall be governed by agreement by both parties. This agreement does not supersede or invalidate the Manufacturing Agreement dated February 16, 1999. Should conflicts between the two documents arise, the Manufacturing Agreement will govern.

That agreement is signed by both Contec Corporation and Remote Solution. In view of it, Remote Solution had no reasonable basis for disputing that the Arbitrator had the authority to decide whether Contec Corporation could enforce the 1999 Agreement, no reasonable basis for

---

[38] Previously submitted on March 17, 2005 in connection with "Brief of Remote Solution Co., Ltd. In Opposition To Contec Corporation's Claim For Relief."

- 12 -

filing its Korean action, no reasonable basis for asserting that Contec Corporation could not in fact enforce the Agreement, and no reasonable basis for asking the Arbitrator, the District Court and the Court of Appeals to stay the arbitration. An award of attorneys' fees to Contec is thus particularly appropriate here.

Remote Solution argues, in a letter from its counsel, Mr. Finger, to the Arbitrator, dated March 29, 2005, that "[i]t is improper to suggest wrongdoing on the part of Remote Solution when *both* parties with equal knowledge and opportunity to address the document simply overlooked it." Remote Solution entirely misses the point. That document was <u>consistent with</u> everything that Contec had been arguing in the district court, court of appeals, and arbitration. It, in contrast, was <u>inconsistent with</u> and undercut just about every argument that Remote Solution had previously made. Whether or not Remote Solution had overlooked the document, it conclusively demonstrates that Remote Solution had no reasonable basis for arguing that its business dealings with Contec were not governed by the 1999 Agreement and that its arguments dismissing numerous other documents evidencing that fact, such as purchase orders and development guidelines that referenced the 1999 Agreement, were meritless. Tellingly, Remote Solution does not deny that it had no reasonable basis for denying Contec's right to enforce the Agreement in view of the General Agreement for the Trade.

### D. Contec Should Not be Required to Parse Out De Minimus Amounts Of Work Incurred In Connection With The Philips And UEI Matters <u>That Were Directed To Specific Suppliers Other Than Remote Solution</u>

Remote Solution asserts that "Contec must … exclude from [its request for attorneys' fees] amounts not related to any conduct by Remote Solution. (Opp., 16). But where, as here, there is a great commonality of issues between the units supplied by Remote Solution and those supplied by Contec's other suppliers, Contec should not be required to parse its fees to exclude

- 13 -

specific suppliers. Indeed, such parsing would be extremely difficult, if not impossible, as the work directed to specific suppliers is often relevant to all the suppliers.



Remote Solution also complains that "[m]any of the descriptions of activities in the time sheets are whited out." (Opp, p. 16). But Contec did so only to protect attorney-client privileged information, as is its right.[40] If there are particular entries that are of concern to Remote Solution, Contec would propose that the original unredacted entries be submitted to the Arbitrator for *in camera* inspection.

Remote Solution further asserts that "[t]he burden is on Contec ... to prove that each item on the timesheets relates to a matter referring either exclusively to the Products manufactured by Remote Solution, or to issues common with the other defendants." (Opp., 16). Remote Solution is wrong. Contec has produced its actual bills and Remote Solution cannot stand on blanket objections to them. If it has any particular objections, it needs to state them. *See Coleman v. J.R.'s Tavern, Inc.*, 622 N.Y.S.2d 334, 336 (App. Div. 1995); *Gray Mfg. Co. v. Pathe Indus., Inc.*, 305 N.Y.S.2d 794, 796-97 (App. Div. 1969), *aff'd*, 312 N.Y.S.2d 200 (1970).

### E. The Arbitrator Should Not Apportion The Attorney Fees

Remote Solution asserts that the Arbitrator should apportion any award of attorneys' fees among Contec's suppliers because (1) "Contec has not yet established that either lawsuit arose

---

[40] *See, e.g., Chicago Ins. Co. v. Abstract & Title Guaranty Co.*, 2004 WL 692051, at *4 (S.D. Ind. 2004); *Meduna v. Holder*, 2003 WL 124214, at *3 (Tex. App. 2003); *see also* N.D. Ill. Local Rule 54-3(d)(1) ("These [billing] records may be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine.").

because the plaintiffs discovered infringement from a URCU manufactured by Remote Solution, as opposed to one of [Contec's] other suppliers," and (2) "Contec's timesheets reveal that Contec had indemnity agreements with CMT and Seoby as well as Remote Solution." (Opp., 17). Both arguments are completely irrelevant. As to (1), Philips' and UEI's infringement allegations were not specific to remote control units supplied by particular suppliers — thus those supplied by Remote Solution were implicated from the beginning by Philips' and UEI's allegations. As to (2), Contec is not required to seek indemnification from every party against which it may have a claim. That decision is completely up to Contec.[41]

Significantly, Remote Solution does not dispute the basis for Contec's argument that Remote Solution should be responsible for <u>all</u> of Contec's attorneys' fees in the Philips and UEI cases — namely, that had Remote Solution defended Contec as it was obligated to do, Contec would have incurred little or no attorneys' fees or expenses. Nor could it, because that is exactly what Remote Solution itself has done in the Philips litigation. It largely relied on co-defendant CMT's defenses in order to keep its own expenses at a minimum.[42]

---

[41] 

[42] *See* Supplemental Declaration of Kenneth L. Stein ("Suppl. Stein Decl."), dated March 25, 2005, Ex. U, pp. 2-3 (Remote Solution stating that it "is and has been relying on the defenses set forth by CMT (and has joined in on those defenses in connection with the defendants' motions for summary judgment."); Ex. V, p. 11, n.4 (Remote Solution arguing that "[i]t is entirely rational for a defendant with limited resources, when joined with a defendant with greater resources, not to engage in costly duplicative efforts, especially where such duplication affords no additional or greater prospect of victory as to those specific defenses. While Defendant can be faulted for not anticipating CMT's motion to sever, no defendant should be criticized for not spending every last cent to litigate a case, especially when it appears that there is a cost-effective alternative.).

NYJD: 1587337.2

F.  **Remote Solution Should Not Be Permitted To "Vouch In" Additional Parties**

Remote Solution asserts that it should be permitted to "vouch in" Seoby and CMT because it "has a claim for partial indemnification" against them. (Opp. 18). Plainly, however Remote Solution does not have an indemnification claim against those companies, which is the only situation in which that procedure may be invoked. In other words, one may only vouch in potential indemnitors. *See Farrell Lines, Inc. v. Nalfleet, Bull & Roberts, Inc.*, 1995 WL 42259, at *1, 3 (S.D.N.Y. 1995) (citing N.Y. U.C.C. Law § 2-607(5) (1993)). There is simply no relationship between Remote Solution and Seoby or CMT that would give rise to an indemnification obligation. At most, what Remote Solution describes is a claim for contribution for the damages that Remote Solution is required to pay to Contec. The "vouching in" procedure may not however be used for such claims. *See United Arab Republic of Egypt v. Lee*, 1997 WL 403478, at *6, n. 2 (S.D.N.Y. 1997).

G.  **The Fees Charged By Contec's Lawyers Are Reasonable**



As to (1), the fees reflect the difficulty in responding to Remote Solution's arguments, which more often than not come completely out of left field and have no basis in law or fact. In

---

[43] Suppl. Stein Decl., Ex. W.

the case of Hango's motion to add a cross-claim, Hango (represented by Remote Solution's counsel) asserted that Contec had an obligation to indemnify it, even though Hango disclaimed any relationship at all between it and Contec, much less one that would give rise to an indemnification obligation. It was not until its reply brief that Hango first identified the supposed legal basis for its claim. The motion was however simply an improper attempt by Remote Solution to use its U.S. subsidiary to do an end-run around the arbitration provisions of the Agreement and drag Contec back into the Delaware action. It was certainly reasonable for Contec to devote the resources necessary to prevent that from happening. Remote Solution claims to have incurred only $3,330 in legal fees in connection with that motion, though it does not provide any time records for the work or give the hourly rates of the attorneys involved in it. (Opp. 19). That amount would account for less than 15 hours of time for a mid-level associate at Pennie & Edmonds at the time (one having a rate of, e.g., $230/hr.) — it has no bearing whatsoever on what a reasonable amount of fees would be for defending against Hango's motion.



- 17 -

Page 18 is redacted in its entirety

Contec also seeks a permanent injunction against Remote Solution as specified herein. Contec believes that there are no issues concerning the amount of damages due Contec requiring an evidentiary hearing. Courts routinely decide such issues without a hearing.

Respectfully submitted,

Dated: August 9, 2005        By: _____
Kenneth L. Stein
Richard H. An
JONES DAY
222 East 41st Street
New York, N.Y. 10017
Ph: (212) 326-3632
Fax: (212) 755-7306

Attorneys for Claimant
Contec Corporation

---

[45] This figure will be supplemented to include additional invoices from the Arbitrator and AAA.

- 19 -