AMERICAN ARBITRATION ASSOCIATION

CONTEC CORPORATION,        )
                          )
            Claimant,      )        No. 50 T 133 00325 03
                          )
      v.                   )        David W. Plant, Esq., Arbitrator
                          )
REMOTE SOLUTION CO., LTD., )
                          )
            Respondent.    )


**OBJECTIONS OF REMOTE SOLUTION CO., LTD.
TO CONTEC CORPORATION'S STATEMENT OF DAMAGES**


David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for Remote Solution Co., Ltd.


Dated: August 29, 2005

## ARGUMENT

Remote Solution Co., Ltd. ("Remote Solution") submits this statement of objections to Contec Corporation's Statement of Damages. Exhibits and judicial decisions cited herein which have not previously been submitted to the Arbitrator are attached hereto.

## I.    CONTEC IS NOT ENTITLED TO RECOVERY OF AMOUNTS PAID IN SETTLEMENT.

### A.    THE AGREEMENT DOES NOT PROVIDE FOR REIMBURSEMENT OF SETTLEMENT PAYMENTS.

Contec seeks recovery of amounts paid to UEI and Philips in settlement. However, such amounts are not within the scope of Section 3(c) which states that "Seller shall pay all damages and costs *awarded by final judgment* against Purchaser." (Emphasis added).

Indemnification agreements are construed strictly, with any ambiguities resolved against the drafter (in this case, Contec). **Hooper Associates, Ltd. v. AGS Computers, Inc.,** 548 N.E.2d 903, 905 (N.Y. 1989); **Modern Settings, Inc. v. American District Telegraph Co.,** 503 N.Y.S.2d 44, 46 (N.Y.A.D. 1st Dept. 1986); **Quinones v. Waldbaum's Inc.,** 469 N.Y.S.2d 743, 744 (N.Y.A.D. 1st Dept.1983), *app. dismissed,* 62 N.Y.S.2d 646 (N.Y. 1984).

The plain language of the Agreement speaks only of damages and costs awarded by final judgments, not settlements. The terms are not synonymous. There were no damages or costs awarded by any jury or judge as a final judgment. To award settlement amounts now would be an improper re-writing of the Agreement.[1]

---

[1]

Although Section 13(a) permits Contec to settle a case if Remote Solution does not defend, it does grant entitlement to recover the amount paid in settlement. Indeed, the fact that Section 13(a) refers to settlement, but Section 3(c) does not, indicates that the parties knew the difference, and

(continued...)

1

Page 2 is redacted
in its entirety

# Page 3 is redacted
# in its entirety

## II.    CONTEC IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES IN CONNECTION WITH THE DELAWARE LITIGATION.

### A.    CONTEC HAS NOT MET ITS BURDEN OF PROVING THAT THE FEES REQUESTED ARE REASONABLE.

Under New York law, where a contract provides for recovery of attorneys' fees, there is a requirement that the fees be reasonable. *See* **F.H. Krear & Co. v. Nineteen Names Trustees**, 810 F.2d 1250, 1263 (2nd Cir. 1987); **American Motorists Ins. Co. v. Napco Security Systems, Inc.**, 665 N.Y.S.2d 273 (N.Y.A.D. 1st Dept. 1997). An indemnitee has the burden of proving that the fees requested are reasonable. **American Motorists Ins. Co. v. Trans International Corp.**, 696 N.Y.S.2d 186, 187 (N.Y.A.D. 2nd Dept. 1999) ("[t]he indemnitee must, however, demonstrate that it reasonably and in good faith incurred such a fee"). *See also* **In re: Arbitration Between McNamee, Lochner, Titus & Williams P.C. and Killeen**, 700 N.Y.S.2d 525, 526 (N.Y.A.D. 3rd Dept. 1999) (in fee dispute arbitration, burden is on attorney to prove that fees are reasonable).

Reasonableness of the fee involves both the hourly rate and the amount of time billed in relation to the task(s) at hand. As for the hourly rate, Contec argues that the hourly rate is consistent with New York rates. However, New York is not the relevant market, Delaware is, as that was the venue where the case was litigated. As the Sixth Circuit stated:

> when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is the rate which lawyers of comparable skill and experience can reasonably expect to

---

[3](...continued)
from the Products manufactured by Remote Solution, and so Remote Solution is not obligated to foot the bill for settlement of such damages claims.

4

> command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normal practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

**Adcock-Ladd v. Secretary of Treasury,** 227 F.3d 343, 350 (6th Cir. 2000).

Although the **Adcock-Ladd** decision was in the context of undertaking a "Lodestar" analysis, it should be applied under the present circumstances. Contec never requested that Remote Solution assume the defense of the case. Instead, as demonstrated in all the communications on the subject between Contec and Remote Solution, Contec sought to retain control of litigation strategy and then bill Remote Solution for it. Under this circumstance, Contec had a duty to act sensibly to minimize unnecessary expense. "In construing indemnity covenants ... it is everywhere recognized that the indemnitee must act in good faith. He cannot needlessly, in utter disregard of the burdens he is imposing on his indemnitor, incur attorney's fees, and in no case such as are excessive and unreasonable in amount." **Kilgore v. Union Indemnity Co.,** 132 So. 901, 902 (Ala. 1931). Thus, if Contec wanted to spare no expense, and hire an out-of-state firm in addition to a Delaware firm (with consequent redundancy), that was its choice, but it does not have the right to impose extravagant or duplicative costs upon Remote Solution as indemnitor. As such, Delaware rates should be the standard.





---

4

    Contec incorrectly characterizes Hango Remote Solution, Inc. as a "subsidiary" of Remote Solution. Hango (now defunct) was a California corporation in which Remote Solution owned a minority interest. It was established as a vehicle for selling mp3 players, not remote controls. It was dragged into the Delaware litigation because Hango offered to assist Remote Solution with billing and collection on Remote Solution's sales of universal remote controls for customers who did not want to deal with the inconvenience of Korean currency restrictions and the use of a letter of credit to facilitate payment. Philips used this as a basis for suing Hango. Hango sought equitable (not contractual) indemnification for attorneys' fees incurred in its defense, not for fees incurred in defending Remote Solution. (Ahn Decl. ¶¶3-4). As such, Contec's disparaging comment that Remote Solution was seeking an "end run" around the Manufacturing Agreement (Statement of Damages at 6 n. 18) is wide of the mark.

5

    As another example, Contec obtained an award of attorney's fees from the U.S. District Court for the Northern District of New York in confirming the Arbitrator's interim award enjoining prosecution of litigation in Korea. Contec requested an award of $30,000.00. In subsequently vacating the award, the Court characterized the amount sought "grossly excessive." (Finger Decl. Ex. I).



6

7

Contec cites **Gray Mfg. Co. v. Pathe Indus., Inc.,** 305 N.Y.S.2d 794 (N.Y.A.D. 1st Dept. 1969), *aff'd*, 312 N.Y.S.2d 200 (N.Y. 1970), for the proposition that the burden was on Remote Solution to make specific objections. However, in **Gray,** the Court found that the indemnitee "presented a clear factual showing justifying a matter of law determination of...the reasonableness of the sums claimed as incurred and paid." **Id.** at 796. The Court concluded that, as the indemnitee had made its affirmative case as to reasonableness, it was *then* incumbent upon the indemnitor to come forward with evidence showing a material issue of fact precluding summary judgment. **Id.** In this case, by contrast, Contec has not submitted any evidence showing that the its legal fees are

(continued...)

In the absence of any evidence, expert or otherwise, to establish reasonableness, Contec has failed to establish its affirmative case.  Moreover, it would improper to allow Contec to establish reasonableness in its reply brief, as Contec had a duty to establish reasonableness in its opening memorandum as part of its' affirmative case.

In the absence of any evidence  from which the Arbitrator can make a reasoned finding as to reasonableness, any award would be arbitrary and capricious.  As Contec has failed its evidentiary burden (not even creating a factual issue), it is not entitled to any attorneys' fees.

### B.     CONTEC IS NOT ENTITLED TO ATTORNEYS' FEES AS IT HAS FAILED TO PROVIDE UNREDACTED BILLING STATEMENTS.

In support of its claims for attorneys' fees Contec has submitted its' bills from its attorneys. However, portions of those bills are redacted.  As a consequence, neither Remote Solution nor the Arbitrator is able to determine whether those redacted charges are relevant to the litigation, are duplicative of other charges, relate only to other defendants, are excessive (of themselves or in connection with other charges), or if and how they shed light on the reasonableness or lack thereof

---

[7](...continued)
reasonable.

Similarly, in **Coleman v. J.R.'s Tavern, Inc.**, 622 N.Y.S.2d 334 (N.Y.A.D. 2nd Dept. 1995), also relied upon by Contec, in a case involving a settlement amount and not attorneys' fees, the Court held that, since the indemnitee had made a "clear showing that it had made a reasonable settlement," the burden shifted to the indemnitor to establish a dispute of material fact on the issue of reasonableness.  **Id.** at 335.  By contrast here, Contec has not offered any evidence, expert or otherwise, showing that attorneys' fees of over $1.5 million were justified and reasonable.

Indeed, it is ironic that Contec accuses Remote Solution of not making specific objections, when Contec has impaired the ability to do so by redacting time entries and not providing evidence to support its claim of reasonableness.  The fact that Contec makes the self-serving assertion that its fees were reasonable does not make it so.  Proof is required, and there is none.

8

of the other charges. As such, Contec is making Remote Solution defend in the dark, and asking that the Arbitrator make an award based on incomplete information. This is improper and unfair.

Contec claims that redaction is proper to preserve the attorney-client privilege and work product protection. (Statement of Damages 14; Second Supplemental Declaration of Kenneth L. Stein ¶2). This is incorrect. In **Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Company**, 129 F.3d 143 (D.C. Cir. 1997), International Fidelity Insurance Company ("IFIC"), seeking indemnification for attorneys' fees, submitted redacted bills. The District Court responded by awarding attorneys' fees for only the unredacted portions of the bill. On appeal, however, the District of Columbia Circuit rejected that approach:

> As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining the billing statements pertaining to the legal services provided as a whole. The reasonableness of any one entry on an attorney's billing statement is likely to be informed by other charges incurred for the same general service. For example, the court needs to determine: Has the attorney over-charged for its services by expending a ridiculous amount of total time on a simple research task? Did the work undertaken encompass issues and tasks outside the scope of the question being litigated? Was each task undertaken a necessary and reasonable component of a reasonable litigation strategy?
>
> Ideal is entitled to discover the information it requires to appraise the reasonableness of the amount of fees requested by IFIC, including the nature and extent of the work done by IFIC's counsel on various phases of the case, so that it may present to the court any legitimate challenges to IFIC's claim.

**Id.** at 151.

As to the claim of attorney-client privilege, the Court held that where IFIC's assertion of a privilege results in the withholding of information necessary to Ideal's defense to IFIC's claim

against it, the privilege had to give way to Ideal's right to mount a defense. **Id.** The Court stated

that:

> [b]y claiming indemnification of attorney's fees from Ideal and
> offering the billing statements as evidence of the same, IFIC waived
> its attorney-client privilege with respect to the redacted portions of
> the billing statements and any other communications going to the
> reasonableness of the amount of the fee award. If IFIC opts to claim
> indemnity for attorney's fees from Ideal, it must disclose the billing
> statements itemizing those fees in its entirety, notwithstanding its
> claim that portions of the billing statements are privileged.

**Id.** at 152.

New York law is to the same effect. In **Measom v. Greenwich and Perry Street Housing**

**Corp.**, 752 N.Y.S.2d 194 (N.Y. Civ. 2002), the plaintiff sought an award of attorney's fees, and

redacted certain records. The Court held that:

> In seeking to recover their attorney's fees and expenses,
> plaintiffs have placed the reasonableness, necessity, and value of their
> attorneys' services squarely in issue, for plaintiffs' own benefit. The
> court must deny or reduce compensation for services that are not
> described specifically enough to permit a determination whether they
> (1) pertain to issues on which plaintiffs prevailed, (2) were necessary
> and not excessive or duplicative, and (3) are commensurate with the
> amounts claimed. To the extent the attorneys' time records are
> material and necessary to these issues, plaintiffs have waived any
> privilege. Since plaintiffs' attorneys have conceded an interest in the
> award of fees and expenses, the attorneys likewise have waived any
> immunity for work product that is material and necessary to the issues
> of fees and expenses.

**Id.** at 196 (citations omitted).

Contec has had two opportunities to present unredacted bills, and has steadfastly refused to

do so over Remote Solution's objections. Due process and fundamental fairness mandate that

Remote Solution have access to the evidence against it to determine any and all objections it might

make. Submitting the bills for the Arbitrator's eyes only would not cure this. Contec has unfairly

impeded Remote Solution's ability to defend itself, and so should be denied any fees. Any award

granted to Contec under these circumstances would be tainted.[8]

## C.    CONTEC IS NOT ENTITLED TO RECOVER ANY ATTORNEYS' FEES PRIOR TO THE FILING OF LAWSUITS AND NOTICE THEREOF.

Section 3(c) of the Agreement provides that "Seller shall *defend any suit or proceeding*

brought against Purchaser to the extent that such suit or proceeding is based on a claim that the

Products constitute an infringement of any valid United States or foreign patent...." (Italics added).

The term "suit" refers to "any proceeding by one person or persons against another or others

in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords

him for the redress of an injury or the enforcement of a right, whether at law or at equity." **Black's**

**Law Dictionary** 1286 (5th ed. 1979). The term "proceeding" is synonymous with the word "suit"

in describing a judicial or quasi-judicial action. **Id.** at 1083.

The Philips suit was filed on February 12, 2002. (**Id.**. Ex. A). Yet Contec seeks attorneys'

fees commencing July 27, 2000. (**Id.** Ex. H).[9] Contracts of indemnity are to be construed strictly

against the indemnitee. The plain language of Section 3(c) limits any claim of damages arising from

an alleged failure to defend to those damages incurred in litigation, after suit was initiated.[10] Had

---

[8]

For similar reasons, Remote Solution should not be charged for time spent by Contec's lawyers in redacting the time sheets for this arbitration.

[9]

By contrast, the UEI complaint was filed on November 15, 2000 (Stein Decl. Ex. B), and its submitted attorneys' fees do not commence until December 29, 2000. (**Id.** Ex. K).

[10]

Although Contec sent Remote Solution a letter dated November 22, 2000, informing Remote
(continued...)

Contec, which drafted the Agreement, wanted greater protection, it could have negotiated for such additional protection. As it did not, Contec is not entitled to any attorneys' fees incurred by Contec in connection with the *Philips* litigation prior to March 18, 2002, the date Contec first notified Remote Solution about the lawsuit. (1 Stein Decl. Ex. C).

### D.    CONTEC IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES PAID FOR MATTERS UNRELATED TO REMOTE SOLUTION.

After Contec was sued in Delaware, it provided to Philips the names of its suppliers, Remote Solution, Seoby and CMT, all of whom were then added as defendants. (Finger Decl. Ex. A).

If the Arbitrator determines that Contec is entitled to have Remote Solution reimburse its attorney's fees in connection with the *Philips* and *UEI* litigations, Contec must first exclude from those fees amounts not related to any conduct by Remote Solution. *See* **SS Amazonia**, 564 F.2d at 10 (causation is an essential ingredient for a claim for indemnification).



.[11]

---

[10](...continued) Solution that Philips had contacted Contec about licensing (Stein Decl. Ex. C), Contec did not refer to a claim of infringement, did not ask Remote Solution to intervene on its behalf and negotiate with Philips, and did not otherwise provide such an opportunity. Instead, Contec specifically requested that Remote Solution cooperate with Contec in its investigation, which Remote Solution did. Even in Contec's March 19, 2002 letter, Contec did not request that Remote Solution take control of the litigation, only that it cooperate with Contec's counsel and then reimburse Contec. (**Id.** Ex. D). That is not what entitled Contec to damages under Section 3(c).

[11]

*See, e.g.,* 1 Stein Decl. Ex H, time entries for Nov.11/17/2000, 11/30/2000, 12/1/2000, 12/7/2000, 12/11/2000, 8/29-30/2001, 9/6-7/2001, 9/18/2001, 3/1/2002, 3/7/2002, 3/13-14/2002, 3/18-19/2002, 4/1-4/2002, 4/10/2002, 11/7/2002, 11/13/2002, 12/4-6/2002, 12/9/2002, 12/17/2002, 12/27/2002, 1/2/2003, 1/8/2003, 1/31/03, 2/21-22/03, 2/24/2003, 3/10/2003, 3/12-14/2003, 3/20/2003, 4/9-10/2003, 4/24/2003, 4/28/03, 4/24/2003, 5/19/2003, 5/22/2003, 7/1/2003, 7/3/2003,

(continued...)

Many of the descriptions of activities in the time sheets are improperly redacted, so no one other than Contec knows to what they refer.

Contec argues that it should not be required to "parse out de minimus amounts of work...." However, the burden is on Contec to prove that each item on the timesheets relates to a matter referring either exclusively to the Products manufactured by Remote Solution, or to issues in common with the other defendants. It cannot be argued with any credibility that the Manufacturing Agreement obligates Remote Solution to indemnify Contec for legal fees incurred in connection with matters not involving Products (as that term is defined in the Manufacturing Agreement) sold to Contec by Remote Solution. If Contec finds the effort inconvenient or tedious, it is free to withdraw its claim for attorney's fees.

### E.    THE ARBITRATOR SHOULD APPORTION ANY AWARD OF FEES.



---

[11](...continued)
7/7-11/2003.

*See also* 1 Stein Decl. Ex. I, time entries for 7/29/02, 11/7-8/2002, 11/11/2002, 12/1/2002, 12/4-5/2002, 12/9-10/2002, 1/2/2003, 1/13, 2003, 1/18/2003, 3/27/2003, 4/24/2003, 6/28/2003.

*See also* 2 Stein Decl. Ex. K, time entries for 11/17/2000, 4/2/2002, 1/21/2003, 1/30/2003.

Time entries may be difficult to follow because Contec did not number the pages, and the time entries do not necessarily follow chronologically, as Contec's attorney's divided the fees up by patent.

The time entries listed above may be incomplete, as numerous time entries are redacted, and so Contec has withheld information as to whether the time entrees relate to other defendants.

13



<sup>12</sup>

<sup>13</sup>

<sup>14</sup>

To the extent Contec objects on the ground that the declarations of Mr. Park and Mr. Ahn contain hearsay, hearsay may be considered by the Arbitrator. **Petroleum Separating Co. v. Interamerican Refining Corp.**, 296 F.2d 124 (2nd Cir. 1961). In any event, as the burden of proof lies with Contec, Contec should be required to come clean with the Arbitrator about this discussion, and explain why it believes it was justified in rejected CMT's offer, and why so doing permits Contec to seek recovery now from Remote Solution.

limited at most to a proportionate share, based on Remote Solution's percentage of overall sales of universal remote control units to Contec.

Pursuant to AAA Commercial Arbitration Rule 43(a), "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." Contec should not be permitted to pick and choose amongst indemnitors so as to act oppressively against the smallest of its suppliers.

## III.    THE INDEMNITY PROVISION DOES NOT PROVIDE FOR RECOVERY OF AMOUNTS SPENT TO ENFORCE IT.

Contec seeks recovery of costs it incurred in connection with federal and Korean judicial proceedings to enforce its claimed right to indemnity. The Arbitrator may not award such fees in the absence of statutory or contractual authorization. **Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.**, 20 F.Supp.2d 670, 674-75 (S.D.N.Y. 1998). AAA Rule 43 permits an award of attorneys' fees only if "if all parties have requested such an award or it is authorized by law or their arbitration agreement."

Under applicable New York law, an indemnity provision is not to be interpreted as including attorneys' fees incurred in litigation between the parties (as opposed to claims by third parties) unless the intention of the parties to so provide is "unmistakably clear." **Hooper Associates, Ltd.,** 548 N.E.2d at 905-06 (rejecting argument that standard has been relaxed).

Section 13(a) speaks in general terms of "all losses, damages, liabilities, expenses," etc., and refers to defending actions brought by third parties. This supports the conclusion that Section 13(a) was not intended to apply to attorneys' fees for actions between Contec and Remote Solution.

15

For example, in **Hooper**, the indemnification clause stated that the indemnitor would "indemnify and hold harmless [plaintiff]...from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of, among other things, patent infringement claims. The New York high court held that the indemnity clause referred exclusively to third-party claims, and was neither "exclusively or unequivocally referable to claims between the parties themselves [nor] supported by an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." **Id.** at 903. *See also* **Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.**, 98 F.3d 13, 20-21 (2nd Cir. 1996) (indemnification against "any and all claims, demand or causes of action, any and all costs or expenses, including attorney fees..." was not an "unmistakably clear statement that [attorneys' fees incurred in actions between the parties to the contract] were intended"); **Klock v. Grosodonia**, 674 N.Y.S.2d 187 (N.Y.A.D. 4th Dept. 1998) (agreement indemnifying against "any and all injury, loss or damage of whatever nature" did not include attorneys' fees incurred in establishing the right to indemnification).

Contec relies on language in Section 19 of the Agreement which authorizes an award of attorneys' fees "incurred in the conduct of such arbitration." The modifier "such" refers to the present arbitration, and makes clear that it is limited to only "such" arbitration. The litigation was not "in the conduct of such arbitration." To the contrary, it was for the purpose of halting the conduct of "such arbitration." There is nothing in the language of Section 19 which supports a conclusion that the Arbitrator has "unmistakably clear" authority to award attorneys' fees for actions other than this arbitration.[15]

---

[15] The two cases cited by Contec do not help it. First, they do not apply New York law, and to
(continued...)

16

Finally, if the Court ultimately concludes for some reason that Section 19 permits an award of attorneys' fees from the New York litigation, then the additional language precludes the full amount Contec seeks. Section 19 allows attorneys' fees "incurred in the conduct of such arbitration *but in no event will the recovery of its attorneys fees be in excess of the actual cost of the other party's attorney's fees.*" Remote Solution's attorney's fees arising from the New York litigation total **$54, 273.75** ($22,358.94 for Finger & Slanina and $31,914.81 for Nolan & Heller) (Ex. C hereto).[16]

---

[15](...continued)

the extent that they are inconsistent with **Hooper** and the other New York cases cited, they must be rejected as they do not establish with "convincing clarity" that the parties intended to cover fees in connection with litigation to enforce or stay arbitration..

Moreover, the circumstances of those cases are distinguishable. In **Kalal v. Gray**, 135 Cal. Rptr.2d 449 (Cal. App. 2003), the language of the relevant agreement was broader, applying to fees incurred "in connection with" the arbitration. The word "connection" includes among its definitions "anything that joins, *relates* or connects." **The American Heritage Dictionary of the English Language** 282 (1970) (emphasis added). There is no similar relational language here.

In **Christian Dior, Inc. v. Hart Schaffner & Marx**, 637 N.E.2d 546 (Ill. App.), ***app. denied mem.***, 642 N.E.2d 1275 (Ill. 1994), the language was broader, and the reason for the award of fees focused principally on bad faith conduct (although the term "bad faith" is not used).

[16]

Contec again asserts that an award of attorney's fees in the New York litigation is appropriate because Remote Solution's arguments were proven wrong by virtue of the "General Agreement for the Trade." (Statement of Damages 12). However, it is evident that both sides had overlooked this document, and were litigating on the innocent assumption of its non-existence. On that assumption, Remote Solution had a good faith basis for its arguments, as demonstrated by the decision of the Second Circuit, which recognized a split in other circuits on the issue. **Contec Corporation v. Remote Solution Co., Ltd.**, 398 F.3d 205 (2nd Cir. 2005). Contec suggests that Remote had Remote Solution remembered the document, it would not have had a case. It is also true that if Contec had remembered the document, the litigation would have ended. However, the lack of recollection is chargeable to both sides equally. To the extent that Contec seeks to blame Remote Solution, using Contec's logic it can be argued that Contec, by not bringing the document to the Court's attention, and with knowledge, conceded that the document was not relevant to the analysis.

(continued...)

**IV.    CONTEC IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES RELATED TO THE CONFIRMATION OF THE EARLIER AWARD.**

Contec includes in its claim attorneys' fees incurred in obtaining a judicial confirmation of the Award re Standing. (*See* Second Supplemental Declaration of Kenneth L. Stein, time entries for 1/11/04 - 1/16/04[17]). Contec has not provided any legal authority authorizing the Arbitrator to make such an award. Indeed, such awards are generally given by the Court in the context of confirmation, not by the Arbitrator.

In this case, Contec requested fees from the District Court in connection with confirmation. That request was originally granted, but then the award was vacated due to Contec's failure to abide by the Court's instructions. The Court also noted that the application was "grossly excessive." (Finger Decl. Ex. I).

Contec is now attempting an "end run" around the ruling of the District Court. There is no basis in law or equity for granting fees which have been passed on and denied by the District Court.[18]

---

[16](...continued)
Had Remote Solution wanted to "hide the ball" it would not have disclosed the document in this arbitration.

[17]

There may be additional time entries relating to the confirmation; however Remote Solution cannot tell from the generalized descriptions used.

[18]

Similarly, any money paid by Contec to Korean counsel should have been raised before the District Court, and is not properly considerable now.

18

**V.    CONTEC'S CLAIM FOR ATTORNEYS' FEES IN CONNECTION WITH THIS ARBITRATION IS LIMITED TO THE EXTENT OF REMOTE SOLUTION'S ATTORNEY'S FEES.**

Section 19 of the Manufacturing Agreement states that the prevailing party in this arbitration is entitled to recover from the other party its attorney's fees and expenses, "but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees."

The "actual cost" of Remote Solution's attorney's fees to date in connection with this arbitration total **$13,581.11.** (Ex. C hereto[19]). That is the maximum extent to which Contec may claim reimbursement.

**VI.    ANY AWARD SHOULD BE REDUCED BY THE AMOUNT CONTEC OWES REMOTE SOLUTION.**

Contec concedes that any award should be reduced b the amount of money Contec owes Remote Solution. However, Contec disputes the amount. Contec states that the amount is $620,038, and that the remaining $72,474.27 should not be included because the products what that payment represents were never delivered to Contec. (Statement of Damages 18).

It is black letter law that where one party breaches the contract, the other party is excused from further performance and can seek damages for the breach. **Melodies, Inc. v. Mirabile**, 179 N.Y.S.2d 991, 993 (N.Y.A.D. 3rd Dept. 1958), *app. and reargument denied*, 182 N.Y.S.2d 348 & 185 N.Y.S.2d 775 (N.Y.A.D. 3rd Dept. 1959). As Contec had breached on its obligation to pay over

---

[19]

Contec may challenge Remote Solution's fees as too low. A comparison of the billing may even show some mutual events for which Remote Solution's billed less time (or no time) than Contec's counsel. However, Remote Solution's counsel does not bill "New York style," and the Manufacturing Agreement limits fees to what was actually billed to Remote Solution, not what anyone thinks should have been billed to Remote Solution.

$620,000, Remote Solution was entitled to suspend further performance, and is entitled to damages for the entire order.




t.

## VIII.  <u>CONTEC IS NOT ENTITLED TO A PERMANENT INJUNCTION.</u>

In the Arbitrator's Award re Claimant's Standing dated December 1, 2003, the Arbitrator enjoined prosecuting the Korean action "pending the outcome of this arbitration on the merits." (Award at 21).  Contec now seeks to expand this to a permanent injunction, not only as to the Korean litigation, but also as to "any other action or proceeding of any kind in Korea or elsewhere which relates to any dispute arising out of or relating to the 1999 Agreement...." (Statement of Damages 8).  This goes beyond the purposes of the injunction, and seeks an unprecedented degree of relief.

The purpose of such interim injunctions is to preserve the integrity of the arbitration process.  Once the arbitration process is completed, there is no longer any need to preserve the integrity of the arbitration process, and so no need for injunctive relief.

In **Food Fair Stores, Inc. v. Square Deal Market Co., Inc.**, 187 F.2d 219 (D.C. Cir. 1951), the plaintiff initiated litigation in the U.S. District Court for the District of Columbia, and the defendant filed a counterclaim.  The plaintiff subsequently filed a second suit against the defendant in the U.S. District Court for the District of Maryland involving similar claims.  The defendant filed a motion in the D.C. Court seeking to enjoin the Maryland prosecution.  The D.C. District Court entered a permanent injunction against the prosecution of the Maryland action.  The D.C. Circuit stated that:

> we feel the lower court properly granted an injunction.  But both the appellant and appellee seem to agree that the order entered below was a permanent injunction.  The appellant, however, contends, and quite

21

> correctly we feel, that this is not a proper use of a permanent injunction to prevent relitigation of all issues properly included in any judgment. The appellee is fully protected in this regard by the doctrine of res judicata. There is no other purpose for allowing such an injunction to continue beyond the period required to finally determine the District of Columbia case.

**Id.** at 220.

Presumably, Contec will seek court confirmation of the Arbitrator's final award. Contec will then be able to claim *res judicata* in any litigation. Moreover, Contec has not established that there is a risk of future disputes between the parties justifying the unusual step of enjoining speculative future litigation. Nor has Contec provided any legal authority as to the propriety of its request. As such, injunctive relief is improper.

22

## CONCLUSION

Contec asks the Arbitrator simply to rubber stamp its excessive demands, without the bother of having to produce evidence

WHEREFORE, for the foregoing reasons, Remote Solution respectfully requests that the Arbitrator deny Contec's claim in its entirety.


Respectfully submitted,


David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for Remote Solution Co., Ltd.


Dated: August 29, 2005