**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| CONTEC CORPORATION,<br><br>Claimant,<br><br>v.<br><br>REMOTE SOLUTION CO., LTD.,<br>Respondent. | Arbitration No.<br><br>50 T 133 00325 03<br><br>David W. Plant, Esq. |

**CONTEC'S REPLY BRIEF IN SUPPORT OF
ITS STATEMENT OF DAMAGES**

NYJD: 1591018.1

# TABLE OF CONTENTS

I.    Contec Should Be Awarded All Its Attorneys Fees
      Reasonably Incurred in Connection with the
      Arbitration .......................................................................................... 1

      A.    Remote Solution's Attempt to Nullify Contec's Right,
            as the Prevailing Party in the Arbitration, to Receive
            its Reasonable Attorneys' Fees under Section 19 of
            the 1999 Agreement is a Breach of its Duty of Good
            Faith and Fair Dealing. ........................................................ 1

      B.    Contec Should be Awarded the Full Amount of its
            Attorneys' Fees in Connection with the Arbitration
            and Related Court Proceedings ............................................ 11

II.   Contec Is Entitled To Recover Amounts Paid in Settlement ............................ 12

III.  Contrary to Remote Solution's Assertion, Contec
      Is Entitled To An Award of Attorney's Fees In Connection
      with the Delaware Litigation ......................................................... 14

      A.    Contec is Entitled to all Fees Incurred in Good Faith............................ 14

      B.    Contec's Fees are Reasonable.......................................................... 14

      C.    Contec Is Not Limited To Delaware Rates ......................................... 18

      D.    Contec is Entitled to Redact its Billing Statements without
            Compromising its Right to Recover Attorneys' Fees ........................... 20

      E.    Contrary to Remote Solution's Assertion, Contec is Entitled to Recover
            Attorneys' Fees Incurred Prior to the Filing of the Lawsuits and Notice
            Thereof ................................................................................. 22

      F.    Contec Should Not Be Required to Parse Out
            De Minimus Work Ostensibly Related to Other Suppliers................................. 23

      G.    The Arbitrator Should Not Apportion the Attorneys' Fees. ...................... 24

IV.   Contec is Entitled to the Amounts it Has Spent Enforcing the
      Indemnity Provision ..................................................................... 25

V.    Contec is Entitled to an Award Of Attorneys' Fees Incurred
      in Connection with the Confirmation of the Arbitrator's
      Earlier Award ............................................................................ 27

i

NYJD: 1591018.1

**TABLE OF CONTENTS**
**(cont'd)**

**Page**

VI.   Contec's Award Should be Reduced Only by Contec's
      Set-off, Not by Additional Amounts for Goods Never
      Delivered to Contec ...................................................................................... 28

VII.  Contec's Award Should Not be Reduced by Amounts
      Contec Received from Others, Since Contec is Not
      Seeking Recovery of those Amounts from Remote Solution .......................... 29

VIII. Contec is Entitled to a Permanent Injunction ................................................. 29

NYJD: 1591018.1

In Remote Solution's Objections to Contec Corporation's Statement of Damages ("RSC's Objections"), Remote Solution contends that, despite the fact that the Arbitrator has ruled that Contec is entitled to indemnification from Remote Solution due to Remote Solution's breach of Section 3(c) of the 1999 Agreement, Contec is entitled to receive from Remote Solution (1) <u>none</u> of the amounts Contec paid in settlement of Philips' and UEI's claims, (2) <u>none</u> of the attorneys' fees and related expenses Contec incurred in defending against the Philips' and UEI's claims, (3) only $13,581 for the attorneys' fees and related expenses, due Contec as the prevailing party in the arbitration, that Contec has incurred over the last two years in connection with this arbitration and related court proceedings, and (4) <u>no</u> permanent injunction against Remote Solution proceeding with its Korean lawsuit. Each and every one of Remote Solution's arguments are meritless. They are addressed in turn below.

**I.      Contec Should Be Awarded All Its Attorneys Fees Reasonably Incurred in Connection with the Arbitration.**

        **A.      Remote Solution's Attempt to Nullify Contec's Right, as the Prevailing Party in the Arbitration, to Receive its Reasonable Attorneys' Fees under Section 19 of the 1999 Agreement is a Breach of its Duty of Good Faith and Fair Dealing.**

Remote Solution asserts that Contec's recovery of its attorneys' fees incurred in connection with the arbitration is limited to $13,581,[1] because that is all Remote Solution's attorneys have billed to Remote Solution in the over two years this arbitration has been pending, and, under section 19 of the Agreement, Contec, as the prevailing party, cannot recover fees in excess of the actual cost of Remote Solution's attorneys' fees. Remote Solution is wrong, because, by selecting an attorney who has ostensibly been working substantially for free, it has breached its obligation of good faith and fair dealing under New York common law and the N.Y. U.C.C., unilaterally nullifying a contract provision intended to compensate the prevailing party in the arbitration for its reasonable attorneys' fees. Remote Solution's attorney has in fact admitted that he has billed "less

---

[1] Remote Solution increases that amount to $67,855, if the Arbitrator rules that fees from the related New York action and Second Circuit appeal should be included, which Remote Solution disputes.

time (or no time)" than Contec's counsel for "mutual events,"[2] and an examination of his billing records reveals that he has billed no time or ridiculously small amounts of time for numerous tasks in the arbitration and related court proceedings.

Section 19 of the 1999 Agreement provides that:

> The prevailing party in any such situation will be entitled to recover from the other party all of its expenses, including, without limitation, all expenses due and payable to the AAA and such party's fees and expenses for witnesses, the arbitrators and its attorney's fees incurred in the conduct of such arbitration but in no event will the recovery of its attorney's fees be in excess of the actual cost of the other party's attorney's fees.

That provision was plainly intended to deter the parties from breaching the agreement and to discourage the parties from pursuing meritless or even weak claims or defenses in an arbitration. A party could pursue such claims and defenses only at its peril, since, if unsuccessful, it would be required to pay not only its own attorneys' fees, but the other party's fees too.

The limitation on attorneys' fees at the end of the above-quoted portion of Section 19 was not intended to create a loophole through which the remainder of the provision could be rendered meaningless, as Remote Solution attempts to do. The provision clearly presumes (i) that each party would retain competent counsel to represent it in any arbitration, (ii) that that counsel would actually charge for the time expended in connection with the arbitration, and (iii) that that counsel would bill his or her time at an hourly rate that is within the range of customary hourly rates for attorneys competent to handle the subject matter of the arbitration. The limitation is plainly intended to act only as a mechanism for eliminating disputes over the reasonableness of the prevailing party's fee request; *i.e.*, the losing party cannot complain of the reasonableness of the prevailing party's fees, if those fees are limited to the amount the losing party incurred. That intent, as evidenced by the plain words of the contract, is a matter contract interpretation for the Arbitrator to decide. The limitation on fees certainly should not be read in a vacuum and without

---

[2] RSC's Objections, p. 19 n.19.

- 2 -

consideration of the intent of the entire provision, as Remote Solution does. In fact, under Remote

Solution's interpretation, if the losing party found counsel to represent it without charge or agreed

to charge only if that party prevailed, the prevailing party would be entitled to <u>no</u> attorneys' fees in

those situations, a result which plainly disregards the intent of the provision.

Under New York law, "[i]mplicit in all contracts is a covenant of good faith and fair dealing

in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977, 979

(1995); *see also* N.Y. UCC 1-203. As the New York Court of Appeals has stated:

> Encompassed within the implied obligation of each promisor to exercise good faith
> are any promises which a reasonable person in the position of the promisee would be
> justified in understanding were included. <u>This embraces a pledge that neither party
> shall do anything which will have the effect of destroying or injuring the right of the
> other party to receive the fruits of the contract.</u>"

(*Dalton*, 639 N.Y.S.2d at 977) (internal citations omitted) (emphasis added);[3] *see also Ring v. Arts*

*Int'l, Inc.*, 792 N.Y.S.2d 296, 306 (Civ. Ct. 2004) (Holding that under the implied covenant of good

faith and fair dealing, "[t]he contracting parties pledge not to injure each other's right to receive the

benefits of the bargain."); *Bear, Sterns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp.

2d 283, 298 (S.D.N.Y. 2005) ("Under New York law, all contracts contain an implied agreement

that neither party may engage in conduct which would interfere with the other party's right to

realize the benefit of the bargain, <u>even if such conduct is not specifically prohibited by the</u>

<u>contract.</u>").[4]

---

[3] All emphasis herein added unless otherwise noted.

[4] *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353 (S.D.N.Y. 2004) (recognizing a cause of action for the breach of implied covenant of good faith of legal contingency fee contract where plaintiff law firm claimed that defendant arbitrarily refused settlement offer in order to avoid paying contingency fee); *Doe v. Nat'l Bd. of Podiatric Med. Exam'rs*, No. 03 Civ. 4034 (RWS), 2004 WL 912599 (S.D.N.Y. Apr. 29, 2004) (granting summary judgment and finding breach of implied covenant of good faith where defendant medical board refused to give plaintiff students a hearing to determine if challenged test scores were valid); *AIM Int'l Trading, L.L.C. v. Valcucine S.P.A., IBI, L.L.C.*, No. 02 Civ. 1363 (PKL), 2003 WL 21203503 (S.D.N.Y. May 22, 2003) (refusing to dismiss claim of breach of implied covenant of good faith for contract of exclusive distribution where plaintiff manufacturer alleged defendant attempted to subvert the contract); *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977 (1995) (affirming that testing service breached the implied covenant of good faith and fair dealing when it refused to consider student's evidence that he did not cheat on the exam); *1-10 Indus. Assocs., L.L.C. v. Trim Corp. Am.*, 747 N.Y.S.2d 29 (N.Y. App. Div. 2002) (reinstating plaintiff's breach of implied covenant of good faith claim that defendant lessee unreasonably exercised its discretion in refusing relocation choices according to terms of lease); *La Barte v. Seneca Res. Corp.*, 728 N.Y.S.2d 618 (N.Y. App.

- 3 -

Remote Solution, by retaining counsel that did not bill for substantial portions of his time, has quite plainly attempted to destroy or injure Contec's right under Section 19 of the 1999 Agreement to collect, as the prevailing party in the arbitration, its reasonable attorney fees. Indeed, it has permitted Remote Solution to pursue precisely the type of conduct that Section 19 was intended to discourage — in particular, its repeated and single-minded attempts to pursue every single legal argument it could conjure up, even when the weaknesses of those arguments were apparent.

The fact that Remote Solution's counsel did not bill Remote Solution for substantial amounts of time is readily apparent from counsel's billing records and his own admissions, as the following examples demonstrate:

**In the Arbitration:**

1.      Remote Solution's attorney has admitted that he billed "less time (or no time)" than Contec's counsel for "mutual events." (RSC's Objections at 19 n.19).

2.      He billed only 4.2 hours for attendance at the teleconference with the Arbitrator on October 9, 2003 and legal research for and drafting of a 6-page letter brief regarding the Arbitrator's jurisdiction, filed October 10, 2003. The letter brief contained numerous case citations, which counsel would have had to research and read before inclusion in the brief. No time was billed to the letter brief on October 10, 2003, the day it was submitted.

---

Div. 2001) (denying motion to dismiss plaintiff's claim of breach of implied covenant of good faith in which plaintiff alleged improper payments of royalties for oil and gas leases); *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.,* 727 N.Y.S.2d 225 (N.Y. App. Div. 2001) (denying summary judgment and finding issue of material fact as to whether lessor of building breached its covenant of good faith and fair dealing when it refused to negotiate with lessee as to suitable method to return building atrium to original condition according to terms of lease); *Chemical Bank v. Stahl,* 712 N.Y.S.2d 452 (N.Y. App. Div. 2000) (granting summary judgment to plaintiff for landlord's breach of the implied covenant of good faith and fair dealing where landlord refused to execute forms for asbestos abatement); *Cortale v. Educ. Testing Serv.,* 674 N.Y.S.2d 753 (N.Y. App. Div. 1998) (refusing to grant summary judgment where there were issues of material facts as to whether defendant testing service breached its implied covenant of good faith when it declared plaintiff's test score to be invalid and refused to investigate or consider student's evidence that she did not cheat on exam); *In re Nyack Nursing Home,* 656 N.Y.S.2d 440 (N.Y. App. Div. 1997) (recognizing claim of breach of convenant of good faith and fair dealing where state did not conduct contractually required audits for rate adjustment for fifteen years and refused to adjust rates of reimbursement for Medical services); *Just-Irv Sales Inc. v. Air-Tite Bus. Ctr. LLC.,* 655 N.Y.S.2d 131 (N.Y. App. Div. 1997) (denying summary judgment and recognizing claim of breach of implied covenant of good faith where landlord removed sign in violation of lease); *In re Instinet Corp.,* No. 108720/03, 2003 WL 22721404 (N.Y. Sup. Ct. Nov. 14, 2003) (finding a breach of the implied covenant of good faith and fair dealing where the defendant acted arbitrarily in order to delay contractually provided arbitration procedures); *Ring v. Arts Int'l, Inc.,* 792 N.Y.S.2d 296 (N.Y. Civ. Ct. 2004) (refusing to dismiss plaintiff tenant's claim of breach of implied covenant of good faith that landlord unreasonably refused to repair flood damages to leased space).

NYJD: 1591018.1

3.  He billed <u>no time</u> for a 2-page letter to the Arbitrator, submitted October 12, 2003, requesting reconsideration of the Arbitrator's ruling on the Arbitrator's jurisdiction. The letter contained numerous case citations, which counsel would have had to research and read before inclusion in the letter.

4.  He billed <u>no time</u> for a one-page letter to Arbitrator dated October 13, 2003.

5.  He billed only 1 hour for an 18-page brief, submitted October 17, 2003, regarding Contec's standing to enforce the 1999 Agreement against Remote Solution. No time was billed to the brief on the day it was submitted.

6.  He billed only 4.2 hours for a 9-page reply brief, submitted October 30, 2003, regarding Contec's standing to enforce the 1999 Agreement against Remote Solution. The brief contained numerous case citations, which counsel would have had to research and read before inclusion in the brief. No time was billed to the brief on October 30, 2003, the day it was submitted.

7.  He billed <u>no time</u> for a 2-page opposition brief, submitted October 31, 2003, regarding Contec's request to file a surreply brief regarding Contec's standing to enforce the 1999 Agreement against Remote Solution.

8.  He billed <u>no time</u> for review of the Arbitrator's 21 page Award re Clamaint's Standing, dated December 1, 2003.

9.  He billed <u>no time</u> for the conference with the Arbitrator held on December 23, 2003.

10. He billed <u>no time</u> for the conference with the Arbitrator held on February 18, 2005.

11. He billed 10.9 hours for a 20-page brief, submitted March 17, 2005, in opposition to Contec's Claim for Relief. That time includes the preparation of a 5-page declaration of Suk-Kyu Park, attaching 10 exhibits, and a 2-page declaration of Mr. Finger, attaching 9 exhibits. The brief contained numerous case citations, which counsel would have had to research and read before inclusion in the brief. No time was billed to the brief in the <u>nine days</u> preceding and including March 17, 2005, the day it was submitted.

12. He billed <u>no time</u> for a 3-page letter, dated March 29, 2005, in surreply to Contec's Claim for Relief. The letter contained numerous case citations, which counsel would have had to research and read before inclusion in the letter.

13. He billed 7.2 hours for the Joint Statement Regarding Contec's Claim to Indemnification from Remote Solution, submitted June 3, 2005. The statement included 10 pages of argument drafted solely by Remote Solution and 22 pages of disputed and undisputed facts drafted by both Remote Solution and Contec. Remote Solution's counsel's billing records fail to reflect time for numerous email and teleconferences between counsel for the parties. Only <u>1.2 hours</u> were billed to the Joint Statement in the <u>15 days</u> preceding and including June 3, 2005, the day it was submitted.

14. He billed <u>no time</u> for a 1-page letter to the Arbitrator, dated July 25, 2005.

NYJD: 1591018.1

15,    He billed <u>no time</u> for a 2-page letter to the Arbitrator, dated August 11, 2005.

**<u>In the Northern District of New York:</u>**

16.    He billed <u>no time</u> for Remote Solution's 9-page answer and counterclaims, filed July 31, 2003.

17.    He billed only 5.8 hours for Remote Solution's 15-page motion to stay the arbitration proceedings, filed July 31, 2003. The brief contained numerous case citations, which counsel would have had to research and read before inclusion in the motion. That time also included preparation of a 3-page declaration of Suk-Kyu Park, attaching 5 exhibits, and a 1-page declaration of David K. Ahn, attaching 2 exhibits. No time was billed to the motion in the <u>three days</u> preceding and including July 31, 2003, the day it was filed.

18.    He billed only 4.2 hours for drafting Remote Solution's 8-page opposition brief, filed September 12, 2003, to Contec's motion to compel arbitration and enjoin Remote Solution from pursuing its Korean Lawsuit. That time also included preparation of additional declarations of David K. Ahn, Suk-Kyu Park and David L. Finger.

19.    He billed only 2.2 hours for Remote Solution's 4-page motion to amend its answer, filed September 15, 2003. That time also included preparation of a substantially revised 10-page amended answer, which was attached to the motion.

20.    He billed <u>no time</u> for Remote Solution's 9-page answer and counterclaims to Contec's amended complaint, filed October 15, 2003.

21.    He billed only 3.2 hours for Remote Solution's 25-page motion for a preliminary injunction staying the arbitration, filed October 15, 2003. The motion was based on different grounds than Remote Solution's earlier motion seeking similar relief. It contained numerous case citations, which counsel would have had to research and read before inclusion in the motion. The time also included the preparation of a declaration of Justin Heller, attaching two exhibits. No time was billed to the motion in the <u>four days</u> preceding and including October 15, 2003, the day it was submitted.

22.    He billed only 2.3 hours for Remote Solution's 23-page reply brief, filed November 21, 2003, in support of Remote Solution's motion for a preliminary injunction staying the arbitration. The brief contained numerous case citations, which counsel would have had to research and read before inclusion in the brief. No time was billed to the motion in the <u>four days</u> preceding and including November 21, 2003, the day it was submitted.

23.    He billed no time for preparation of Remote Solution's Notice of Appeal and Pre-Argument Statement, filed December 15, 2003.

24.    He billed only 6.8 hours for Remote Solution's 11-page motion for a stay pending appeal, filed December 15, 2003. No time was billed to the motion in the <u>four days</u> preceding and including December 15, 2003, the day it was filed.

- 6 -

25.   Local counsel in the New York district court action billed about 50% more for that case alone (approximately $31,000[5]) than Remote Solution's lead counsel billed for <u>both</u> the district court action <u>and</u> the Second Circuit appeal ($22,358).

## In the Second Circuit Court of Appeals:

25.   He billed only 0.3 hours for Remote Solution's 9-page motion for a stay pending appeal, filed February 2, 2004.  No time was billed to the motion in the <u>five days</u> preceding and including February 2, 2004, the day it was filed.

26.   He billed <u>no time</u> for the preparation of the record on appeal index, dated June 17, 2004.

27.   He billed only 4.5 hours for Remote Solution's 21-page appeal brief, filed June 22, 2004.  No time was billed to the brief in the <u>four days</u> preceding and including June 22, 2004, the day it was filed.

28.   He billed <u>no time</u> for Remote Solution's amended brief and the Joint Appendix, both of which were filed on July 23, 2004.

29.   He billed only 6.2 hours for Remote Solution's 15-page reply brief, filed August 6, 2004.  No time was billed to the brief in the <u>five days</u> preceding and including August 4, 2004, the day it was signed.

30.   He billed <u>no time</u> for preparation for the oral argument before the Second Circuit Court of Appeals held December 9, 2004.

In addition to the above examples, there are numerous other examples where the billing records for Remote Solution's counsel reflect little or no charges for work performed by Remote Solution's counsel, including, but not limited to, little or no charges for (i) emails, correspondence, and conferences with Contec's counsel, (ii) review of Contec's briefs and other submissions, (iii) review of the rulings by the Arbitrator and courts, and (iv) preparation for conferences or hearings before the Arbitrator and courts, and (iv) for various disbursements, such as Westlaw or Lexis charges.[6]

---

[5] Remote Solution's local counsel billed $629 during the pendency of the appeal, which is not included in the $31,000 figure.

[6] The billing records of Remote Solution's counsel raise questions regarding whether Remote Solution's counsel is being compensated in a manner that might not be reflected in his bills.  Certainly attorneys, even those not from New York, typically charge clients for the time expended working on client matters.  Is Remote Solution's counsel being compensated for his time in some manner other than billable hours, such as by a contingency fee arrangement?  Is the compensation otherwise structured so as to eliminate charges that would otherwise show on bills for the arbitration and related court proceedings?  If so, the "actual cost" of Remote Solution's attorneys' fees may not be reflected in the billing records submitted by Remote Solution.

NYJD: 1591018.1

In view of the foregoing, it cannot be seriously disputed that Remote Solution retained counsel that simply did not bill Remote Solution for substantial amounts of work performed in connection with the arbitration and related court proceedings. That violates the spirit of the Agreement and frustrates the intent of Section 19. Remote Solution should not be rewarded for its attempted end-run around Section 19.

When Contec filed this arbitration on July 11, 2003, Contec believed that the issues that needed to be resolved in determining Contec's claims were simple and straightforward. The indemnification provision in the 1999 Agreement was crystal clear and required Remote Solution to indemnify Contec against precisely the type of patent infringement claims made by Philips and UEI. The damages due Contec was a simple matter of accounting. The issue of whether Remote Solution should be enjoined from pursuing its Korean lawsuit against Contec also appeared to Contec to be straightforward — the Korean lawsuit related to the payment for goods manufactured by Remote Solution and sold to Contec under the 1999 Agreement and Remote Solution's filing of it was a clear violation of the Agreement's arbitration provision, which required all disputes arising under the Agreement to be decided by arbitration in New York. Contec thus believed that the arbitration could be quickly completed within a couple months.

Now, over two years later, this arbitration still has not concluded, Remote Solution having made this arbitration, and related proceedings, as drawn out and expensive for Contec as possible. In the course of that time, Remote Solution repeatedly advanced arguments lacking any support in the facts or law, and, significantly, pursued purely procedural issues that were unlikely to have any bearing whatsoever on Remote Solution's ultimate liability to Contec. For example, Remote Solution pursued a no-holds-barred approach to the issue of whether a court or the arbitrator must decide whether the 1999 Agreement was enforceable by Contec Corporation, taking this issue, unsuccessfully, all the way to the Second Circuit. But even assuming that it prevailed and the district court or Second Circuit ruled that a court must decide that issue, Remote Solution could

- 8 -

have no reasonable expectation that a court would reach a different conclusion than the Arbitrator

did — *i.e.*, that, in view of the overwhelming evidence that the continuous business dealings

between Remote Solution and Contec were subject to the 1999 Agreement, Contec could enforce

the Agreement against Remote Solution. *See* Arbitrator's Award Re Claimant's Standing, dated

December 1, 2003. In fact, in the pre-argument conference before the Second Circuit, the staff

counsel for the Second Circuit, who conducted the conference, spent at least 15 minutes or more

chiding Remote Solution's counsel for wasting everyone's time for precisely that reason.

As a result of Remote Solution's tactics, the arbitration, and related district court and

appellate proceedings, have been extremely protracted. Those proceedings have included, in

roughly chronological order, the following matters:

1.  The filing of a New York district court action by Contec to compel Remote Solution to participate in the arbitration and to enjoin Remote Solution from pursuing its Korean lawsuit against Contec.

2.  In the district court, briefing on Remote Solution's motion to stay the arbitration proceedings and Contec's motion to compel arbitration and enjoin Remote Solution from pursuing its Korean lawsuit.

3.  In the district court, briefing on Remote Solution's motion to amend answer.

4.  In the arbitration, letter briefing on Remote Solution's request to stay the arbitration pending the outcome of the district court action.

5.  In the district court, briefing on Remote Solution's motion for a preliminary injunction staying arbitration (based on different grounds than Remote Solution's earlier motion seeking similar relief).

6.  In the arbitration, briefing on the issue, raised by Remote Solution, regarding whether the arbitrator has the authority to decide whether Contec can enforce the 1999 Agreement against Remote Solution or whether a court must decide that issue.

7.  In the arbitration, Remote Solution's request for reconsideration of the Arbitrator's October 12, 2003 letter, ruling that he had that authority to decide whether Contec can enforce the 1999 Agreement, and responsive briefing.

8.  In the arbitration, briefing on the issue, raised by Remote Solution, regarding whether Contec can enforce the 1999 Agreement against Remote Solution, including a request by Contec, which Remote Solution contested, for a surreply to address issues first raised in Remote Solution's reply.

- 9 -

NYJD: 1591018.1

9.  In the district court, briefing on Remote Solution's motion for an injunction staying the arbitration pending appeal.

10. In the district court, briefing on Contec's application to confirm the Arbitrator's award enjoining Remote Solution from pursuing its Korean lawsuit pending the outcome of the arbitration and for a temporary restraining order, necessitated by Remote Solution's failure to take any action whatsoever to stop the Korean lawsuit from proceeding.

11. In the court of appeals, briefing on Remote Solution's motion for a stay pending appeal.

12. In the court of appeals, preparation and filing of appeal briefs and a joint appendix.

13. In the court of appeals, preparation for and attendance at oral argument.

14. In the arbitration, briefing on Contec's statement regarding its bases for relief. Contec's.

15. In the arbitration, submission of a joint statement regarding Contec's entitlement to indemnification from Remote Solution.

16. In the arbitration, briefing on the amount of damages due Contec.

17. In the arbitration, briefing regarding Remote Solution's objection to Contec's designation of certain evidence as attorneys' eyes only.

In many instances the briefing on the various motions included not only opening and opposition briefs, but reply and surreply briefs as well. In addition, the motions were supported by numerous declarations and extensive exhibits.

Significantly, Remote Solution has lost on every single substantive issue it has raised in the Arbitration, the District Court, and the Court of Appeals. Under the Agreement, if Remote Solution chose a strategy of pursuing weak or baseless arguments, it did so at the risk of having to pay the fees of Contec's attorneys incurred in responding to those arguments.[7] Again, Remote Solution should not be permitted to unilaterally eliminate that requirement from the Agreement. Its attempt to do so is a breach of its obligation of good faith and fair dealing.

---

[7] Contec notes that throughout all these proceedings, its counsel billed their time for the work they performed in connection with these proceedings, and thus ran the risk, as contemplated by Section 19 of the Agreement, of a commensurate award of attorneys' fees against it if Contec had not prevailed in the arbitration.

NYJD: 1591018.1

**B.    Contec Should be Awarded the Full Amount of its Attorneys' Fees in Connection with the Arbitration and Related Court Proceedings**

In view of Remote Solution's breach of its obligation of good faith and fair dealing, Contec requests that it be awarded the full amount of its attorneys' fees incurred in connection with the arbitration, and the related actions in the District of New York, the Second Circuit Court of Appeals, and Korea. Remote Solution has no-one but itself to blame if it believes those fees to be unreasonable. Section 19 of the Agreement contained a mechanism for disposing of the issue of the reasonableness of the prevailing party's attorneys' fees, limiting those fees to the cost of the other party's attorneys' fees. Remote Solution chose to use that mechanism as a basis for essentially nullifying the attorneys' fees provision in its entirety. Having thus eliminated the very mechanism the Agreement contemplated for determining the reasonableness of the prevailing parties' fees, it cannot complain about the reasonableness of those fees.

Moreover, Contec believes that those fees are in fact reasonable. They reflect over two years of active adversarial proceedings in four forums (the AAA, Northern District of New York, Second Circuit Court of Appeals, and Korea) and include extensive briefing on numerous issues, as set forth in the previous section. Significantly, Remote Solution has not identified any specific time entries from Contec's counsel's billing statements relating to the Arbitration or other court proceedings that it contends are unreasonable and does not contend that Contec's counsel's billing rates are unreasonable for the New York market. Significantly, Contec actually paid those fees, having no assurance that it would actually be able to recover them from Remote Solution,[8] which in

---

[8] Third Supplemental Declaration of Kenneth L. Stein, dated September 7, 2005 ("Third Suppl. Stein Decl."), ¶ 2, filed concurrently herewith.

NYJD: 1591018.1

itself is evidence of their reasonableness.[9]  There is simply no basis for reducing an award of

Contec's fees as unreasonable.[10]

## II.     Contec Is Entitled To Recover Amounts Paid in Settlement

On pages 1 to 2 of RSC's Objections, Remote Solution asserts that Contec is not entitled to

recovery for amounts paid in settlement, because (1) the settlement agreement "does not provide for

reimbursement of settlement payments," and (2) the settlement payment to Philips "was not related

to any alleged infringement by Remote Solution."  Remote Solution is wrong on both counts, as

explained in Contec's Statement at pages 9-11.

---

[9] *See infra* Section III(B).



NYJD: 1591018.1

As to (1), Contec additionally notes that Remote Solution's interpretation of the Agreement would require Contec to litigate to the bitter end every infringement suit, regardless of its merits, in which Remote Solution refused to defend Contec. According to Remote Solution, Contec could settle such suits only at the cost of giving up its right to indemnification from Remote Solution. That is a truly nonsensical interpretation of the Agreement. In addition, Remote Solution has completely failed to rebut Contec's arguments that it had the right to settle Philips' and UEI's claims, after Remote Solution's failed to defend Contec against them, under controlling case law and that final judgments in the Philips and UEI cases were in fact entered.



---

[11] RSC's Objections, p. 3.



NYJD: 1591018.1

### III.    Contrary to Remote Solution's Assertion, Contec Is Entitled To An Award of Attorney's Fees In Connection with the Delaware Litigation

#### A.    Contec is Entitled to all Fees Incurred in Good Faith

Contec should be compensated for all attorneys' fees that it incurred in good faith.  Remote Solution was required to defend Contec and had it done so, there would be no issue at all regarding attorneys' fees.  It would be manifestly unfair to now deny Contec these fees in their entirety, as Remote Solution urges, because of some perceived failure to establish their reasonableness.  In short, Remote Solution should not be the beneficiary of its failure to defend Contec and be allowed to second-guess Contec's fees.

In this regard, it is well-settled that where an indemnitor is notified of a claim and fails to defend the indemnitee, the indemnitor "is conclusively bound by any reasonable good faith settlement the indemnitee may make." *Combustion Eng'g v. Imetal*, 235 F. Supp. 2d 265, 275 (S.D.N.Y. 2003); *Feuer v. Menkes Feuer, Inc.*, 187 N.Y.S.2d 116, 121 (App. Div. 1959); *Goldmark Indus., Ltd. v. Tessoriere*, 681 N.Y.S.2d 327, 328 (App. Div. 1998).  While these cases do not appear to discuss the standard for attorneys' fees incurred in defending against the claim, there is no principled reason for distinguishing between settlement amounts and attorneys' fees.  Remote Solution failed to defend Contec.  Accordingly, Remote Solution should be required to compensate Contec for all attorneys' fees that Contec incurred in good faith.

#### B.    Contec's Fees are Reasonable

Remote Solution asserts that Contec is entitled to no attorneys' fees in connection with the Philips and UEI litigations because it "has not met its burden of proving that the fees requested are reasonable."  (RSC's Objections at 4).  That is untrue.  Contec provided copies of the actual bills that it received from its attorneys in connection with the Philips and UEI litigations.  These bills

- 14 -

NYJD: 1591018.1

have been paid by Contec. (Third Suppl. Stein Decl., ¶ 2, filed concurrently herewith). That is

presumptive evidence of the reasonableness of the requested attorneys' fees. *See Wells Fargo Bank*

*Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003) (Under New

York law, attorneys' fees claimed by lessor under lease agreement were "presumptively

reasonable." Payment of fees is "solid evidence of their reasonableness in the market.") (citing

*Bleecker Charles Co. v. 350 Bleeker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230-31 (S.D.N.Y.

2002)); *see also Kallman v. Tandy Corp.*, 2001 WL 761137, at *1 (N.D. Ill. 2001) ("the best of

guarantee of reasonableness is whether the party seeking to recover its attorney's fees has actually

paid them to its lawyers.") (citing *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73

F.3d 150 (7th Cir. 1996)); *Balcor*, 73 F.3d at 153 ("[T]he best evidence of the market value of legal

services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market

value.") (emphasis in original); *Eagle v. Redmond Bldg. Corp.*, 946 S.W.2d 291, 292 (Mo. Ct. App.

1997) ("evidence that a party has paid attorney's fees constitutes *prima facie* evidence of their

reasonableness."); *Auxier v. Kraisel*, 466 A.2d 416, 420-21 (D.C. 1983) (payment of attorneys' fees

is "*prima facie* proof reasonableness."); *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58

(S.D.N.Y. 2000) ("acceptance of the rates charged is in itself substantial evidence of their

reasonableness.").[13, 14]

Remote Solution further asserts that Contec has not offered any evidence "showing that all

or any of this time is reasonable or necessary." (RSC's Objections at 7). But again, Contec

---

[13] *See also Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) ("If the bills were paid . . . this strongly implies that they meet market standards. The fees in dispute here are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself. These are bills that mhc actually paid in the ordinary course of its business.") (emphasis in original); *Taco Bell Corp. v. Cont'l Cas. Co.*, 2003 WL 1475035, at *12-13 (N.D. Ill. 2003); *Ford Motor Credit Co. v. Housing Auth. of Kansas City*, 849 S.W.2d 588, 597 (Mo. Ct. App. 1993) ("This court has held that evidence of payment of attorneys' fees and expenses is substantial evidence that the charges incurred are reasonable and necessary.") (citing *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 564 (Mo. Ct. App. 1991).

[14] Any argument that Contec ran up the tab because it knew Remote Solution would eventually pay the bills would be without merit. Contec did not know whether Remote Solution would ever live up to its indemnity obligations, as this arbitration so amply demonstrates.

- 15 -

NYJD: 1591018.1

submitted its actual bills. Having done so, it was Remote Solution's obligation then to make any RSC's Objections it may have had to their reasonableness. *Auxier v. Kraisel*, 466 A.2d at 421. Remote Solution simply cannot stand on generalized assertions that the fees are unreasonable, as it has done. If it had any particular RSC's Objections, it needed to state them. *See Gray Mfg. Co. v. Pathe Indus., Inc.*, 305 N.Y.S.2d 794, 796-97 (App. Div. 1969), *aff'd*, 312 N.Y.S.2d 200 (1970).



- 16 -



Additionally, Contec has provided information published by the National Law Journal demonstrating that the rates charged by Contec's attorney were well within the range of rates charged by New York law firms.  (Supplemental Declaration of Kenneth L. Stein, dated March 25, 2005 ("Suppl. Stein Decl."), Ex. W).

Remote Solution further asserts that Contec has "made no effort to break out tasks, explain or summarize how much time was spent on each task (*e.g.*, discovery), why several lawyers were necessary on a given task etc."  (RSC's Objections, p. 7).  But Contec is not required to breakdown its bills in that manner.

The cases cited by Remote Solution are unavailing.  (RSC's Objections, p. 7 (citing *Whitaker v. Kear*, 704 N.E.2d 317, 324 (Ohio Ct. App. 1997); *Yowell v. Ringer*, 577 N.E.2d 468,

---

[15] Chadbourne & Park was replaced by Remote Solution's current counsel prior to the time that it sent its first bill to Remote Solution. *Id.*

[16] Remote Solution's criticism of the fees paid by Contec in connection with UEI's infringement claims is equally without merit.  Again, given the complexity and expense of defending against a patent infringement claim, the amount paid by Contec was not unreasaonble.



NYJD: 1591018.1

476 (Ill. Ct. App. 1991); *Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 149 (Tex. Ct. App. 1986);

*Bruntaeger v. Zeller*, 515 A.2d 123, 128 (Vt. 1986)). Three of the four cases—*Whitaker, Yowell,*

*and Giao*—involved claims by attorneys for <u>unpaid</u> legal services. These cases held that an

attorney's submission of his unpaid bills, without more, does not establish their reasonableness.

*Whitaker*, 704 N.E.2d at 324; *Yowell*, 577 N.E.2d at 476; *Giao*, 714 S.W.2d at 149. In contrast,

Contec is requesting fees for bills that it actually paid. As to *Bruntaeger*, there was also no

evidence of payment of the bills. *Bruntaeger*, 515 A.2d at 128.

    In the end, Remote is simply trying to get out of paying the fees that it is required to pay

under the plain terms of the parties' Agreement. *Balcor*, 73 F.3d at 153 ("By protesting the

quantification of fees, Walentas is trying to weasel out of the contract yet again, for the contract

requires him to hold Balcor harmless-that is, to make it whole."). Remote Solution's continuing

arguments that Contec is not entitled to <u>any</u> attorneys' fees is without basis in law or fact.

### C.     Contec Is Not Limited To Delaware Rates

    Remote Solution asserts that Delaware rates should apply, because that is where the case

was litigated. Remote Solution is wrong. *First*, as explained above, Contec should not be second-

guessed on the attorney fees it incurred in good faith after Remote Solution failed to defend Remote

Solution in breach of Section 3(c) of the 1999 Agreement.

    *Second*, there is simply no requirement in Section 13(a) of the Agreement that a party select

counsel located in a particular jurisdiction.

    *Third*, even if this was a situation where the location of the selected counsel could be an

issue, the law squarely supports application of New York rates. In <u>patent</u> litigation, like complex

litigation generally, courts have consistently held that the reasonableness of hourly rates is

determined according to the location of the attorneys, not the location of the lawsuit. *See, e.g.,*

*Comark Communications, Inc. v. Harris, Corp.*, No. CIV. A. 95-2123, 1998 WL 150946, at *4 and

n. 5 (E.D. Pa. Mar. 30, 1998), *aff'd*, 156 F.3d 1182 (Fed. Cir. 1998) ("Parties should be entitled to

NYJD: 1591018.1

retain the most competent counsel available . . . Comark [the patentee] had a good reason to choose

non-local counsel and the court will permit it to receive attorneys 's [sic] fees at the District of

Columbia rate."); *LRC Elec., Inc. v. John Mezzalingua Assoc.*, No. 95-CV-1661 (FJS), 1998 WL

404233, at *4 (N.D.N.Y. Jul. 10, 1998), *rev'd in part, vact'd in part on other grounds*, 194 F.3d

1337 (Fed. Cir. 1999) (determining that the relevant community for determining reasonable hourly

rates was the location of Plaintiff's attorneys because Plaintiff "had good reason to hire [non-local

counsel], *inter alia*, because of the complexity of patent litigation and present trial counsel's

specialty and experience therein."); *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1195-96

(E.D. Pa. 1990) (determining reasonable rates according to the location of the attorneys, rather than

the place of the litigation because "a party should be entitled to retain the most competent counsel

available, particularly in the highly specialized area of complex patent litigation . . . ."); *Nat'l*

*Gypsum Co. v. Steel Sys. Int'l, Inc.*, CIV. No. 85-2134-FR, 1988 WL 135780, at *3 (D. Or. Dec. 13,

1988). Accordingly, New York City rates must be applied here, not Delaware rates.

Additionally, Contec had good reason to select Pennie & Edmonds to represent it in the

Philips litigation and should be fully compensated at Pennie & Edmonds' rates. The firm was one

of the oldest and best known firms in the country handling exclusively intellectual property matters

and specialized in complex patent litigations. As one court put it, "a party should be entitled to

retain the most competent counsel available, particularly in the highly specialized area of complex

patent litigation." *Howes*, 761 F. Supp. at 1196. The present situation is comparable to that in

*Howes*, where the Eastern District of Pennsylvania determined that New York City rates should

apply to fees by Fish & Neave, another New York City-based firm that specialized in intellectual

property litigation, because of the firm's longstanding expertise in such matters. *Howes*, 761 F.

Supp. at 1195-96.[18]

---

[18] Remote Solution cites *Addock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) for the proposition that
Delaware rates should apply. But that case was a not a patent case—it was an employment discrimination action. And

- 19 -

**D.    Contec is Entitled to Redact its Billing Statements without Compromising its Right to Recover Attorneys' Fees**

Remote Solution asserts that Contec is entitled to recover none of its attorney fees incurred in connection with the Philips and UEI litigations, because Contec submitted redacted bills in support of its claim for those fees. (RSC's Objections, pp. 8-11). However, as explained in Contec's Statement at p. 14, Contec has the right to redact those bills to protect disclosure of material protected by the attorney-client privilege or work product.[19] Thus, it was perfectly proper for Contec to submit redacted bills and Remote Solution's complaint is without any basis whatsoever. Remote Solution simply ignores the authority cited by Contec.

Remote Solution cites *Measom v. Greenwich and Perry Street Housing Corp.*, 752 N.Y.S.2d 194 (N.Y. Civ. 2002) for the proposition that an award of attorneys fees cannot be supported by redacted bills. In so doing, Remote Solution mischaracterizes the case — it in fact supports Contec's position, not Remote Solution's. In *Measom*, the court expressly recognized the right of a party to redact portions of time records, such as those included in the bills from Contec's attorneys, submitted in support of an application for attorneys' fees. *See id.* at 742-43 ("Here, plaintiffs and their attorneys already exercised their rights by redacting the information plaintiffs or their attorneys claim is privileged attorney-client communications or immune attorney work product."). *Measom*, in recognizing the right of a party to redact attorneys' time records, directly undercuts Remote Solution's argument that it must be able to see the redacted portions of Contec's attorneys' bills to determine whether those portions "are duplicative of other charges, relate only to other defendants, are excessive (of themselves or in connection with other charges), or if and how they shed light on the reasonableness or lack thereof of the other charges." (RSC's Objections. pp. 8-9). Precisely the

---

even *Addock* recognized that the relevant market is not always the location of the litigation. Indeed, in *Addock*, the court actually granted fees based on the out-of-town attorney's rates. *Addock*, 227 F.3d at 351.

[19] *See, e.g., Chicago Ins. Co. v. Abstract & Title Guaranty Co.*, 2004 WL 692051, at *4 (S.D. Ind. 2004); *Meduna v. Holder*, 2003 WL 124214, at *3 (Tex. App. 2003); N.D. Ill. Local Rule 54-3(d)(1) ("These [billing] records may be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine.").

- 20 -

same arguments that Remote Solution makes here can be made whenever a redacted version of such records are submitted in connection with an application for attorneys' fees, but *Measom* expressly recognizes the right of a party to submit such records.[20, 21]

     *Measom* also recognizes the appropriateness of an *in camera* review of redacted documents, as Contec had suggested, if those documents are challenged by the other party. *Id.* at 196 (stating that "were defendant seeking the redacted information, and plaintiffs or their attorneys seeking not to disclose it, the court would be authorized, if not obligated, to conduct an *in camera* review to determine which portions were privileged or immune from disclosure and which defendant was entitled to as material and necessary to its defense"). Remote Solution has not sought such a review here, apparently realizing that it would not result in any decrease in Contec's award. Indeed, as Remote Solution has done in the past, it makes only generalized objections, and does not point to specific instances where it claims that Contec's redactions are problematic. Indeed, while Remote Solution complains about Contec's redactions, the redactions are, in fact, fairly limited.

     In any event, even if the Arbitrator agrees with Remote Solution that Contec should have submitted unredacted billing records, the draconian remedy suggested by Remote Solution — that Contec be entitled to none of the attorneys' fees it incurred in connection with the Philips and UEI litigations — is completely unwarranted and grossly unfair to Contec. Contec had a good faith

---

[20] *Measom* is also distinguishable from the present case. In *Measom*, the plaintiff had submitted redacted time records at trial, but afterwards unilaterally asked the court to review *in camera* an unredacted version of the time records to determine the extent to which the redactions contain "(1) privileged attorney-client communications or attorney work product immune from disclosure, and (2) necessary description of the services performed to prove the claim for fees." *Id.* at 195-96. The court, responding to that unilateral request from plaintiff, ruled that it was not its place to make claims of privilege for plaintiff or to make their case for them. Contec has not made such a request here.

[21] Remote Solution also cites *Ideal Electronic Security Co., Inc. v. International FidelityIns. Co.*, 129 F.3d 143 (D.C. Cir. 1997) for the same proposition as *Meason* — *i.e.*, that an award of attorneys fees cannot be supported by redacted bills. *Ideal Electronic Security* is a D.C. Circuit case and, to the extent it stands for that proposition, it directly conflicts with *Meason*, a New York case, which, as explained above, expressly acknowledges the right of a party seeking fees to support its request with redacted attorney time records. It also places the D.C. Circuit in conflict with many other jurisdictions that permit the submission of redacted bills in support of an award of attorneys' fees. *See, e.g., Chicago Ins. Co. v. Abstract & Title Guaranty Co.*, 2004 WL 692051, at *4 (S.D. Ind. 2004); *Meduna v. Holder*, 2003 WL 124214, at *3 (Tex. App. 2003); *see also* N.D. Ill. Local Rule 54-3(d)(1). In addition, as explained below, if the Arbitrator decides that *Ideal Electronic Security* governs here, Contec should be given the opportunity to submit its unredacted billing statements, as was the case in *Ideal Electronic Security*. *Ideal Electronic Security*, 129 F.3d at 152 (holding that, on remand, the party seeking fees should be permitted to submit unredacted billing records).

NYJD: 1591018.1

belief, based on case law and local court rules, that it was entitled to submit redacted billing records in support of its claim for attorneys' fees, and, that doing so, would not compromise that claim. If the Arbitrator rules that that belief was incorrect, Contec should be afforded the opportunity to submit unredacted billing records or other evidence of the services described in the redacted portions of those records, just as the New York court did in *Measom*. *Id.* at 197-98 (the court "permit[ting] plaintiffs to supplement the redacted records with testimony or other evidence, if plaintiffs claim a privilege or immunity regarding the services' description in the contemporaneous records, but otherwise can support the services' reasonableness, necessity, and value" and "offer[ing] to permit plaintiffs to introduce all or parts of the redacted information subject to a confidentiality order.") (internal citations omitted); *see also Ideal Electronic Security*, 129 F.3d at 146 (remanding the case to the district court "to allow appellants an opportunity to challenge the reasonableness of IFIC's claim for fees following full disclosure of the redacted portions of the billing statements").

### E. Contrary to Remote Solution's Assertion, Contec is Entitled to Recover Attorneys' Fees Incurred Prior to the Filing of the Lawsuits and Notice Thereof

Remote Solution asserts that Contec is not entitled to recover any attorneys' fees incurred in connection with the Philips litigation prior to March 18, 2002, the date Remote Solution was notified of the filing of that lawsuit. (RSC's Objections, pp. 11-12). It contends that Section 3(c) of the Agreement only requires Remote Solution to defend "any suit or proceeding" brought against Contec "based on a claim that the Products constitute an infringement of any valid United States or foreign patent," and there is no "suit or proceeding," giving rise to that duty to defend until a lawsuit is filed in court. That however is a nonsensical interpretation of the Agreement. It would require Contec to inform any party making an infringement allegation covered by the Agreement that it must immediately file a lawsuit against Contec if it wants to pursue its claim — otherwise, Contec would have no right to indemnification from Remote Solution. That cannot be correct.

- 22 -

NYJD: 1591018.1

Page 23 is redacted
in its entirety

Remote Solution now argues that "[i]t cannot be argued with any credibility that the Manufacturing Agreement obligates Remote Solution to indemnify Contec for legal fees incurred in connection with matters not involving Products ... sold to Contec by Remote Solution." (RSC's Objections, p.13). But Remote Solution misses the point. The point is that there is great commonality between the accused units supplied by all of Contec's suppliers, including Remote Solution. Thus, just because a time entry refers to another supplier, that does not mean that that work was not also applicable to Remote Solution's products or to matters common to all suppliers.

### G.     The Arbitrator Should Not Apportion the Attorneys' Fees.

Remote Solution asserts that the Arbitrator should apportion any award of fees. (RSC's Objections, p. 13). That assertion was addressed in Contec's Statement at pages 14-15.

Significantly, Remote Solution still does not dispute the basis for Contec's argument that Remote Solution should be responsible for all of Contec's attorneys — namely, that had Remote Solution defended Contec as it was obligated to do, Contec would have incurred little or no attorneys' fees, because Contec could have relied on Remote Solution's defense, just like Remote Solution had relied upon co-defendant CMT's defenses to keep its expenses at a minimum in the ongoing Philips litigation. *See* Contec's Statement, p. 15.

Remote Solution also asserts that any right to recover of Contec's attorneys' fees should "be limited at most to a proportionate share, based on Remote Solution's percentage of overall sales of universal remote control units to Contec." (RSC's Objections, pp. 14-15). However, as Contec had noted on pages 5-6 n.17 of its Statement, there is no justification for pro-rating the attorneys' fees and expenses in the same manner as the settlement amounts. The settlement amounts account for only past damages and an infringement claim involves not only past damages but the risk of an

---

[25] Some of the disputed entries do not relate to the issue raised by Remote Solution, i.e., work related to other suppliers, and were not included in the figure. A few of the entries identified by Remote Solution could not be located in the exhibits.

NYJD: 1591018.1

injunction or royalty payments going forward. Thus, the past sales of the devices accused of infringement do not reflect the amount of overall damages and risk — both past and future —posed by an infringement suit.



## IV.     Contec is Entitled to the Amounts it Has Spent Enforcing the Indemnity Provision

Remote Solution asserts that Contec cannot recover its attorneys' fees incurred "in connection with the federal and Korean judicial proceedings to enforce its claimed right to indemnity." (RSC's Objections, p. 15). That assertion was addressed in Contec's Statement at pages 11-13.

Remote Solution argues, at pages 15-16 of its Objections, that Section 13(a) of the 1999 Agreement "was not intended to apply to attorneys' fees for actions between Contec and Remote Solution." Contec however has never asserted that it does — Contec's right to attorneys' fees in the arbitration, and related court proceedings, flow from Section 19 of the Agreement, which provides an award of attorneys' fees to the prevailing party in the arbitration. Remote Solution's arguments, and the cases it cites, are inapposite.

Remote Solution also argues that the language of Section 19 of the Agreement does not authorize an award of attorneys' fees incurred in connection with the related court proceeding in

NYJD: 1591018.1

New York and Korea. (RSC's Objections, p. 16). However, the language used in Section 19 is comparable to the language used in the agreements in the cases cited by Contec, where courts have construed the corresponding clauses to include fees incurred in related proceedings.[27] For example, in *Christian Dior*, the relevant clause provided for attorney fees to the prevailing party "in any arbitration pursuant to this Agreement." *Christian Dior*, 637 N.E.2d at 550. The court held that the arbitration panel was within its authority in awarding fees incurred in connection with a lawsuit filed by the defendant in seeking to avoid arbitration. That is precisely what Remote Solution has done here — it first improperly filed a lawsuit in Korea in order to avoid arbitration under the agreement and then sought every avenue in the New York courts to do the same. All those proceedings were plainly directed at matters relating to the arbitration. Just as plainly, the parties had agreed to and thus expected that the prevailing party in the arbitration would be compensated for the attorney fees it incurred in vindicating its rights under the Agreement. Remote Solution should not be allowed to escape that obligation for fees it caused Contec to incur in the arbitration-related proceedings in New York and Korea.

Remote Solution also asserts that Contec's fees in connection with the New York litigation, including both the district court action and appeal to the Second Circuit, should be limited to a total of "$54,273.75 ($22,358.94 for Finger & Slanina and $31,914.81 for Nolan & Heller)." (RSC's Objections, p. 17). As discussed in Section I above, the billing records of Finger & Slanina show that Mr. Finger did not bill for substantial amounts of his time. By hiring an attorney that essentially worked substantially for free, and thus unilaterally nullifying Contec's right to collect its reasonable attorneys' fees as the prevailing party, Remote Solution breached its obligation of good

---

[27] *See Christian Dior, Inc. v. Hart Schaffner & Marz*, 637 N.E.2d 546, 550 (Ill. App. Ct. 1994) (affirming arbitrators' award of attorneys' fees to prevailing party, which included costs incurred in connection with defending against a lawsuit brought in violation of the parties' agreement to arbitrate); *see also Kalai v. Gray*, 135 Cal. Rptr. 2d 449, 456 (Ct. App. 2003) ("[R]ecovery could include the fees Gray incurred in the court action, as the scope of recoverable fees is fairly broad, including all fees 'incurred by said prevailing party *in connection with* the Arbitration proceedings.'").

- 26 -

NYJD: 1591018.1

faith and fair dealing.  As a result, Contec's fees should not be limited to Remote Solution's fees, as

explained in Section I above.

**V.      Contec is Entitled to an Award Of Attorneys' Fees Incurred
         in Connection with the Confirmation of the Arbitrator's Earlier Award**

Remote Solution asserts that Contec should not be entitled to an award of attorneys' fees

relating to its confirmation of the Arbitrator's earlier award, because the district court had awarded

Contec those fees and then vacated that award "due to Contec's failure to abide by the Court's

instructions," namely, by inadvertently filing its verified statement for fees after the deadline set by

the court.  (RSC's Objections, p. 18).  Contec's right to those fees in this Arbitration are however

based on an entirely different ground than the one applied by the district court — in particular, here,

they are recoverable by Contec as the prevailing party in the arbitration under Section 19 of the

Agreement, whereas in the district court they were recoverable as a sanction against Remote

Solution's misconduct.  Since the district court vacated the award, there is absolutely no reason why

Contec should not still be able to recover those fees on the separate and distinct grounds that apply

here.

Remote Solution asserts that "such awards are generally given by the Court in the context of

confirmation, not by the Arbitrator." (RSC's Objections, p. 18).  That is simply an attempt to

whitewash Remote Solution's misconduct.  Courts only very rarely award attorneys' fees against a

party for its improper behavior.

Remote Solution also notes that the Court characterized Contec's fee application, which was

about $30,000, as "grossly excessive."  Contec believes that that characterization was unfair and

unjustified given the amount of work covered by the fee application.  *See* Contec Corporation's

Statement of Damages, pp. 17-18.  In any event, the reasonableness of those fees should not even be

an issue in this arbitration, because Section 19 of the Agreement contained a provision intended to

eliminate disputes over the reasonable of such fees — namely, by limiting the award of fees to the

- 27 -

NYJD: 1591018.1

prevailing party to the actual cost of the losing party's fees. It is only because Remote Solution

breached its duty of good faith and fair dealing, by attempting to unilaterally nullify that provision,

that reasonableness of those fees are at issue at all. *See supra* Section I(A).

Remote Solution also asserts that "any money paid by Contec to Korean counsel should

have been raised before the District Court, and is not properly considerable [sic] now." (RSC's

Objections, p. 18 n.18.). That is nonsense. The fees at issue in the district court related to Contec's

preparation of the application to confirm the arbitration award, order to show cause, and related

briefing, as well as attendance at a hearing in Albany in connection with the application, and

preparation of the verified application for attorneys' fees. Korean counsel was not involved in any

of those activities.

### VI. Contec's Award Should be Reduced Only by Contec's Set-off, Not by Additional Amounts for Goods Never Delivered to Contec

Remote Solution asserts that any award should be reduced, not only by the $620,038 that

Contec held as a setoff against amounts owed it under its indemnification claim, but for an

additional $72,474.27 <u>for goods that Remote Solution never delivered to Contec</u>. (RSC's

Objections, pp. 19-20). Remote Solution's supposed legal basis for that claim is that "where one

party breaches the contract, the other party is excused from further performance and can seek

damages for the breach," and that since "Contec had breached on its obligation to pay over

$620,000, Remote Solution was entitled to suspend further performance, and is entitled to damages

for the entire order." (*Id.*). But it was Remote Solution that breached the Agreement by failing to

indemnify Contec under Section 3(c). Under Remote Solution's own logic then, Contec was

entitled to suspend further performance and seek damages for the breach. Remote Solution has

provided no basis, and cited no authority, entitling it, under these circumstances, to recovery for

goods it never delivered to Contec.

- 28 -

**VII.    Contec's Award Should Not be Reduced by Amounts
Contec Received from Others, Since Contec is Not
<u>Seeking Recovery of those Amounts from Remote Solution</u>**



**VIII.    <u>Contec is Entitled to a Permanent Injunction</u>**

Remote Solution asserts that "Contec is not entitled to a permanent injunction." (RSC's

Objections, pp. 21-22). It is not clear though whether Remote Solution is disputing that it should be

(1) permanently enjoined from prosecuting or otherwise permitting the Korean lawsuit to go

forward, or, as Contec also requested, (2) permanently enjoined from bringing any other action or

proceeding of any kind in Korea or elsewhere that relates to any dispute arising out of or relating to

the 1999 Agreement, or (3) both.

As to (1), the Arbitrator clearly has the authority, under the F.A.A. and the New York

Convention, to permanently enjoin Remote Solution from proceeding with its Korean lawsuit, as

amply demonstrated by the cases cited on p. 19 of Contec's (1) Response To Remote Solution's

NYJD: 1591018.1

Memorandum On The Issue Of Whether Contec Corporation May Enforce The Manufacturing Agreement and (2) Statement Regarding Contec's Request That Remote Solution Stay Or Withdraw Its Pending Korean Action, filed October 24, 2003, pp. 19-20.  Contec further notes that the need for a permanent injunction is urgent.  Just this past Monday, Contec's U.S. counsel was advised by Korean counsel that the Korean court is once again inquiring into the status of the arbitration. There is no excuse at this point for Remote Solution's failure to have the Korean lawsuit dismissed.

As to (2), Contec is only requesting that the Arbitrator enjoin Remote Solution from doing what it is expressly forbidden from doing under Section 19 of the Agreement.  Given Remote Solution's past attempts to circumvent the Agreement, Contec believes that such an award is appropriate.  Contec also believes that such an award is authorized under the case law referred to above.[28, 29]

Respectfully submitted,

Dated: September 7, 2005          By:    _____
                                         Kenneth L. Stein
                                         Richard H. An
                                         JONES DAY
                                         226 East 41st Street
                                         New York, N.Y. 10017
                                         (212) 790-9090

                                         Attorneys for Claimant
                                         Contec Corporation

---

[28] The case cited by Remote Solution, *Food Fair Stores, Inc. v. Square Deal Market Co., Inc.*, 187 F.2d 219 (D.C. Cir. 1951), has no bearing on the Arbitrator's authority to award a permanent injunction — it did not relate to arbitrations or rulings under the F.A.A. or New York Convention,

[29] In a final irony, Remote Solution's attempt to improperly nullify the attorneys' fees provision of Section 19 and its meritless objections to Contec's fee request have once again forced Contec to expend considerable time and resources responding to those arguments in this brief.

NYJD: 1591018.1