## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

REMOTE SOLUTION CO., LTD.,     )
                             )
           Petitioner,    )
                             )
       v.             )    Civil Action No. 06-004 KAJ
                             )
FGH LIQUIDATING CORP. f/k/a    )    REDACTED VERSION DI 10
CONTEC CORPORATION,       )
                             )
          Respondent.   )

## RESPONDENT'S OPPOSITION TO REMOTE SOLUTION'S MOTION TO VACATE OR MODIFY ARBITRATION AND <u>APPLICATION TO CONFIRM ARBITRATION AWARD</u>

Paul E. Crawford (DE Bar #0493)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
PO Box 2207
Wilmington, DE 19899
(302) 888-6262

Kenneth L. Stein
Richard. H. An
JENNER & BLOCK LLP
919 Third Avenue
New York, N.Y. 10022
(212) 891-1600

Attorneys for Respondent
Contec Corporation

## **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ...............................1

SUMMARY OF ARGUMENT ................................................................................................2

STATEMENT OF FACTS .......................................................................................................5

ARGUMENT ...........................................................................................................................9

I. Remote Solution's Arguments Do Not Come Close to Meeting the High
Standard Required for Modifying or Vacating an Arbitration Award......................9

    A. Legal Standard ................................................................................................10

       1. "Manifest Disregard of the Law" Standard ..........................................10

       2. Standard for Modifying or Vacating an Award due to the Arbitrator's Alleged
Failure to Provide Findings of Fact and Reasons for His Decision.....................12

    B. The Arbitrator Did Not "Manifestly Disregard" The Law In
Rejecting Remote Solution's Argument That The MPA's
Patent Infringement Indemnification Provision Excludes
Infringement Claims Arising From Product Specifications
Provided By Contec ..........................................................................................13

    C. The Arbitrator Did Not Exceed His Authority In Awarding Contec
a Share of its Settlement Payments to Philips and UEI ............................................19

    D. The Arbitrator Did Not Manifestly Disregard the Law and the
Terms of the MPA by Awarding Contec Attorneys' Fees
in Connection with Federal Court Litigation Relating to the Arbitration..................21

    E. The Arbitrator Did Not Exceed His Authority By Awarding Contec
Attorneys' Fees in Excess of the Fees Incurred by Remote Solution.........................23

    F. The Arbitrator Did Not Err By Awarding Contec Attorneys'
Fees Incurred in Obtaining Court Confirmation of an Interim Award .....................26

    G. The Arbitrator Did Not Fail to Make Findings of
Fact and to Provide Reasons for His Decision on Liability........................................28

II. The Court Should Award Contec its Attorneys' Fees and Costs Incurred in
Responding to Remote Solution's Motion.........................................................................30

III. Application to Confirm Arbitration Award and Request for Pre-Judgment and
Post-Judgment Interest..................................................................................................32

CONCLUSION.....................................................................................................................34

# TABLE OF AUTHORITIES

## CASES

*Anchor Motor Freight v. General Teamsters Local 326*,
838 F. Supp. 868 (D. Del. 1993)..............................................................12, 21, 31

*Bear, Sterns Funding, Inc. v. Interface Group-Nevada, Inc.*,
361 F. Supp. 2d 283 (S.D.N.Y. 2005)....................................................................23

*Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234 (1984) ......................................24, 25

*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*,
888 F.2d 260 (2d Cir. 1989).....................................................................................34

*Clinchfield Coal Co. v. Dist. 28, United Mine Workers*,
720 F.2d 1365 (4th Cir. 1983) ................................................................................16

*Consolidated Edison, Inc. v. Northeast Utilities*, 426 F.3d 524 (2d Cir. 2005)............26

*Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977 (1995)................................................23

*Emigrant Industrial Sav. Bank v. One Hundred Eight West Forty Ninth Street Corp.*,
8 N.Y.S.2d 354 (App. Div. 1938)..........................................................................26

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) ..............................................32

*George A. Hormel & Co. v. United Food & Commercial Workers, Local 9*,
879 F.2d 347 (8th Cir. 1989) ..................................................................................16

*Glazer v. AA Premier Realty, Ltd.*, 294 F. Supp. 2d 296 (E.D.N.Y. 2003) ...................11

*Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000)..........................................12, 13, 29, 30

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3rd Cir. 2005) .................................21

*Jardine Matheson & Co., Inc. v. Saita Shipping, Ltd.*,
712 F. Supp. 423 (S.D.N.Y. 1989) .........................................................................31

*Mansbach v. Prescott, Ball and Turben*, 598 F.2d 1017 (6th Cir. 1979) ......................28

*Mark Patterson, Inc. v. Bowie*, 654 N.Y.S.2d 769 (App. Div. 1997)............................24

*McCown v. Sears, Roebuck and Co.*, 908 F.2d 1099 (2d Cir. 1990).............................27

*Merrill Lynch, Pierce, Fenner & Smith v. Bobker,*
808 F.2d 930 (2d Cir. 1986)..............................................................................10, 21, 25

*Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers, Local 792,*
89 F.3d 514 (8th Cir. 1996) ...........................................................................................12

*Moran v. Arcano,*
No. 89 Civ. 6717, 1990 WL 113121 (S.D.N.Y. July 27, 1990) (Ex. 7 hereto) .............33

*New Elliott Corp. v. Man Gotehoffnungshutte, AG,*
969 F. Supp. 13 (S.D.N.Y. 1997) .............................................................................12, 30

*New York City District Council of Carpenters Pension Fund v. E. Millenium Constr.,*
No. 03 civ. 5122, 2003 WL 22773355 (S.D.N.Y. Nov, 21, 2003) (Ex. 2 hereto) ...................11, 33

*Northrop Corp. v. Trian Int'l Marketing,* 842 F.2d 1154 (9th Cir. 1988) ......................33

*Park-Ohio Indus., Inc. v. Tucker Induction Sys., Ltd.,*
No. Civ. A. 82-2828, 1988 WL 1045372 (E.D. Mich. Mar. 7, 1988) (Ex. 5 hereto) ...................19

*P.M.I. Trading Ltd. v. Farstad Oil, Inc.,* No. 00 Civ. 7120 (RLC),
2001 WL 38282 (S.D.N.Y. 2001 Jan. 16, 2001) (Ex. 1 hereto) ......................... 10, 31-34

*Radio and Television Broadcast Engineers Union, Local 1212 v. WPIX, Inc.,*
716 F. Supp. 777 (S.D.N.Y. 1989) .......................................................................11, 12, 25

*Reid Beverage Distributors, Inc. v. Pepsi-Cola Bottling Co. of N.Y.,*
No. 86 Civ. 6371, 1987 WL 11690 (S.D.N.Y. May 28, 1987) (Ex. 4 hereto)........................13, 16

*Rostad and Rostad Corp v. Inv. Mgmt & Res., Inc.,* 923 F.2d 694 (9th Cir. 1990)......................31

*Saint Mary Home, Inc. v. Service Employees International Union, District 1199,*
116 F.3d 41 (2d Cir. 1997) .........................................................................................11, 15

*Sarhank Group v. Oracle Corp.,*
No. 01 Civ. 1285, 2004 WL 324881 (S.D.N.Y. 2004 Feb. 19, 2004) (Ex. 6 hereto) ...................33

*The Shaw Group, Inc. v. Triplefine Int'l Corp.,*
No. 01 Civ. 4273, 2003 WL 22077332 (S.D.N.Y. Sept. 8, 2003) (Ex. 3 hereto)........................12

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,*
294 F.3d 383 (2d Cir. 2002)...........................................................................................26

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,*
484 U.S. 29 (1987)..............................................................................11, 12, 15, 23, 27

*United Steel Workers of America v. Enter. Wheel and Car Corp.*,
363 U.S. 593 (1960)...............................................................................................11

*W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992) ...................................30

*Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*,
737 F.2d 150 (2d Cir. 1984)...................................................................................32

<u>STATUTES</u>

28 U.S.C. § 1961...............................................................................................33, 34

<u>MISCELLANEOUS</u>

UCC Section 2-312(3) .........................................................................................14, 29
N.Y. UCC 1-203 ...............................................................................................23

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

The present proceeding relates to the arbitration award issued by the Arbitrator in *Contec Corporation v. Remote Solution Co. Ltd.*, AAA No. 50 T 133 00325 03.

On July 11, 2003, Contec Corporation ("Contec")[1] filed a demand for arbitration against Remote Solution Co., Ltd. ("Remote Solution") with the American Arbitration Association. The demand claimed that Remote Solution (1) breached paragraph 3(c) of the parties' February 16, 1999 Manufacturing and Purchase Agreement (the "MPA") by failing to defend Contec and pay its damages and costs, including settlement costs and royalties, incurred in connection with patent infringement claims brought by Universal Electronics, Inc. ("UEI"); (2) breached paragraph 3(c) of the MPA by failing to defend Contec and pay its damages and costs, including settlement costs and royalties, incurred in connection with patent infringement claims brought by Philips Electronics North America Corporation and U.S. Philips Corporations (collectively, "Philips"); (3) breached the arbitration clause of the MPA (paragraph 19) by initiating an action in Korea for payment for remote control units shipped to Contec under the MPA; and (4) breached the arbitration clause of the MPA by having its subsidiary Hango Remote Solution, Inc. file a cross-claim against Contec in *Philips Electronics North America Corp. v. Contec Corp.*, Civil Action No. 02-123-KAJ ("the *Phillips* litigation").

On July 26, 2005, the Arbitrator issued an interim ruling on the issue of liability. On December 26, 2005, the Arbitrator issued a final ruling on the remaining issue of damages. In that ruling, the Arbitrator also confirmed his earlier ruling on liability.

On February 15, 2006, Remote Solution filed a motion in this Court to vacate or modify the Arbitrator's final ruling. This is Contec's opposition to that motion and Contec's application

---

[1] Contec Corporation subsequently changed its name to FGH Liquidating Corp. For ease of reference, we will continue to refer to Respondent as Contec.

1

to confirm the Arbitrator's final award and request for pre-judgment and post-judgment interest on the amount due Contec from Remote Solution under that award.

## SUMMARY OF ARGUMENT

1.      The judicial review of arbitration awards is extremely limited—courts, including the U.S. Supreme Court, have consistently held that as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.  Remote Solution's arguments do not come close to meeting this high standard for modifying or vacating such an award.

2.      Contrary to Remote Solution's assertion, the Arbitrator did not "manifestly disregard" the law in rejecting Remote Solution's argument that the MPA's patent infringement indemnification provision excludes infringement claims arising from product specifications provided by Contec.  Remote Solution's argument was premised on the theory that Contec was negligent in providing infringing specifications to Remote Solution and that it therefore could not claim indemnification for infringement claims arising from those specifications.  No court has ever applied Remote Solution's theory to a patent infringement indemnification claim.  The Arbitrator did not manifestly disregard the law in applying the plain terms of the MPA, which provides for indemnification by Remote Solution of Contec irrespective of who provided the specifications, and the Uniform Commercial Code, which also authorizes Contec's indemnification claims.

3.      Contrary to Remote Solution's assertion, the Arbitrator did not exceed his authority in awarding Contec a share of its settlement payments to Philips and UEI.  Remote

2

**REDACTED**

4.    Contrary to Remote Solution's assertion, the Arbitrator did not manifestly disregard the law and the terms of the MPA by awarding Contec its attorneys' fees in connection with federal court litigation relating to the arbitration. Remote Solution had argued that such fees are not recoverable under the indemnification provision of the MPA (Section 13) unless the parties' intent to make them recoverable is unmistakably clear. Contec had argued that it was seeking its attorneys' fees under the arbitration provision (Section 19), which provides for an award of attorneys' fees to the prevailing party, not the indemnification provision. The Arbitrator concluded that the fees and expenses incurred in federal court proceedings in which Remote Solution attempted to derail the arbitration were properly considered to be incurred in the conduct of the arbitration under Section 19. In so doing, the Arbitrator relied on his construction of Section 19 and did not manifestly disregard the law or the terms of the MPA.

5.    Contrary to Remote Solution's assertion, the Arbitrator did not exceed his authority by awarding Contec attorneys' fees in excess of the fees incurred by Remote Solution.

Remote Solution had argued that, under Section 19 of the MPA, Contec could not be awarded attorneys' fees in excess of the fees incurred by Remote Solution. Contec had argued that Section 19 was clearly intended to compensate the prevailing party, here Contec, for its reasonable attorneys' fees, and the ridiculously low amount of fees charged by Remote Solution's attorney and the fact that its attorneys' billing records revealed a substantial number of instances in which its attorney billed little or no time for numerous litigation tasks evidenced a breach of Remote Solution's duty of good faith and fair dealing. The Arbitrator did not exceed his authority in agreeing with Contec's argument that Remote Solution had breached its duty of good faith and fair dealing and that, as a result, Remote Solution could not properly invoke Section 19's limitation on the recovery of attorneys' fees.

6.    Contrary to Remote Solution's argument, the Arbitrator did not err by awarding Contec attorneys' fees incurred in obtaining court confirmation of an earlier interim award. Remote Solution's argument fails to invoke any recognized basis for modifying or vacating an arbitration award. Moreover, those fees were properly awarded under Section 19 of the MPA.

7.    Contrary to Remote Solution's argument, the Arbitrator did not fail to make findings of fact or fail to provide reasons for his decision on liability. To the contrary, the Arbitrator's July 26, 2005 letter, which sets forth the Arbitrator's findings of fact and reasons for his decision on liability, plainly satisfies the requirements for the form of the award set forth in Section 19 of the MPA.

8.    The Court should award Contec its attorneys' fees and costs incurred in responding to Remote Solution's motion. Remote Solution's motion does not come close to justifying the relief it seeks in view of the extremely limited standard of review given to arbitration awards. Courts have routinely awarded attorneys' fees under their inherent power in

such circumstances.  In addition, an award of attorneys' fees is also warranted under Section 19 of the MPA.

      9.    The Court should confirm the Arbitration Award and grant Contec's request for pre-judgment and post-judgment interest.

## STATEMENT OF FACTS

      Contec filed its demand for arbitration against Remote Solution on July 11, 2003.  The primary issues were (1) whether Remote Solution breached the indemnification provisions of the MPA by failing to defend Contec against patent infringement claims brought by Philips and UEI relating to products Remote Solution manufactured and sold to Contec under the MPA, and (2) whether Remote Solution breached the arbitration provision of the MPA by bringing an action in Korea for the payment for goods manufactured by Remote Solution and sold to Contec under the MPA, which Contec was withholding as a set-off against its indemnification claims.

      The patent infringement indemnification claims were straightforward.  Section 3(c) of the MPA required Remote Solution to defend Contec against "any suit or proceeding" based on a claim the "the Products" manufactured by Remote Solution and sold to Contec under the MPA "constitute an infringement" of a patent.  (RSC's Ex. E, Section 3(c)).[2]  Section 1(a) defines "Products" as the "RCU's [remote control units] designed and/or manufactured and sold by Seller [Remote Solution] to Purchaser [Contec] pursuant to this Agreement."  (*Id.*, Section 1(a)). Section 1(a) additionally specifies that Remote Solution was to design those products "in accordance with such specifications" provided by Contec.  (*Id.*).[3]  Remote Solution manufactured and sold to Contec, pursuant to the MPA, remote control units that Philips and

---

[2] "RSC Ex." referenced herein are those  contained in Remote Solution's Appendix (D.I. 9) filed with its Opening Brief (D.I. 8).
[3] All emphasis added, unless otherwise noted.

UEI claimed infringed their respective patents.  Contec was accordingly entitled, under Section

3(c), to indemnification from Remote Solution against those claims.

In addition, on November 22, 2000, Contec notified Remote Solution of Philips' and

UEI's infringement claims.  (RSC's Ex. M, p. 12, enumerated para. 22).  Remote Solution failed

to defend Contec against those claims after it was notified of them.  (*See* RSC's Ex. M, p. 21,

enumerated para. 50; RSC's Ex. I, p. 3; RSC's Ex. N, p. 9).  As a result, under Section 13(a) of

the MPA, Contec was entitled to undertake "the defense, compromise or settlement" of those

claims at Remote Solution's expense.  (RSC's Ex. E, Section 13(a)).

The issue of whether Remote Solution should be enjoined from pursuing its Korean

lawsuit was also straightforward.  That action related to the payment of goods manufactured by

Remote Solution and sold to Contec under the MPA.  (RSC's Ex. A, p. 3, enumerated para. 23;

RSC's Ex. B, p. 18).  Paragraph 19 of the MPA required all disputes arising under the MPA to be

settled by arbitration in New York.  (RSC's Ex. E, Section 19).  It was therefore improper for

Remote Solution to file its lawsuit in Korea.

Despite the straightforward nature of the issues in dispute, Remote Solution has managed

to make the arbitration as drawn out and expensive for Contec as possible.  Remote Solution

repeatedly advanced arguments lacking any support in the facts or law and pursued purely

procedural issues that were unlikely to have any bearing whatsoever on Remote Solution's

ultimate liability to Contec.  For example, Remote Solution pursued a no-holds barred approach

to the issue of whether a court or the arbitrator must decide whether the MPA was enforceable by

Contec Corporation, since the MPA had been signed by Contec Corporation's predecessor-in-

interest, Contec L.P., not Contec Corporation.  Remote Solution took this issue, unsuccessfully,

first to the Arbitrator, then to the District Court for the Northern District of New York, and

ultimately to the Second Circuit. It did so despite the overwhelming evidence that the

continuous business dealings between Remote Solution and Contec Corporation were expressly

made subject to the MPA. (*See* RSC's Ex. B, Arbitrator's Award Re Claimant's Standing, dated

December 1, 2003, pp. 13-19). In fact, at the pre-argument conference before the Second

Circuit, the staff counsel for the Second Circuit, who conducted the conference, spent at least

fifteen minutes chiding Remote Solution's counsel for wasting everyone's time for precisely that

reason.

As a result of Remote Solution's tactics, the arbitration, and related district court and

appellate proceedings, have been extremely protracted. Those proceedings have included, in

roughly chronological order, the following matters:

1.  The filing of a New York district court action by Contec to compel Remote
    Solution to participate in the arbitration and to enjoin Remote Solution from
    pursuing its Korean lawsuit against Contec.

2.  In the district court, briefing on Remote Solution's motion to stay the arbitration
    proceedings and Contec's motion to compel arbitration and enjoin Remote
    Solution from pursuing its Korean lawsuit.

3.  In the district court, briefing on Remote Solution's motion to amend its answer.

4.  In the arbitration, letter briefing on Remote Solution's request to stay the
    arbitration pending the outcome of the district court action.

5.  In the district court, briefing on Remote Solution's motion for a preliminary
    injunction staying arbitration (based on different grounds than Remote Solution's
    earlier motion seeking similar relief).

6.  In the arbitration, briefing on the issue, raised by Remote Solution, regarding
    whether the arbitrator has the authority to decide whether Contec can enforce the
    MPA against Remote Solution or whether a court must decide that issue.

7.  In the arbitration, Remote Solution's request for reconsideration of the
    Arbitrator's October 12, 2003 letter, ruling that he had the authority to decide
    whether Contec can enforce the MPA.

8.  In the arbitration, briefing on the issue, raised by Remote Solution, regarding whether Contec can enforce the MPA against Remote Solution, including a request by Contec, which Remote Solution contested, for a surreply to address issues first raised in Remote Solution's reply.

9.  In the district court, briefing on Remote Solution's motion for an injunction staying the arbitration pending appeal.

10. In the district court, briefing on Contec's application to confirm the Arbitrator's award enjoining Remote Solution from pursuing its Korean lawsuit pending the outcome of the arbitration and for a temporary restraining order, necessitated by Remote Solution's failure to take any action whatsoever to stop the Korean lawsuit from the proceeding.

11. In the Second Circuit Court of Appeals, briefing on Remote Solution's motion for a stay pending appeal.

12. In the court of appeals, preparation and filing of appeal briefs and a joint appendix.

13. In the court of appeals, preparation for and attendance at oral argument.

14. In the arbitration, briefing on Contec's statement regarding its bases for relief.

15. In the arbitration, submission of a joint statement regarding Contec's entitlement to indemnification from Remote Solution.

16. In the arbitration, briefing on the amount of damages due Contec.

17. In the arbitration, briefing regarding Remote Solution's objection to Contec's designation of certain evidence as attorneys' eyes only.

In many instances, the briefing on the various motions included not only opening and opposition briefs, but reply and surreply briefs as well. In addition, the motions were supported by numerous declarations and extensive exhibits. Remote Solution has lost on every single substantive issue it has raised in the arbitration, the District Court, and the Court of Appeals.

On July 26, 2005, the Arbitrator issued an interim ruling on the issue of liability. On December 26, 2005, the Arbitrator issued his final award on the remaining issue of damages. That ruling also confirmed the Arbitrator's earlier ruling on liability. Both rulings followed

extensive briefing by the parties, including numerous exhibits.  In connection with the parties'

briefing on the issue of liability, the parties submitted a Joint Statement that contained a lengthy

list of undisputed facts. (RSC's Ex. M, pp. 1-22).


## ARGUMENT

**I.    Remote Solution's Arguments Do Not Come Close to Meeting the High Standard Required for Modifying or Vacating an Arbitration Award.**

Remote Solution argues that the Arbitration Award should be vacated or modified,

because, according to it, the arbitrator (1) failed to make findings of fact and provide reasons for

his decision on liability in the form specified in Section 19 of the MPA; (2) "manifestly

disregarded" the law "[i]n concluding that the language of the indemnification provision of the

[MPA] permits indemnification of Contec for patent infringement when Contec was the cause of

[the] infringement," (3) "exceeded his authority" by "disregarding" language in the MPA that

"permits reimbursement only of payments awarded by final judgment" and "disregarding"

language in the settlement agreement between Contec and Philips that "states that the payment to

Philips represented amounts arising exclusively from infringement by another supplier," (4)

"manifestly disregarded" the law by "holding that the [MPA] authorized reimbursement of

Contec's legal fees and expenses incurred in the New York Action," and (5) "exceeded his

authority" and "disregarded" the law by applying the implied covenant of good faith and fair

dealing in "awarding Contec attorneys' fees in excess of the amounts incurred by Remote

Solution, "superced[ing]" language in the MPA that limited the award of attorneys' fees to the

actual cost of the other party's attorneys' fees.  Each and every one of Remote Solution's

arguments is without any merit whatsoever.

While Remote Solution asserts that the Arbitrator acted in "manifest disregard of the law" and "exceeded his authority," Remote Solution completely ignores the legal standards that apply to those terms and, in particular, ignores the fact that judicial review of arbitral awards is extremely limited and rarely results in a modification or vacation of the award. The points raised by Remote Solution do not come close to establishing that this should be one of those rare cases in which an arbitral award is modified or vacated.

### A.     Legal Standard

#### 1.     "Manifest Disregard of the Law" Standard

The standard for modifying or vacating an arbitration award due to an arbitrator's alleged "manifest disregard of the law" is exceedingly difficult to meet. As the Second Circuit has held:[4]

> ["manifest disregard of the law"] clearly means more than an error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (internal citations omitted); *see also P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at *2 (S.D.N.Y. 2001 Jan. 16, 2001) (Ex. 1 hereto). The Second Circuit has further stated that judicial review under the "manifest disregard" standard is extremely limited:

> To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial review under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

*Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d at 933-34.[5]

---

[4] The MPA here is governed by New York law. (RSC's Ex. E, Section 25).

Furthermore, as the U.S. Supreme Court has held, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Even if a court is convinced that the arbitrator "misread the contract," misapplied the law, or incorrectly determined the remedies for contract violations, the court should not reject the arbitrator's award. *See id.* "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (the Supreme Court refusing to vacate an arbitration award where "[n]o dishonesty is alleged, only improvident, even silly, factfinding is claimed," stating that "[t]his is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."); *see also United Steel Workers of America v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 598 (1960) (the Supreme Court reversing a modification of an arbitration award by the Fourth Circuit, stating that "[t]he Court of Appeals' opinion refusing to enforce the reinstatement and partial back pay portions of the award was not based upon any finding that the arbitrator did not premise his award on his construction of the contract. It merely disagreed with the arbitrator's construction of it.").[6] As

---

[5] *See also The New York City District Council of Carpenters Pension Fund v. E. Millenium Constr.*, No. 03 civ. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (Ex. 2 hereto) ("the showing to avoid summary confirmation is high"); *Glazer v. AA Premier Realty, Ltd.*, 294 F. Supp. 2d 296, 300 (E.D.N.Y. 2003) ("The party moving to vacate an arbitration award has the burden of proof and this burden is a heavy one," the district court noting that Second Circuit has been clear that application of the 'manifest disregard' doctrine is 'severely limited'") (internal quotation marks omitted).

[6] *See also Saint Mary Home, Inc. v. Service Employees International Union, District 1199*, 116 F.3d 41, 44 (2d Cir. 1997) ("The court may not substitute its view for that of the arbitrator nor may it even review the award for clear error. When an arbitrator explains his conclusions in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.") (internal citations and quotation marks omitted)). *Radio and Television Broadcast Engineers Union, Local 1212 v. WPIX, Inc.*, 716 F. Supp. 777, 780 (S.D.N.Y. 1989) ("The courts are not authorized to review the merits of an award even where the parties allege that the award rests on errors of fact or misinterpretations of the contract.... As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court can not vacate an award because it disagrees with the factual

the Supreme Court further stated, "[i]f the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." *United Paperworkers*, 484 U.S. at 38.

The burden of proof rests squarely on the party attempting to vacate the arbitration award. *See Radio and Television Broadcast Engineers Union, Local 1212 v. WPIX, Inc.*, 716 F. Supp. 777, 780 (S.D.N.Y. 1989).

> **2.    Standard for Modifying or Vacating an Award due to the Arbitrator's Alleged Failure to Provide Findings of Fact and Reasons for His Decision.**

The arbitration clause in the MPA provides that "[t]he award of the panel shall be accompanied by <u>findings of fact and a statement of reasons for the decision</u>." (P's Ex. F, Section 19). The underlined phrase is not a standard legal term, unlike, for example, the term "findings of fact and conclusions of law." *See, e.g., Green v. Ameritech Corp.*, 200 F.3d 967, 975 (6th Cir. 2000). Under the latter term, however, "the touchstone is simply whether enough facts are found and enough legal principles stated so that a reviewing tribunal can ascertain the reasons for the ultimate determination." *New Elliott Corp. v. Man Gotehoffnungshutte, AG*, 969 F. Supp. 13, 15 (S.D.N.Y. 1997). Certainly, no more is required by the phrase used in the MPA. *See Green*, 200 F.3d 975-76.

If the parties to an arbitration agreement wish a particular level of detail in an arbitral opinion, they are required to set forth in the agreement the required level of specificity. *See*

---

findings or contract interpretations."); *Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers, Local 792*, 89 F.3d 514, 517 (8th Cir. 1996) (Eighth Circuit stating that "we must enforce the arbitrator's award, even if we think he has committed serious error, as long as he is arguably construing or applying the Agreement and acting within the scope of his authority."); *Anchor Motor Freight v. General Teamsters Local 326*, 838 F. Supp. 868, 872 (D. Del. 1993) ("a court may not vacate an award merely because it views the merits differently or because it finds that the award was based on an error of law"); *The Shaw Group, Inc. v. Triplefine Int'l Corp.*, No. 01 Civ. 4273, 2003 WL 22077332, at *3 (S.D.N.Y. Sept. 8, 2003) (Ex. 3 hereto) ("the mere fact that Stone & Webster disagrees with the arbitrator's interpretation of the contract terms and the evidence does not give rise to a finding that the arbitrator manifestly disregarded the law").

*Green*, 200 F.3d at 976 (The court stating that, "[i]f the parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required," and that, "the use of familiar legal terms would serve to ensure that reviewing courts have a standard to guide their analysis."). In *Green*, for example, the Sixth Circuit held that a "minimal" arbitral opinion was sufficient to satisfy an arbitration provision, requiring that the award "be accompanied by an opinion which explains the arbitrator's decision with respect to each theory advanced by each Plaintiff ...." *Green*, 200 F.3d at 970, 976; *see also Reid Beverage Distributors, Inc. v. Pepsi-Cola Bottling Co. of N.Y.*, No. 86 Civ. 6371, 1987 WL 11690, at *4 (S.D.N.Y. May 28, 1987) (Ex. 4 hereto) (noting that "[t]he Second Circuit has stated that an arbitration award will not be vacated when the arbitrator explains his decision in terms that offer even a barely colorable justification for the outcome reached. Moreover, an arbitrator's failure to render detailed findings of fact and conclusions of law does not render the award ambiguous or establish grounds to vacate the award. In short, an award may be vacated only if the arbitrator's error amounts to 'irrationality.'") (internal citations and quotation marks omitted).

**B.    The Arbitrator Did Not "Manifestly Disregard" The Law In Rejecting Remote Solution's Argument That The MPA's Patent Infringement Indemnification Provision Excludes Infringement Claims Arising From Product Specifications Provided By Contec.**

Remote Solution argues that the arbitrator "violated public policy and manifestly disregard (sic) applicable New York law in determining that the [MPA] granted indemnification arising from Contec's own act in causing the infringement by providing infringing specifications to Remote Solution." (RSC's Brief, p. 14, heading II). Remote Solution is wrong—the Arbitrator does not "violate public policy" or "manifestly disregard the law" by rejecting Remote Solution's legal arguments, in favor of Contec's. That is all he has done here.

13

In particular, Contec had argued that (1) the MPA expressly provided that Contec would be providing specifications for the products Remote Solution would be manufacturing under the MPA, and (2) courts and the U.C.C. have recognized the power of parties to enter into precisely the type of indemnification agreements at issue here—*i.e.*, one requiring a manufacturer to indemnify a buyer against all patent infringement claims, including claims directed at features required by a buyer's specifications. (RSC's Ex. M, pp. 24-26). The Arbitrator accepted Contec's arguments, holding that the MPA is "clear and unambiguous" and that "Section 3(c) [the applicable indemnification provision of the MPA] overrides and is not subject to the 'buyer's specifications' provision of UCC Section 2-312(3)."

Contrary to Remote Solution's assertion, Contec had in fact addressed the cases cited by Remote Solution. (*See* RSC's Brief, p. 18, 1st full para.). In particular, Contec distinguished those cases, arguing that Remote Solution's negligence theory simply had no application to a patent infringement claim—<u>no court had ever applied it to such a claim or held a provision for indemnification against patent infringement unenforceable due to an indemnitee's alleged negligence</u>. (RSC's Ex. M, pp. 31-32). Contec also explained that even if the theory were extended to a patent infringement claim, <u>which no court has ever done</u>, it would not help Remote Solution because the MPA demonstrates that it was the parties' "unmistakable intent" that Remote Solution would indemnify Contec against patent infringement claims. (RSC's Ex. M, pp. 31-32). After consideration of the parties' arguments, the Arbitrator ruled the Remote Solution's defenses do not avail it here. (RSC's Ex. C, p. 1, 2nd para., last sentence).

As to Remote Solution's "public policy" argument, the Supreme Court has cautioned that a court's refusal to enforce an arbitrator's interpretation of a contract on "public policy" grounds is "limited to situations where the contract as interpreted would violate 'some explicit public

policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws, and legal precedents and not from general considerations of supposed public interests.'" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30, 43 (1987); *see also Saint Mary Home, Inc. v. Service Employees International Union, District 1199*, 116 F.3d 41, 45-46 (2d Cir. 1997) (holding that courts may invoke public policy to vacate an arbitral award "only in those <u>rare cases</u> where enforcement of the award would be directly at odds with a well defined and dominant public policy resting on clear law and legal precedent."). Given that courts and the U.C.C. have expressly recognized the power of parties to require a manufacturer to indemnify a buyer against patent claims directed at features required by a buyer's specification, and that <u>no court</u> has ever found such an agreement for indemnification against patent infringement invalid due to an indemnitee's alleged negligence, there is clearly no "well defined and dominant" public policy at issue here.

In view of the foregoing, Remote Solution's assertion that "this is a case where well-established principles of contract interpretation and case precedent permitted only one interpretation, and the arbitrator knowingly chose to ignore it" is simply ridiculous. (RSC's Brief, p. 18, 1st full para.).

Whether or not this Court agrees or disagrees with the Arbitrator's conclusions, it cannot vacate or modify the Award where, as here, the Arbitrator indisputably based those conclusions on his construction of the MPA. *See United Paperworkers*, 484 U.S. 29, 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed <u>serious</u> error does not suffice to overturn his decision.").

Remote Solution asserts that "[t]he arbitrator made no effort to reconcile the conflict between his ruling and the abundance of case law holding to the contrary." (RSC's Brief, p. 18). He was however under no obligation to do so. The Arbitrator's Award set forth a sufficient basis for ascertaining the reasons for his ultimate determination—that is all that is required.[7] *See Reid Beverage Distributors, Inc. v. Pepsi-Cola Bottling Co. of N.Y.*, No. 86 Civ. 6371, 1987 WL 11690, at *4 (S.D.N.Y. May 28, 1987) (Ex. 4 hereto).

Remote Solution's "public policy" arguments are, and always have been, nothing more than a bald attempt by Remote Solution to rewrite an agreement that it no longer wished to abide by. The only supposedly negligent act that Remote Solution identified was Contec's failure to do an investigation into possible patent infringement claims before providing specifications to Remote Solution. Remote Solution argued, alternatively, that Contec's entitlement to indemnification may be barred as a result of Contec's "own intentional, reckless or grossly negligent conduct," but it did not identify any specific acts by Contec that would constitute such conduct. (RSC's Ex. J, pp. 13-14).

As Contec explained to the Arbitrator, however, Remote Solution knew when it entered into the MPA that Contec would be providing specifications for the products it would be manufacturing. Section 1(a) expressly states that Contec would be providing such specifications. (RSC's Ex. E, Section 1(a)). It had nevertheless plainly and indisputably agreed, in Section 3(c), to indemnify Contec against "any" patent infringement claims directed at those products. (*Id.*, Section 3(c)). Thus, as between Contec and Remote Solution, the parties had agreed to allocate

---

[7] Remote Solution cites *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9*, 879 F.2d 347, 351 (8th Cir. 1989) for the proposition that "where an arbitrator fails to discuss a probative contract term, and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract," and *Clinchfield Coal Co. v. Dist. 28, United Mine Workers*, 720 F.2d 1365 1369 (4th Cir. 1983) for a similar proposition. The Arbitrator in this case, however, clearly addressed the relevant terms of the Agreement and based his decision on his construction of those terms. (*See* RSC's Ex. C). Remote Solution's complaint appears to be with the Arbitrator's consideration of case law that it contends supercedes those terms, which is a point not addressed in the cases it cites.

the risk of patent infringement claims to Remote Solution. Remote Solution's argument attempts to add a contingency to the MPA—namely, that Remote Solution was only required to live up to its indemnification obligations under Section 3(c) if Contec performed an investigation into possible infringement claims before providing its specifications to Remote Solution. No such requirement is found, however, in the MPA and Remote Solution had never asked for such an investigation before undertaking any work under the MPA. (RSC's Ex. M, p. 11, Fact No. 28).[8]

As explained above, courts and the U.C.C. have recognized the power of parties to enter into precisely the type of indemnification agreements at issue here — *i.e.*, one requiring a manufacturer to indemnify a buyer against all patent infringement claims, including claims directed at features required by a buyer's specifications. Neither the case law nor the U.C.C. requires the buyer to do an investigation into potential infringement claims, as Remote Solution asserts, in order to enforce such an agreement. There is certainly no well-defined and dominant public policy to that effect.[9]

---

[8] It was, moreover, Remote Solution's responsibility, not Contec's, to conduct such an investigation if it deemed one necessary to live up to its indemnification obligations under the Agreement. It is simply preposterous for Remote Solution to claim, as it does, that the indemnification clause is unenforceable due to Contec's failure to conduct an investigation when it was the party responsible for defending against infringement claims under the Agreement and it had itself failed to conduct any such investigation after receiving specifications from Contec. (*See* RSC's Ex. M, p. 11, Fact No. 28).

[9] Remote Solution, moreover, has no basis whatsoever for asserting that Contec's conduct was in any way negligent or reckless — Contec conducted itself at all times in a reasonable and prudent manner in response to Philips' and UEI's claims.

**REDACTED**

17

As Contec also explained to the Arbitrator, Remote Solution's negligence theory simply has no application to a patent infringement claim—no court has ever applied it to such a claim or held a provision for indemnification against patent infringement unenforceable due to an indemnitee's alleged negligence. (*See* RSC's Ex. M, p. 31). Simply, the theory essentially applies only to negligence-based claims between a <u>third-party</u> and an indemnitee — *i.e.,* the issue under that theory is whether the indemnitee acted negligently toward a third-party, giving rise to a cause of action by that third party. If so, the theory holds, the indemnitor will not be required to indemnify the indemnitee unless the agreement demonstrates an unmistakable intent to indemnify the negligent party against such negligent acts (*i.e.*, the acts giving rise to the cause of action). That theory has nothing to do with whether or not the indemnitee acted negligently, in some sense or other, toward its indemnitor. All but one of the cases cited by Remote Solution to the Arbitrator addressed such negligence-based claims.

In the one exception, *Fendley v. Power Battery Co.*, 561 N.Y.S.2d 760, 762 (App. Div. 1969), the Court extended the theory to a strict products liability claim, again brought by a third party. But as extended, the theory holds only that a contract for indemnity will not be deemed to indemnify a party for its own strict products liability unless the contract demonstrates an unmistakable intent to indemnify the liable party. If the theory were extended to a patent infringement claim, <u>which no court has ever done</u>, it would hold that a contract for indemnity will not be deemed to indemnify a party for its own acts of patent infringement unless the contract demonstrates an unmistakable intent to indemnify the infringing party. That is a higher

---

**REDACTED**

Remote Solution's negligence theory thus
attempts to impose on Contec the duty to notify Remote Solution not only of patents that may raise infringement claims, but also of patents that Contec may reasonably believe to not be infringed — which of course would encompass the entire universe of patents. That theory is, on its face, unreasonable.

standard than required for interpreting the indemnification provision at issue here,[10] but it is

nonetheless met—the MPA plainly demonstrates such an unmistakable intent.  Remote Solution

simply sought to inject the issue of negligence, in a loose colloquial sense, into the Arbitration

proceedings by misinterpreting a rule of law directed to negligence-based causes of action.  (*See*

RSC's Ex. M, p. 32).

### C.    The Arbitrator Did Not Exceed His Authority In Awarding Contec a Share of its Settlement Payments to Philips and UEI.

Remote Solution argues that the arbitrator "exceeded his authority" by (1) awarding

Contec a share of its <u>settlement</u> payments to Philips and UEI when Section 3(c) of the MPA

states that "Seller shall pay all damages and costs *awarded* by *final judgment* against Purchaser,"

not settlement, and (2)

REDACTED

(RSC's Brief, pp. 20-22, emphasis in original).  Both arguments are meritless.

As to (1), Remote Solution ignores the fact that under Section 13(a) of the MPA, which

the Arbitrator quotes on page 5 of his Award re Damages, Contec was "entitled to undertake the

defense, compromise or <u>settlement</u> of such claim[s] at the expense of the Indemnifying Party

[here, Remote Solution]" after Remote Solution failed to defend those claims.  (RSC's Ex. D, p.

7; RSC's Ex. E, Section 13(a)).  In addition, Contec cited New York case law to the Arbitrator

that establishes, even without Section 13(a), that an indemnitor who, after receiving notice, fails

to defend is conclusively bound by any reasonable good faith settlement the indemnitee may

make.  (Ex. D, p. 7).  Plainly then, the Arbitrator did not exceed his authority or act in manifest

---

[10] *See Park-Ohio Indus., Inc. v. Tucker Induction Sys., Ltd.*, 1988 WL 1045372, at *1-2 (E.D. Mich. 1987) (Ex. 5 hereto) (holding that the U.C.C. warranty against patent infringement "does not require the recitation of any particular disclaimer").

disregard of the law by awarding damages to Contec arising from its settlement of the UEI and

Philips litigations after Remote Solution failed to defend those claims—a basis exists in both the

MPA and the applicable case law for an award of such damages.


**REDACTED**

He agreed with Contec, concluding that

Contec had "demonstrated that it is entitled to reimbursement" for Remote Solution's pro-rata

share of the Philips settlement amount.  (RSC's Ex. D, p. 15).  Again, regardless of whether this

Court agrees with the Arbitrator's determination, the Arbitrator plainly did not "exceed his

authority" in construing the Philips settlement agreement or act in manifest disregard of the law.

Indeed Remote Solution's argument here is incredible in view of its admission on page

22, footnote 11, of its Opening Brief, that it had itself argued to this Court in its Pre-Trial Order

in the *Philips* litigation that "any judgment against Remote Solution should be reduced by the

amount paid by Contec in the settlement agreement."


**REDACTED**

(RSC's brief, pp. 22-23).

Remote Solution has thus <u>simultaneously</u> argued <u>contradictory</u> positions on the same issue in

different forums (*i.e.,* before this Court and before the arbitrator)—such conduct is clearly

improper.[11]  In any event, Remote Solution's argument in the *Philips* case demonstrates that the

Arbitrator's construction of the settlement agreement with Philips was, at the very least, arguably

correct—again, it is a construction that Remote Solution itself argued to this Court.

D.    **The Arbitrator Did Not Manifestly Disregard the Law and the
Terms of the MPA by Awarding Contec Attorneys' Fees
in Connection with Federal Court Litigation Relating to the Arbitration.**

Remote Solution asserts that "the arbitrator manifestly disregarded controlling New York

law, which was provided to him [that] contractual provisions may not be interpreted as

permitting recovery of attorney's fees incurred in litigation between the parties unless the

intention of the parties to so provide is 'unmistakably clear.'"  (RSC's Brief, p. 24).  As Remote

Solution acknowledges, however, the arbitrator did not <u>disregard</u> the cases cited by Remote

Solution.  Rather, the arbitrator held that "Remote Solution's contentions based on New York

indemnity cases are misplaced," in that Contec's "claim for attorneys' fees and expenses is based

on Section 19 of the 1999 Agreement [the MPA], not an indemnity provision."  (Ex. D, p. 17;

RSC's Brief, p. 25).  Accordingly the issue here is not whether the Arbitrator "manifestly

disregarded" the law (*i.e.*, "appreciate[d] the existence of a clearly governing legal principle but

decide[d] to ignore or pay no attention to it"),[12] but rather the issue, as framed by Remote

Solution, is whether the arbitrator committed an error of law in limiting the case law cited by

Remote Solution to indemnification provisions.  (RSC's Brief, pp. 25-26).  That issue is not,

however, a basis for vacating or modifying an arbitration award.  *See Anchor Motor Freight v.*

*General Teamsters Local 326*, 838 F. Supp. 868, 872 (D. Del. 1993) ("a court may not vacate an

---

[11] Remote Solution's reliance on *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 517-18 (3rd Cir. 2005) for a different result is unavailing.  That case does not stand for the proposition that a party can <u>simultaneously</u> take opposing positions in different forums to suits its needs of the moment.

[12] *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

award merely because it views the merits differently or because it finds that the award was based on an error of law").

In addition, the cases cited by Remote Solution, many of which were not cited to the Arbitrator, clearly do not apply to the MPA's arbitration provision. The issue in those cases was whether an indemnification provision, which required the indemnitor to pay the indemnitee's attorneys' fees in suits against third parties, also required the indemnitor to pay the indemnitee's legal fees in suits between the indemnitee and indemnitor to enforce the indemnification agreement. Section 19, in contrast, applies only to proceedings between the two parties to the MPA, Contec and Remote Solution. There is no issue, therefore, as to whether the attorneys' fee provision applied in proceedings between the parties. Moreover, contrary to Remote Solution's assertion, the law which Remote Solution alleges that the Arbitrator ignored is not "well defined, explicit, and clearly applicable"—again, it has, in fact, never been applied to a patent infringement indemnification claim.

Also, contrary to Remote Solution's assertion, the Arbitrator had in fact explained why he concluded that fees incurred in connection with the related federal court proceeding were within the scope of Section 19. As the Arbitrator explained, Remote Solution strove, in the New York action, "to derail this arbitration" and, "[i]n Korea, … initiated an action whose subject matter [was] clearly … within the scope of Section 19 [of the MPA]" and that "[t]hat conduct compelled Contec to participate in the New York action in order to preserve Contec's right to arbitrate under Section 19." (RSC's Ex. D, p. 17). The Arbitrator then found that "Contec's attorneys' fees and expenses incurred in connection with the New York action and the Korean action were clearly incurred in the conduct of this arbitration," the underlined portion being the operative phrase in Section 19. Id. Again, whether or not this Court agrees with the Arbitrator's

interpretation of Section 19 is irrelevant—the Arbitrator was certainly "construing or applying the contract and acting within the scope of his authority." His award, therefore, should not be vacated or modified.[13]  *United Paperworkers*, 484 U.S. at 38.

**E.    The Arbitrator Did Not Exceed His Authority By Awarding Contec Attorneys' Fees in Excess of the Fees Incurred by Remote Solution.**

Remote Solution asserts that the Arbitrator "exceeded his authority" and acted in "manifest disregard of the law" in awarding Contec attorneys' fees in excess of the fees incurred by Remote Solution. (RSC's Brief, pp. 28, 31). In particular, Remote Solution asserts that the Arbitrator was not permitted to apply the covenant of good faith and fair dealing, where the application of that covenant would "conflict[] with the express terms of a contract," here, Section 19's limitation on the recovery of attorneys' fees. Remote Solution is once again wrong.

The Arbitrator was permitted, and obligated, to consider whether Remote Solution had breached the covenant of good faith and fair dealing, when the issue was raised by Contec. Contec had, in fact, cited to the Arbitrator more than a dozen cases establishing the vitality of that covenant under New York law. *See* RSC's Ex. P, p. 3 (citing, *inter alia*, *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977, 979 (1995) and N.Y. UCC 1-203). The touchstone of that covenant is that "neither party may engage in conduct which would interfere with the other party's right to realize the benefit of the bargain, <u>even if such conduct is not specifically prohibited by the contract</u>." RSC's Ex. P, p. 3 (citing *Bear, Sterns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005)). The evidence that Remote

---

[13] Courts have allowed recovery of fees in related proceedings in an arbitration. *See Christian Dior, Inc. v. Hart Schaffner & Marz*, 637 N.E.2d 546, 550 (Ill. App. Ct. 1994); *Kalai v. Gray*, 135 Cal. Rptr. 2d 449, 456 (Ct. App. 2003). While the Arbitrator found those cases to not be controlling, the Arbitrator ultimately concluded that the fees and expenses Contec incurred in connection in the New York and Korean Actions were recoverable, as they were within the scope of Section 19.

Solution breached that provision is compelling. As Contec had argued to the Arbitrator, the

attorney fee provisions in Section 19:

> was plainly intended to deter the parties from breaching the agreement and to
> discourage the parties from pursuing meritless or even weak claims or defenses in
> an arbitration. A party could pursue such claims and defenses only at its peril,
> since, if unsuccessful, it would be required to pay not only its own attorneys' fees,
> but the other party's fees too. The limitation on attorneys' fees [in] Section 19
> was not intended to create a loophole through which the remainder of the
> provision could be rendered meaningless, as Remote Solution attempted to do.
> The provision clearly presumes (i) that each party would retain competent counsel
> to represent it in any arbitration, (ii) that that counsel would actually charge for
> the time expended in connection with the arbitration, and (iii) that that counsel
> would bill his or her time at an hourly rate that is within the range of customary
> hourly rates for attorneys competent to handle the subject matter of the
> arbitration. The limitation is plainly intended to act only as a mechanism for
> eliminating disputes over the reasonableness of the prevailing party's fee request;
> *i.e.*, the losing party cannot complain of the reasonableness of the prevailing
> party's fees, if those fees are limited to the amount the losing party incurred. That
> intent, as evidenced by the plain words of the contract, is a matter of contract
> interpretation for the Arbitrator to decide. The limitation on fees certainly should
> not be read in a vacuum and without consideration of the intent of the entire
> provision, as Remote Solution does. In fact, under Remote Solution's
> interpretation, if the losing party found counsel to represent it without charge or
> agreed to charge only if that party prevailed, the prevailing party would be
> entitled to <u>no</u> attorneys' fees in those situations, a result which plainly disregards
> the intent of the provision.

(RSC's Ex. P, pp. 2-3). Contec then cited "30 illustrative instances in which Remote Solution's

counsel billed for little or no time" for numerous tasks in the arbitration and related court

proceedings and identified "numerous other examples" where Remote Solution's counsel's

billing records reflect little or no charges for work performed. *See* RSC's Ex. D, p. 13, 2nd

para.; Ex. P, pp. 4-8.

Remote Solution, in response, cited two cases—*Mark Patterson, Inc. v. Bowie*, 654

N.Y.S.2d 769, 771 (App. Div. 1997), which quoted *Caporino v. Travelers Ins. Co.*, 62 N.Y.2d

234 (1984). Neither of those cases included a situation, like the present case, in which the plain

intent of a contract provision was frustrated by one of the parties. *Mark Patterson* involved a

clause in an insurance policy which "excluded from coverage under the subject policy" "[r]ecovery for a loss of jewelry left in an unintended vehicle." *Id.* at 771. The issue there was whether the insurer breached its duty to plaintiff by failing to notify plaintiff of a prior loss claim by a covered employee. The intent of that clause was however not at issue. *Caporino* did not involve or address the covenant of good faith and fair dealing.

After consideration of Remote Solution's and Contec's respective arguments, the Arbitrator concluded that Remote Solution breached its obligation of good faith and fair dealing and could not properly invoke Section 19's limitation on the recovery of attorneys' fees:

> [I]t is equally plain to the Arbitrator that Remote Solution has breached its obligation of good faith and fair dealing under New York law and has <u>thus frustrated an appropriate recovery of attorneys' fees and expenses by Contec</u>. Contec's point is well taken that Remote Solution's unusually low billings here <u>cannot provide a basis for negating the spirit of Section 19. Surely, it was not the intent of the parties that one party could **reduce to zero, or even 10%**, the right of the prevailing party to recover fees and expenses by arranging for the losing party's attorney's fees and expenses to approach zero.</u> Reading Section 19 <u>in an objectively reasonable manner</u>, the Arbitrator finds that Remote Solution cannot properly invoke Section 19's limitation on the recovery of attorneys' fees under the circumstances created here by Remote Solution and its counsel.

(Ex. D, p. 18, 2nd para.).

Whether Remote Solution, or this Court, believes that the Arbitrator applied the doctrine of good faith and fair dealing correctly is again irrelevant—the Arbitrator plainly attempted to interpret the MPA in accordance with New York law and there is simply no evidence that the Arbitrator "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986); *see also Radio and Television Broadcast Engineers Union, Local 1212 v. WPIX, Inc.*, 716 F. Supp. 777, 782 (S.D.N.Y. 1989) ("Applying basic contract law principles is

outside the agreement since interpreting the agreement is completely within the arbitrator's authority."). Under those circumstances, a court cannot modify or vacate an arbitral award.

Remote Solution now cites three additional cases that it never cited to the Arbitrator—*Consolidated Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 529 (2d Cir. 2005); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Company*, 294 F.3d 383, 394-96 (2d Cir. 2002); and *Emigrant Indus. Sav. Bank v. One Hundred Eight W. Forty Ninth Street Corp.*, 8 N.Y.S.2d 354, 359 (App. Div. 1938). Those cases should not be considered by this Court. To the extent they add anything to the cases cited to the Arbitrator, then Remote Solution has not established that the Arbitrator "appreciated the existence of a clearly governing legal principle." If they do not add anything to the cases cited to the Arbitrator, they are, of course, irrelevant. Simply put, the Arbitrator cannot be charged with appreciating the existence of and ignoring cases that were not put before him.[14]

### F.    The Arbitrator Did Not Err By Awarding Contec Attorneys' Fees Incurred in Obtaining Court Confirmation of an Interim Award.

Remote Solution asserts that the Arbitrator "erred" by awarding Contec its attorneys' fees incurred in obtaining court confirmation of an interim award, after "the Court initially granted the request for attorneys' fees, but vacated its Order after Contec's lawyers failed to submit their statement of the amount of fees in time." (RSC's Brief, p. 32). In so doing, Remote Solution provides no legal basis for this Court to modify or vacate that award—it does not argue that the Arbitrator "manifestly disregarded the law" or "exceeded his authority." Whether or not

---

[14] In any event, none of those cases involve a situation, like here, where the plain intent of a contract provision was frustrated by one of the parties. *Consolidated Edison* did not even involve the covenant of good faith and fair dealing, but rather, dealt with the "prevention doctrine," which prevents a party from avoiding "performance of a contractual duty by preventing the occurrence of a condition precedent." 426 F.3d at 528. Similarly, *Emigrant* did not specifically deal with the covenant of good faith and fair dealing or a parties' frustration of a provision; rather, it dealt with covenants in general. 8 N.Y.S.2d at 575. As for *Times Mirror*, the court in that case rejected appellant's argument that the appellee breached the covenant of good faith and fair dealing by performing acts that were expressly authorized in the parties' agreement. 294 F.3d at 394-95.

the Arbitrator "erred" is not a recognized basis for modifying or vacating an arbitration award. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts").

In any event, as Contec explained to the Arbitrator, Contec's right to those fees in the arbitration "were based on an entirely different ground than the one applied by the district court"—in particular, in the arbitration, "they [were] recoverable by Contec as the prevailing party ... under Section 19 of the Agreement [the MPA]," whereas, in the district court, "they were recoverable as a sanction against Remote Solution's misconduct," namely Remote Solution's completely unwarranted refusal to comply with the Arbitrator's ruling, enjoining Remote Solution from proceeding with its Korean lawsuit against Contec. (RSC's Ex. P, p. 27). Contec further explained that "[s]ince the district court vacated the award, there is absolutely no reason why Contec should not still be able to recover those fees on the separate grounds that apply [in the Arbitration]." *Id.* Remote Solution, in turn, argued, without citation to any cases or other legal precedent, that "Contec ha[d] not provided any legal authority authorizing the Arbitrator to make such an award," that "such awards are generally given by the Court in the context of confirmation, not by the Arbitrator," and that "Contec is now attempting an 'end run' around the ruling of the District Court." Certainly, then, the Arbitrator's decision to rule in Contec's favor, in view of the arguments presented by the parties, does not give rise to grounds for setting aside the Arbitrator's award on this issue.

Remote Solution argues that "principles of collateral estoppel preclude an arbitrator from relitigating issues decided by a federal court," citing two cases that he again never cited to the Arbitrator—*McCown v. Sears, Roebuck and Co.*, 908 F.2d 1099, 1107 (2d Cir. 1990) and

*Mansbach v. Prescott, Ball and Turben*, 598 F.2d 1017, 1031 (6th Cir. 1979). Those cases should also not be considered by this Court for the reasons given above. Again, the Arbitrator cannot be charged with appreciating the existence of and ignoring cases that were never before him. In any event, the cases cited by Remote Solution are inapposite—unlike those cases, the basis for the relief sought by Contec in the Arbitration was different than the basis sought in District Court. The District Court ruling thus had no collateral estoppel effect on Contec's arguments before the Arbitrator.

### G. The Arbitrator Did Not Fail to Make Findings of Fact and to Provide Reasons for His Decision on Liability.

Remote Solution asserts that the Arbitrator's ruling as to liability was inadequate under Section 19 of the MPA, because "Remote Solution was entitled to findings of fact and reasons why Contec should be entitled to indemnification, in light of both (i) New York law strictly construing indemnification provisions against claims arising from the indemnitee's own misconduct, and (2) Contec's reckless or grossly negligent failure to protect Remote Solution from being in a position to have to indemnify Contec." (RSC's Brief, p. 12). Remote Solution is wrong. Its novel negligence theory has never been applied to a case involving indemnification against patent infringement and can be dismissed as a matter of law. There was accordingly no need for the Arbitrator to make any factual findings relating to that theory.

Despite Remote Solution's attempts to complicate this case with bizarre, meritless defenses, the liability issue before the Arbitrator was straightforward and easily resolved by reference to the "clear and unambiguous" language of the MPA. Specifically, as set forth in the Arbitrator's July 26, 2005 letter (RSC's Ex. C), the Arbitrator ruled that "Contec is entitled to an award that Remote Solution has breached Section 3(c) of the February 16, 1999 Manufacturing and Purchase Agreement," because:

28

(i)   Section 3(c) of the 1999 Agreement is clear and unambiguous,

(ii)   Section 3(c) constitutes an express agreement by Remote Solution to defend any suit or proceeding against Contec based on a claim that inter alia "Products" (i.e., "designed and/or manufactured and sold by Seller [Remote Solution] to Purchaser [Contec] pursuant to this Agreement") infringe a valid United States patent,

(iii)   Section 3(c) overrides and is not subject to the "buyer's specifications" provision of UCC Section 2-312(3),

(iv)   Contec provided appropriate notice to Remote Solution with respect to UEI's action for patent infringement and Philips's action for patent infringement,

(v)   Remote Solution did not defend Contec in either proceeding,

(vi)   "final judgment" of the kind referred to in Section 3(c) was entered in at least Philips v. Contec et al., Civil Action No. 02-123-KAJ, with respect to "Products" ..., and

(vii)   Remote Solution's defenses do not avail it here.

(Ex. C, p. 1).  That ruling was later confirmed in the Award of Arbitrator Re Damages (See Ex. D, p. 4 ("The Joint Statement is directed to the issue of Contec's entitlement to damages., i.e. liability.  That issue was resolved by the Arbitrator by letter ruling on July 26, 2005.").

The Arbitrator's July 26, 2005 letter plainly satisfies the requirements of Section 19 of the MPA—it sets forth the relevant facts underlying the Arbitrator's award as to liability (see items (ii), (iv), and (v)) and states the reasons for his decision (see items (i), (ii), (iii), and (vii)). There is simply no requirement under Section 19 that the Arbitrator set forth facts that have no bearing on his decision, such as facts regarding Contec's alleged "negligence," or that he address each and every defense raised by Remote Solution, such as Remote Solution's negligence theory. See Green v. Ameritech Corp., 200 F.3d 967, 976 (6th Cir. 2000) (The court stating that, "[i]f the parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required.").  Remote Solution's argument is nothing

more than yet another delay tactic in an arbitration involving straightforward contract issues that Remote Solution has already managed to delay the resolution for more than two and a half years.[15]

## II.    The Court Should Award Contec its Attorneys' Fees and Costs Incurred in Responding to Remote Solution's Motion.

Remote Solution's motion for modifying or vacating the Arbitrator's Award does not come close to justifying the relief it seeks in view of the extremely limited standard of review that is applicable here. *See supra*, Section I.A.1. A motion to vacate or modify an arbitration award should not be a routine exercise in which the losing party to an arbitration seeks a second shot, in court, at the issues addressed in the arbitration. *Id.* Such motions can only succeed where there is, in essence, no possibility that a reasonable arbitrator could have reached the conclusions of the arbitrator in the case under consideration. *Id.* They should accordingly be made sparingly. To do otherwise undermines the strong public policy favoring arbitration and forces the prevailing party to unnecessarily litigate issues that the parties agreed would be decided by arbitration.

---

[15]  Moreover, even if the Court were to rule in Remote Solution's favor on this issue, the proper remedy would not be to declare the award "void," as Remote Solution suggests (RSC's Brief, p. 13), but to remand this matter to the Arbitrator to furnish additional "findings of fact" and "reasons for the decision." *New Elliott Corp. v. Man Gotehoffnungshutte, AG*, 969 F. Supp. 13, 15 (S.D.N.Y. 1997) (remanding the case "to the remaining two arbitrators so that they may provide adequate 'findings of fact' and 'conclusions of law' in relation to the challenged … determination."); *Green*, 200 F.3d at 976 (the Sixth Circuit holding that "if the district court were correct in its conclusion that Arbitrator Googasian failed to explain his award [which the Sixth Circuit held it was not], the proper remedy would have been a remand to the same arbitrator for clarification."). That would basically accomplish nothing for Remote Solution, except further delay, since the Arbitrator cannot modify his ruling on remand and any additional explanation by the Arbitrator of his award would not increase Remote Solution's chances of vacating or modifying the award in any subsequent proceedings. *See Green*, 200 F.3d at 978 (stating that, on remand, the arbitrator "would simply be completing his duties by clarifying his reasoning, not reopening the merits of the case"); *W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261 (9th Cir. 1992) ("Western's belief that the inclusion of findings of fact and conclusions of law would entitle parties to a higher level of judicial review in the event they contest an arbitral award is erroneous. As this circuit has made clear, absent 'manifest disregard' for the law, courts will not heighten their otherwise deferential review of arbitral awards even where the arbitrators have misapplied the law.").

Remote Solution's arguments boil down to the proposition that, any time the Arbitrator rejected Remote Solution's arguments, he "disregarded" the law. That proposition is far from the stringent legal standard that must be met in order to vacate or modify an arbitration award.

Courts have not hesitated to award attorneys' fees where parties have raised no legitimate basis for contesting the confirmation of an arbitration award. *P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at *4 (S.D.N.Y. 2001 Jan. 16, 2001) (Ex. 1 hereto) (court, under its inherent powers, awarding attorneys' fees and costs incurred in connection with petitioner's petition to confirm, where respondent's arguments were not only incorrect, but were not raised in a timely manner, and respondent had "no legitimate basis for contesting the confirmation of the arbitration award."); *Jardine Matheson & Co., Inc. v. Saita Shipping, Ltd.*, 712 F. Supp. 423, 428-29 (S.D.N.Y. 1989) (the district court awarding attorneys' fees against respondent, stating that "the Court can only conclude that Respondent interposed its defenses simply as a last-ditch effort to avoid complying with the arbitrator's award. Arbitration is designed as a speedy, efficient process for resolving disputes. Resort to litigation should be limited to those instances when a party has a colorable chance of success.). Indeed, this Court has stated:

> In suits to compel one party to abide by an arbitration award, attorneys' fees are generally awarded if the defaulting party acted without justification or did not have a "reasonable chance to prevail" . . . The decision of the Board in the instant dispute was amply supported by the record and by prior legal decisions. The Board's findings and ultimate construction and application of the Agreement's provisions were clearly within the limits of the Board's authority. For these reasons, the Court concludes that Anchor did not have "a reasonable chance to prevail," and therefore, the Union's request for attorneys' fees will be granted.

(*Anchor Motor Freight v. General Teamsters Local 326*, 838 F. Supp. 868, 873 (D. Del. 1993) (internal citations omitted)); *see also Rostad and Rostad Corp v. Inv. Mgmt & Res., Inc.*, 923

31

F.2d 694 , 697 (9th Cir. 1990) (court stating, in awarding attorneys' fees to plaintiff, "[IM&R]

has failed to understand the very limited review now available in federal court.  It has presented

meritless opposition.  There is no reason that the cost of this prolonged and frivolous resistance

should be imposed upon R&R").  Contec believes that such an award is appropriate here.

An award of attorneys' fees is also warranted under Section 19 of the MPA.

## III.   Application to Confirm Arbitration Award and Request for Pre-Judgment and Post-Judgment Interest.

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes

what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*,

750 F.2d 171, 176 (2d Cir. 1984).  As explained above, Remote Solution has not raised any

legitimate objections to the Arbitrator's Award in this case.  Contec accordingly requests that it

be confirmed.

In addition, Contec requests that the Court award Contec post-award, prejudgment

interest and post-judgment interest, starting from January 25, 2006, the date by which the

Arbitrator ordered payment of the damages award.  (RSC's Ex. D, p. 30 (stating that "[w]ithin

thirty (30) days from the date of transmittal of this Award to the parties, respondent Remote

Solution Co. Ltd. shall pay to complainant Contec Corporation the sum of US$482,067.50)).

The award of such interest is routine and presumed to be appropriate.  *P.M.I. Trading Ltd. v.

Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at *3 (S.D.N.Y. 2001 Jan. 16, 2001)

(Ex. 1 hereto) (The court stating that "[a]bsent persuasive argument to the contrary, post-award,

prejudgment interest is available for judgments rendered under the Convention and is presumed

to be appropriate;" and requiring that post-award interest be paid from the date set by the

arbitrator for payment of the award); *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*,

737 F.2d 150, 153-54 (2d Cir. 1984) ("it is almost unnecessary to reiterate that only if such

interest is awarded will a person wrongfully deprived of his money be made whole for the loss");

*New York City District Council of Carpenters Pension Fund v. E. Millenium Constr.*, No. 03 civ.

5122, 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003) (Ex. 2 hereto) ("While the awarding

of prejudgment interest in confirmation of arbitration award actions [is] in the discretion of the

trial court, there is a presumption in favor of prejudgment interest.") (internal quotation marks

omitted); *Sarhank Group v. Oracle Corp.*, No. 01 Civ. 1285, 2004 WL 324881, at *3-4

(S.D.N.Y. 2004 Feb. 19, 2004) (Ex. 6 hereto) (The court stating that "[t]he purpose of the

Convention would be impeded were Respondent able to receive an interest-free loan by delaying

payment of the award, particularly by engaging in protracted litigation . . . . Denying pre-

judgment interest in this case would allow Respondent to be better off for the delay and frustrate

the goals of the Convention;" and holding that "post-award, pre-judgment interest . . . shall be

calculated from . . . the date the arbitration award was rendered," where the award did not

specify a date or event on which payment was to have been made).

"The mere fact that the arbitrators chose not to award post-award, prejudgment interest

does not control this analysis. *See Moran v. Arcano*, No. 89 Civ. 6717, 1990 WL 113121, at *2-

3 (S.D.N.Y. July 27, 1990) (Ex. 7 hereto) (holding that post-award, prejudgment interest was the

province of the district court, not the arbitrator)."

As for the rate of interest, the federal rate, under 28 U.S.C. § 1961, is appropriate for

calculating post-award, prejudgment interest in cases arising under the Convention, such as the

present one. *See P.M.I. Trading Ltd.*, 2001 WL 38282, at *3 (Ex. 1 hereto); *see also Sarhank*,

2004 WL 324881, at * 4 (same) (Ex. 6 hereto); *but see Northrop Corp. v. Trian Int'l Marketing*,

842 F.2d 1154, 1155 (9th Cir. 1988) (holding that the state law rate of interest should apply to

post-award interest where case not decided under the Convention, but rather the FAA). "The

calculation of post-judgment interest is also governed by 28 U.S.C. § 1961." *P.M.I. Trading Ltd.*, 2001 WL 38282, at *3 (Ex. 1 hereto) (citing *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989)).

## CONCLUSION

For the foregoing reasons, Contec respectfully requests that the Court:

1.     Deny Remote Solution's Motion To Vacate Or Modify The Arbitration Award;

2.     Order Remote Solution to pay Contec's attorneys' fees incurred in defending against Remote Solution's motion;

3.     Confirm the Award of Arbitrator Re Damages, dated December 26, 2005, and the award in the Arbitrator's letter of July 26, 2005; and

4.     Order Remote Solution to pay pre-judgment and post-judgment interest on the amount due Contec under the Award at the interest rate provided by 28 U.S.C. § 1961, commencing January 25, 2006.

Respectfully submitted,

Redacted Version Filed: March 13, 2006
Dated:  March 1, 2006

/s/ Paul E. Crawford
Paul E. Crawford (DE Bar #0493)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
PO Box 2207
Wilmington, DE  19899
(302) 888-6262

Kenneth L. Stein
Richard. H. An
JENNER & BLOCK LLP
919 Third Avenue
New York, N.Y. 10022
(212) 891-1600

Attorneys for Respondent
Contec Corporation

## CERTIFICATE OF SERVICE

I, Paul E. Crawford, hereby certify that on March 13, 2006, I electronically filed the

Redacted Version of RESPONDENT'S OPPOSITION TO REMOTE SOLUTION'S MOTION

TO VACATE OR MODIFY ARBITRATION AND APPLICATION TO CONFIRM

ARBITRATION AWARD using CM/ECF which will send notification of such filing to the

following:

David L. Finger, Esquire
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
dfinger@delawgroup.com


　　　　　　　　　　　　　　/s/   Paul E. Crawford
　　　　　　　　　　　　　　Paul E. Crawford, Esq. (#0493)