IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REMOTE SOLUTION CO., LTD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 06-004-SLR |
| | ) |
| FGH LIQUIDATING CORP. | ) |
| f/k/a CONTEC CORPORATION, | ) |
| | ) |
| Respondent. | ) |

David L. Finger, Esquire of Finger & Slanina, LLC, Wilmington, Delaware. Counsel for Petitioner.

Paul E. Crawford, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington Delaware. Counsel for Respondent. Of Counsel: Kenneth L. Stein, Esquire and Richard H. An, Esquire of Jenner & Block LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: July 31, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 11, 2003, Contec Corporation ("Contec")[1] filed a demand for arbitration against Remote Solution Co., Ltd. ("RSC"), a Korean entity, with the American Arbitration Association ("AAA"), claiming several breaches of the parties' 1999 Manufacturing and Purchase Agreement ("MPA"). The parties agreed to bifurcate the issues of liability and damages for purposes of arbitration. The Arbitrator issued his rulings on liability on July 26, 2005 and on damages on December 26, 2005. This matter is before the court on RSC's motion to vacate or modify each of these awards.[2] (D.I. 1) The court has jurisdiction pursuant to 29 U.S.C. § 1401(b)(2). For the reasons that follow, the court denies RSC's motion and confirms the arbitration award.

## II. BACKGROUND

The following is a brief summary of the undisputed facts as set out in the parties' "Joint Statement Regarding Contec's Claim to Indemnification from Remote Solution." (D.I. 9, ex. M)

In 1996, Contec began selling universal remote control units ("URC"s) that allowed customers to control different appliances from different manufacturers using only one remote control device. The URCs include at least one of two methods for programming the URC to work with a particular appliance – a search method and a direct code entry method. The search method, called "point and press" or "auto scan,"

---

[1]Contec subsequently changed its name to FGH Liquidating Corporation; the court will refer to respondent as Contec for ease of reference.

[2]RSC's opposition brief is also its "Application to Confirm [the] Arbitration Award." (D.I. 10) RSC did not bring a separate motion.

direct code entry method. The search method, called "point and press" or "auto scan," requires the user to point the URC at a device and hold down a key or series of keys. Thereafter, the URC sends out a series of signals and goes through its stored library of codes until the appliance recognizes the signal and responds; the code is then stored for future use. In the direct entry code method, the user inputs a three-digit code associated with a device from the manufacturer (codes are identified in the URC instructions), so that the appliance recognizes the signal, which is stored for future use.

Contec initially purchased URCs with both entry methods from Compo Micro Tech, Inc. ("CMT"), selling over 72,000 units in 1996 and over 154,000 units in 1997. Starting in 1998, Contec began using additional manufactures for its URCs. In 1998, Contec sold over 239,000 units, 8.45% of which were manufactured by a company called Kyung. In 1999, Contec sold over 256,000 units, 20.35% of which were manufactured by Kyung and 4.95% of which were made by Seoby Electronics ("Seoby").

Contec and Hango Electronics Co., RSC's predecessor,[3] entered into the MPA on February 16, 1999. Section 1(a) of the MPA provides that, upon receipt of specifications for the URCs from Contec, RSC would design a URC product according to those specifications. Section 3(a) of the MPA is a confidentiality provision defining all information and property given from Contec to RSC as "Proprietary Information," including URC designs, and further assigning to Contec any intellectual property developed by RSC in connection with its performance under the MPA (as work for hire).

---

[3]The court shall refer to Hango Electronics Co. as RSC for ease of reference.

Section 3(a) also obligates RSC to assist in obtaining patent protection on Contec's behalf. Section 3(c) of the MPA provides that RSC must "defend any suit or proceeding brought against [Contec] to the extent that such suit or proceeding is based on a claim that the [URCs] constitute an infringement of any valid United States or foreign patent, copyright, trade secret or other intellectual property right and [RSC] shall pay all damages and costs awarded by final judgment against [Contec]." Finally, section 13(a) of the MPA provides that each party shall indemnify and hold harmless the other party and its agents and affiliates for damages caused by a breach of the MPA. Thirty days' notice is required for indemnification claims; upon a failure to defend, the indemnified party is permitted to defend against claims at the expense of the indemnifying party.

At the time immediately after the MPA was executed, RSC was supplying only dedicated remote control units (i.e., remote control units that operated only one appliance) to Contec. On March 16, 2000, Contec sent RSC a sample of its RT-U49C URC with an instruction manual and asked for a price quote for manufacturing that unit. Contec placed an order with RSC for the development of the mold and software for the RT-U49C on April 7, 2000. Contec advised RSC at that time that RSC's work was intended to develop a secondary source for Contec's RT-U49C production and that its order was governed by the MPA. RSC manufactured the URCs for Contec.

In 2002, Contec was sued in the District of Delaware for patent infringement (hereinafter, the "UEI action"); the parties settled in May 2002. Contec averred that RSC has not satisfied its indemnity obligations to Contec with respect to its attorney fees in defending and settling the UEI action.

On February 12, 2002, Philips Electronics North America Corporation and U.S.

3

Philips Corporation (collectively, "Philips") filed a patent infringement suit against Contec in the District of Delaware (Civ. No. 02-123), alleging infringement in connection with the two programming methods for the URCs (hereinafter, the "Philips action"). Philips subsequently amended its complaint to include RSC as a defendant, along with CMT and Seoby. Contec and Seoby settled with Philips. The Philips action proceeded against RSC and other defendants. On May 23, 2003, RSC, through its U.S. subsidiary, moved for leave to assert a cross-claim against Contec for indemnification or contribution. Contec opposed the motion.

On June 20, 2003, RSC's Korean counsel forwarded to Contec a copy of a complaint filed against Contec in a Korean court and seeking payment for units shipped to Contec in January 2003 (hereinafter, the "Korean action"). Contec claimed that payment has been withheld as an off-set against amounts it claims is owed to it under RSC's indemnity obligations for the UEI action.

Contec filed a demand for arbitration with the AAA on July 11, 2003. (D.I. 9, ex. A) Meanwhile, on August 28, 2003, the Hon. Kent A. Jordan entered a Consent Judgment and Order stating, inter alia, that Contec and Seoby infringed U.S. Patent Nos. 4,703,359 and 5,872,562 by their manufacture of URCs using both "point and press" and direct entry code programming systems. (Civ. No. 02-123, D.I. 258)

On December 1, 2003, the Arbitrator[4] issued an "Award re: Claimant's Standing," finding that Contec was entitled to enforce the Agreement and compel arbitration, and enjoining RSC from "prosecuting or otherwise permitting the Korean action to go

---

[4]David W. Plant

This opinion was issued in connection with litigation filed by Contec in the United States District Court for the Northern District of New York (hereinafter, the "New York action"). The New York action was initiated by Contec, who sought an order compelling arbitration. The court in the Northern District of New York dismissed the complaint for lack of subject matter jurisdiction, and Contec filed an amended complaint. Thereafter, on October 12, 2003, after considering submissions from the parties, the Arbitrator issued his standing opinion. (D.I. 9, ex. B). Contec had the New York court enter judgment confirming the Arbitrator's opinion (the "First Interim Award").[5] The Court of Appeals for the Second Circuit affirmed the district court's judgment on February 14, 2005. The matter thereafter reverted to the Arbitrator.

The parties completed submissions to the Arbitrator between January 30, 2004 and June 6, 2005. On July 26, 2005, the Arbitrator issued a letter to counsel stating the following:

> On the indemnification issue, I am prepared to rule that Contec is entitled to an award that [RSC] has breached section 3(c) of the February 16, 1999 Manufacturing and Purchase Agreement. Inter alia, I am prepared to rule that (I) section 3(c) of the 1999 Agreement is clear and unambiguous; (ii) section 3(c) constitutes an express agreement by [RSC] to defend any suit or proceeding against Contec based on a claim that inter alia "Products" (i.e. "designed and/or manufactured and sold by Seller [RSC] to Purchaser [Contec] pursuant to this Agreement") infringe a valid United States patent; (iii) section 3(c) overrides and is not subject to the "buyer's specifications" provisions of UCC Section 2-312(3); (iv) Contec provided appropriate notice to [RSC] with respect to UEI's action for patent infringement and Philips's action for patent infringement; (v) [RSC] did not

---

[5]The New York court initially granted Contec's request for attorney fees in connection with the First Interim award; its order was vacated, however, after Contec failed to make a timely application for its fees. (D.I. 9, ex. F)  At oral argument, Contec requested fees in excess of $30,000, an amount which the court found "grossly excessive." (Id.)  Counsel failed to subsequently file its accounting by the requested date.

defend Contec in either proceeding; (vi) "final judgment" of the kind referred to in section 3(c) was entered in at least [the Philips litigation], with respect to "Products" [Civ. No. 02-123, D.I. 258]; and (vii) [RSC's] defenses do not avail it here.

(D.I. 9, ex. C) The Arbitrator asked the parties, in light of this "tentative ruling," whether a formal award was required, and suggested a teleconference. (Id.) There is no indication that the parties ever requested a formal award, or that the Arbitrator issued one.

Five months after this letter, on December 26, 2005, a detailed "Award of Arbitrator re: Damages" was issued following "agreement on written submissions, without oral hearing." (Id., ex. D) In his damages opinion, the Arbitrator stated that he previously "ruled via letter to counsel that all bases for damages relief asserted by Contec, including without limitation payments to Contec by Philips in connection with the Philips settlement agreement, would be the subject of these proceedings."

In his damages opinion, the Arbitrator found the following:

A. Contec is entitled to $295,833, or RSC's pro-rata share of the Philips settlement ($214,110) and UEI settlement ($7950), royalties paid to Philips ($6954) and to UEI ($67,179) attributable to RSC's products.

B. RSC is not liable for 100% of Contec's attorney fees and expenses in the Philips and UEI actions. Contec seeks $1,791,884.60, but only 70% of its fees appear to be a fair estimate of work done for RSC (versus other defendants). RSC should pay the same pro-rata share of Contec's fees as that used by Contec to determine RSC's share of the Philips and UEI settlements. The result is a $270,206.32 recovery to Contec.

6

      settlements. The result is a $270,206.32 recovery to Contec.

C.     Applying the same 70% rule, Contec is entitled to $304,099.57, or 70% of its requested fees and costs incurred in the New York and Korean actions, as such costs were "clearly incurred in the conduct of this arbitration."

D.     Contec is entitled to $231,966.62, or 70% of its claimed fees and expenses in connection with the arbitration.

E.     RSC cannot rely on section 19 of the MPA, which caps recovery of the prevailing party's attorney fees at the actual cost of the other party's attorney fees. RSC's fees are "inexplicably low" and the spirit of section 19 would be violated "by way of [RSC's] arranging for the losing party's attorneys fees and expenses to approach zero."

F.     "The parties appear to be in accord that [RSC] is entitled to a set off of $620,038"; this amount will be subtracted from the total due Contec.

G.     In sum, the total due Contec is $482,067.50.

H.     RSC will bear 75% of the arbitration costs, and Contec, the prevailing party overall, 25% of the costs.

(Id., pp. 15-18, secs. IV(A)-(H))

RSC initiated the present action by filing its motion to vacate or modify the arbitration award on January 3, 2006.[6] (D.I. 1) On September 22, 2006, the court denied RSC's motion on the basis that RSC had not established subject matter jurisdiction, as RSC's challenge to the offset calculated by the Arbitrator ($620,038.00

---

[6]Pursuant to 9 U.S.C. § 12, an action to vacate or modify an arbitration award must be initiated by filing a notice of motion instead of a complaint.

versus $692,512.27) yielded an insufficient amount in controversy ($72,474.27).[7] (D.I. 16) On RSC's motion for reconsideration and to amend (D.I. 17), the court[8] subsequently permitted RSC to renew its motion to cure the jurisdictional defect. (D.I. 21) RSC filed an amended motion on December 11, 2006.[9] (D.I. 22)

## III. STANDARD OF REVIEW

In reviewing the findings of fact of an arbitrator in the context at bar, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the

---

[7]The Federal Arbitration Act gives parties to an arbitration agreement the right to have that agreement specifically enforced; it does not confer federal subject matter jurisdiction. See In re Kaplan, 143 F.3d 807, 814 (3d Cir. 1998) (citing General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 970-71 (9th Cir. 1981)). In the absence of subject matter jurisdiction, parties may invoke diversity jurisdiction. RSC is a Korean entity based in Kimcheon, Korea. Contec is a Delaware corporation whose principal office is in Schenectady, New York. The parties are sufficiently diverse, leaving only the amount in controversy requirement.

[8]Hon. Kent A. Jordan.

[9]Judge Jordan previously found that RSC failed to demonstrate the amount in controversy requirement for diversity jurisdiction, because its original motion set forth a dispute over only $72,474.27 – the difference between the $620,038 off-set determined by the Arbitrator and the off-set figure that RSC claims is appropriate, or $692,517.27. (D.I. 16) RSC continues to assert that the proper off-set figure is $692,517.27. (D.I. 22, ¶ 9(g)) In addition, RSC's amended motion states that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the amount in controversy totals $497,482.50. (Id., ¶ 7) This total represents the entirety of the $482,067.50 in damages and $15,415.00 in fees and expenses awarded Contec by the Arbitrator.
  RSC's motion sets forth several ways in which the Arbitrator's award could be "vacat[ed] completely or else modif[ied] downward" by this court, for example, if this court (in its de novo review) disagrees with the Arbitrator's legal interpretation of the language of the MPA regarding indemnification, liability for "indirect" or "consequential" damages, or the award of attorney fees. RSC, thereby, has vested the court with subject matter jurisdiction in this case; as it does not appear certain that the value of RSC's claims cannot meet or exceed the $75,000 jurisdictional amount, the court retains jurisdiction over the matter at bar. See Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).

8

findings of fact made by the Arbitrator were correct." 29 U.S.C. § 1401©. The "clear preponderance" language of the statute has been used interchangeably with "clear error." See, e.g., Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund, 22 F.3d 725 (7th Cir. 1994). "A finding is clearly erroneous if the reviewing court, after duly acknowledging the superior proximity of the factfinder to the witnesses, is firmly convinced that the finding is erroneous." Santa Fe, 22 F.3d at 727 (citing Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust, 113 S. Ct. 2264, 2279-80 (1993)). The Arbitrator's legal conclusions are reviewed de novo. Crown Cork & Seal Co. v. Central States Southeast & Southwest Areas Pension Fund, 982 F.2d 857, 860 (3d Cir. 1992), cert. denied, 113 S. Ct. 2961 (1993).

## IV. DISCUSSION

RSC argues that the arbitration award should be vacated or modified because, in its view, the Arbitrator: (1) failed to make findings of fact and provide reasons for his decision on liability as required by the MPA; (2) "violated public policy and manifestly disregarded applicable New York law in determining that the [MPA] granted indemnification arising from Contec's own act in causing the infringement by providing infringing specifications to [RSC]" (D.I. 10 at 14); (3) impermissibly awarded compensation based on a share of Contec's settlement with Philips, which is not a "final judgment" as contemplated by the MPA; and disregarded the law by (4) holding that the MPA authorizes reimbursement of Contec's legal fees and expenses incurred in obtaining court confirmation of the First Interim Award; and (5) awarding attorney fees in excess of the fees incurred by RMS.

### A. Sufficiency of the Arbitrator's July 26, 2005 Liability Decision

The arbitration clause of the MPA provides that "[t]he award of the panel shall be accompanied by findings of fact and a statement of reasons for the decision." (D.I. 9, ex. F at ¶ 19) RSC asserts that the Arbitrator's July 26, 2005 letter is inadequate under the terms of the MPA.

In the context of ascertaining the extent to which an Arbitrator has satisfied his obligation to render a written opinion, "the touchstone is simply whether enough facts are found and enough legal principles stated so that a reviewing tribunal can ascertain the reasons for the ultimate determination." New Elliott Corp. v. Man Gutehoffnugshütte AG, 969 F. Supp. 13, 15 (S.D.N.Y. 1997) (citations omitted); see also Armstrong v. Commodity Futures Trading Com'n, 12 F.3d 401, 403 (3d Cir. 1993) ("[n]o particular form" of opinion by an agency is required for purposes of the Administrative Procedure Act so long as "intelligent appellate review" is enabled). However, an arbitrator cannot fail to meet his obligations to the parties as specified by the operative contract. See Western Employers Ins. Co. v. Jefferies & Co., 958 F.2d 258 (9th Cir. 1992) (arbitration panel exceeded authority under 9 U.S.C. § 10(d) when it refused to provide the findings and conclusions for its opinion as contemplated by the parties' contract). "Findings of fact," as required by the MPA, is a familiar legal term with a reasonably plain meaning. See New Elliott, 969 F. Supp. at 15. The MPA did not contemplate "conclusions of law," but a "statement of reasons" for the Arbitrator's decision. As this is not a standard legal term, the court examines closely the Arbitrator's opinion, noting that the MPA did not obligate the Arbitrator to "fully" set forth the facts and his conclusions. See Green v. Ameritech Corp., 200 F.3d 967, 975-76 (6th Cir. 2000).

10

In the case at bar, the Arbitrator was given a lengthy account of undisputed facts to consider in making what essentially was a legal determination – the scope and extent of indemnification contemplated by the MPA. (D.I. 9, ex. M)  Accordingly, the major factual underpinnings of the case were undisputed.  The parties' agreement on the facts diverged on the issue of whether RSC independently developed software source code from the sample working remote control units, or exactly duplicated the database contained in the microprocessors of the samples it was given by Contec as per Contec's instructions.  (Id.)  These facts bear on who is to blame for the resulting patent infringement, rather than the legal import of the MPA's indemnification provisions.

The Arbitrator issued a one page letter including, in one paragraph, his anticipated ruling that "[s]ection 3(c) of the [MPA] is clear and unambiguous," it "overrides and is not subject to the 'buyer's specifications' provision of UCC section 2-312(3)," and that RSC did not defend Contec in either the UEI or Philips actions, the latter of which resulted in "final judgment" as contemplated by the MPA.  The Arbitrator noted that RSC's defenses "[did] not avail it[.]"  Notably, the Arbitrator specifically stated that if the parties required a "formal award," he would be "glad to prepare and issue it."  There is no indication that either party specifically requested a more detailed award or that the Arbitrator refused to provide it upon any such request.  Cf. Western Employers, 958 F.2d at 260.

In view of the foregoing, the court finds the Arbitrator's opinion, though admittedly preliminary, is a sufficient "statement of reasons" for his conclusion that RSC was required to indemnify Contec under the MPA.  The Arbitrator's rationale is ascertainable from the list of conclusions provided.  The court declines under this

circumstance to remand for a more developed opinion where the parties did not specifically request one, either in the MPA itself, or following the Arbitrator's offer to provide more detailed findings. See Green, 200 F.3d at 975-76 ("If parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required") (finding "brief" explanation of reasons for denying plaintiff's theories sufficient under agreement requiring arbitrator to "explain" his decision).

### B. Contec's Contributory Negligence

According to RSC, the indemnity provision of the MPA, providing indemnification of "any suit or proceeding," does not clearly and unequivocally demonstrate an intent to indemnify Contec for a patent infringement case that arose because of Contec's own negligence. (D.I. 8 at 16) In support, RSC primarily relies upon indemnification caselaw involving contributory negligence in the context of personal injuries and property damage. (Id. at 16-17)[10] New York law does not permit indemnification for one's own intentional, reckless or grossly negligent conduct absent express indemnification language. See Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities, Inc., 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004). Contec argues that RSC's theory does not extend to a patent infringement claim.

RSC cites only one case dealing with patent infringement, a 1966 Pennsylvania decision, in which the court found a "guarantee against claims for royalties or

---

[10]E.g., Sweeney v. Hertz Corp., 740 N.Y.S.2d 19, 21 (N.Y.A.D. 1st Dept. 2002) (holding that rental car agreement did not clearly and unequivocally express intent to indemnify rental company against its own negligence in vehicle maintenance).

infringements of patents," made in a general construction contract, "[i]f . . . considered an indemnity clause," could not be construed to indemnify against infringement in which defendant's architect (a third party defendant in that case) participated. Baut v. Pethick Const. Co., 262 F. Supp. 350, 363 (D.C. Pa. 1966).[11]  The Baut case is distinguishable due to the co-involvement between the contractor and architect in that case in infringing the patent – the parties had a principal/agent relationship.

The court finds the Arbitrator's decision, to the extent it conflicts with Baut, does not constitute a "manifest disregard for the law."  The Arbitrator declined to apply a rule from the general negligence caselaw of New York to the patent infringement context.  The Arbitrator's failure to follow Baut, a fifty-year old Pennsylvania case, absent additional support for doing so, is not reversible error.

### C. Contec's Settlement with Philips

RSC next asserts that the Arbitrator incorrectly interpreted the MPA's provision that "[s]eller shall pay all damages and costs awarded by final judgment against [p]urchaser" to include amounts obtained in settlement.  (D.I. 8 at 20)  In his damages opinion, the Arbitrator awarded 23.79% of the settlement amount Contec paid to Philips and 6.6% of the amount paid to UEI, reflecting the percentages of all allegedly infringing URCs sold by Contec.  (D.I. 9, ex. D, pp. 15-18, sec. IV(A))  According to RSC, the court in the Philips action did not "award" damages; it entered only a consent

---

[11]In Baut, an infringing stained glass window was installed in a church.  Plaintiffs held a patent on the type of stained glass construction used.  Defendants were the general contractor in the church construction and the sub-contractor; the architect for the work, who designed the plans for the infringing window together with the contractors, was the third party defendant in that action.

decree, while payment was negotiated between the parties. (D.I. 8 at 21) The court entered a stipulation of dismissal in the UEI case; Contec did not admit infringement in that case as it did in the Philips action. (Id.)

RSC's position is untenable for several reasons. First, section 13(a) of the MPA, cited by the Arbitrator, provides that

> [i]f the [i]ndemnifying [p]arty within a reasonable time after notice of a claim fails to defend the [i]ndemnifying [p]arty, the [i]ndemnified [p]arty shall be entitled to undertake the defense, compromise, or settlement of such claim[s] at the expense of the [i]ndemnifying [p]arty.

(D.I. 9, ex. E at ¶ 13(a), ex. D at 7) The Arbitrator also noted that Contec cited New York law in support of its argument that an indemnitor who fails to defend is bound by any reasonable good faith settlement made by the indemnitee. (Id., ex. D at 7) The court agrees with this characterization of New York law. See, e.g., CIGNA Corp. v. Lincoln Natl. Corp., 775 N.Y.S.2d 303, 303 (N.Y.A.D. 1 Dept. 2004) (indemnitor was "bound by the settlement made by [indemnitee] to the extent that it was reasonable and entered into in good faith"). The Arbitrator did not exceed his authority in this regard.

### D. Fees and Expenses in Connection with the New York Action

RSC asserts that the Arbitrator disregarded the law by holding that the MPA authorizes reimbursement of Contec's legal fees in connection with the New York action. (D.I. 8 at 24) Section 19 of the MPA contains the arbitration provision, and states that

> [t]he prevailing party in any such [arbitration] will be entitled to recover from the other party all of its expenses, including, without limitation, all expenses due and payable to the [American Arbitration Association] and such party's fees and expenses for witnesses, the arbitrators and its attorney's fees incurred in the conduct of such arbitration but in no event will the recovery of its attorney's fees

14

be in excess of the actual cost of the other party's attorney's fees. (D.I. 9, ex. E)  In his damages opinion, the Arbitrator "weighed carefully" RSC's contention that attorney fees must be confined to the arbitration itself, but concluded otherwise.  This determination was based upon RSC's "especially suspect" conduct "in attempting to frustrate the purpose of section 19." (Id., ex. D at 17)  For example, a contemporaneous agreement illustrated that RSC recognized that Contec had proper standing to arbitrate. (Id.)  Insofar as Contec was forced to litigate in New York to defend its standing to arbitrate and obtain a stay for RSC's Korean litigation, the Arbitrator awarded Contec a recovery of 70% of its fees.

The Arbitrator considered, and ultimately discounted, RSC's cited caselaw. RSC's cases concern the interpretation of indemnity provisions, specifically, whether an indemnification provision requiring the payment of attorney fees also requires an indemnitor to pay the indemnitee's legal fees in a suit to enforce an indemnification agreement. (Id.; D.I. 8 at 24-25 (citing Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (N.Y. 1989)[12])  In contrast, the MPA provides for attorney fees in a

---

[12]Providing that

> [w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

Hooper, 74 N.Y.2d at 491.

15

section unrelated to indemnification.  (D.I. 9, ex. E at ¶¶ 13(a), 19)  Notwithstanding, it is the general rule under New York law that the authorization of an award of attorney fees contained in an agreement (such as the MPA) should be strictly construed to achieve the apparent purpose of the parties.  See Hooper, 74 N.Y.2d at 491.  The MPA permits recovery of "all of [the prevailing party's] expenses" in arbitration.  Contec was forced to initiate the New York action to stay RSC's Korean litigation and compel arbitration.  The court agrees that Contec's expenses incurred in getting RSC to the arbitration table were "incurred in the conduct of this arbitration" and, therefore, are encompassed within section 19.

### E. Amount of RSC's Legal Fees

RSC asserts that the Arbitrator exceeded his authority in awarding Contec fees insofar as the fees awarded exceed those incurred by RSC.  (D.I. 8 at 28-31)  While the Arbitrator awarded Contec $288,779.30 for its fees in connection with the New York action, RSC claims to have incurred only $54,273.75 in that action.  The Arbitrator awarded $231,966.62 in costs for the arbitration; RSC claims to have incurred only $13,581.11 in costs for the same proceeding.  (Id. at 28)  Contec cited to the Arbitrator over 30 instances in RSC's records where its counsel did not bill for its time.  (D.I. 9, ex. P at 4-8)  On the record before him, the Arbitrator found that RSC's fees were "unreasonably" and "inexplicably" low.  (D.I. 9, ex. D at 18)  Furthermore,

> it is equally plain to the Arbitrator that [RSC] has breached its obligation of good faith and fair dealing under New York law and this [breach] frustrated an appropriate recovery of attorney[ ] fees and expenses by Contec.  Contec's point is well taken that [RSC's] unusually low billings here cannot provide a basis for negating the spirit of section 19.  Surely, it was not the intent of the parties that one party could redice to zero, or even 10%, the right of the prevailing party to

16

> recover fees and expenses by way of arranging for the losing party's attorney[ ] fees and expenses to approach zero. Reading section 19 in an objectively reasonable manner, the Arbitrator finds that [RSC] cannot properly invoke section 19's limitation on the recovery of attorney[ ] fees under the circumstances created here by [RSC] and its counsel.

(Id.)

"Under New York law, all contracts contain an implied agreement that neither party may engage in conduct which would interfere with the other party's right to realize the benefit of the bargain, even if such conduct is not specifically prohibited by the contract." Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) (citations omitted). The Arbitrator in this case was permitted and obligated to consider the covenant of good faith and fair dealing, as well as Contec's claims that RSC violated that covenant. Contec's position is supported by evidence that RSC engaged in tactics to improperly minimize its contractual liability, and the court finds that the Arbitrator did not exceed his authority in awarding fees in excess of RSC's under these circumstances.

### F. Contec's Fees Incurred in Confirming the First Interim Award

Finally, RSC asserts that principles of collateral estoppel and res judicata preclude the Arbitrator from awarding Contec's fees incurred in confirming the First Interim Award, because its request for fees was previously rejected by the New York court. (D.I. 8 at 32; D.I. 9, ex. F) The court disagrees. As an initial matter, Contec's application for fees was denied as untimely by the district court; it was not denied on the merits. Secondly, fees were initially awarded by the district court as a sanction against RSC's misconduct. The Arbitrator awarded Contec its fees in a different context – pursuant to the language of section 19 of the MPA. Therefore, and in view of

17

the different bases for the awarding of fees, the court finds that collateral estoppel does not apply. The Arbitrator did not err in this regard.

## V. CONCLUSION

For the aforementioned reasons, the court denies RSC's motion to vacate or modify the Arbitrator's award (D.I. 1). An appropriate order shall issue.